**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| ARTHUR GINSBERG ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES L. DeHART, ) | |
| JOHN P. GRIFFITH, ) | COMPLAINT |
| LANDYA B. McCAFFERTY, ) | |
| MARGARET H. NELSON, ) | |
| DIANE M. NICOLOSI, ) | |
| MAX DOES 1 through 12, ) | Case No. 2010-CV-_____ |
| MAXINE DOES 1 through 12, ) | |
| NED ZOES 1 through 12, ) | |
| NADINE ZOES 1 through 12, ) | TRIAL BY JURY REQUESTED |

NOW COMES Plaintiff, appearing in his pro-se capacity and for the Complaint against Defendants, alleges and states as follows:

**I.** **Preliminary Statement**

1. In the year 2002, the Plaintiff filed a professional misconduct complaint with the New Hampshire Supreme Professional Conduct Committee (hereinafter "NHPCC"), naming Attorney John P. Griffith. That professional misconduct complaint was docketed and ultimately dismissed four years later, in 2006.

2. This action concerns Plaintiff's protected First Amendment right of effective access to the courts.

3. This action also challenges the constitutionality of New Hampshire Supreme Court Rule 37A(IV)(a)(2) insofar as the confidentiality and public access provisions severely impair transparency and violate the First and Fourteenth Amendments to the United States Constitution. The challenged provisions took effect on January 1, 2004.

4.     This action additionally challenges the constitutionality of New Hampshire Supreme Court Rule 37(5)(c) and Rule 37A(II)(a)(6) insofar as the Rules' definition of "work product" is inconsistent with New Hampshire Supreme Court caselaw and Federal caselaw, offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution. The challenged provisions took effect on January 1, 2004.

5.     The Plaintiff seeks temporary restraining orders ("TRO"), permanent injunctions, and declaratory relief on the grounds that the challenged confidentiality and public access provisions violate the right of petition, the right of access to public records, and the right to freedom of speech and freedom of the press under the First Amendment.

6.     This action additionally confronts questionable and possibly corrupt practices of staff members and the various Committees and members comprising the New Hampshire Supreme Court Attorney Discipline System, which includes the Attorney Discipline Office, the Complaint Screening Committee, the Hearings Committee, and the Professional Conduct Committee.  Plaintiff's protected right of effective access to the courts has been infringed by the questionable and possibly corrupt practices by a government organ: the New Hampshire Supreme Court Attorney Discipline System.

7.     With regard to infringement of his protected right of access to the Courts, and his ability to seek judicial redress for his grievances, Plaintiff seeks declaratory relief proclaiming that relevant Defendants violated several different constitutional provisions, including the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, the Privileges and Immunities Clause of Article IV of the Constitution, and the First Amendment's Petition Clause.

2

## II.   **Jurisdiction and Venue**

8.   Jurisdiction is conferred on the Court by Title 28 U.S.C. § 1331, §1343(3), §1343(4), the First, Fifth and Fourteenth Amendments to the United States Constitution, the Privileges and Immunities Clause of Article IV, and Title 42 U.S.C. § 1983.

9.   The Plaintiff's claim for declaratory, TRO, and injunctive relief is authorized by Title 28 U.S.C. Sections 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure ("Fed R. Civ. P."), and by the general legal and equitable powers of this Court.

10.   Venue is proper in the Federal District of New Hampshire pursuant to the provisions of Title 28 U.S.C. §1391 and because this action is brought in the federal judicial district where the Defendants reside and in which the claims arose.

## III.   **Parties**

11.   Plaintiff Arthur Ginsberg is a United States citizen and a resident of the State of New Hampshire.

12.   Defendant James L. DeHart is General Counsel for the Attorney Discipline Office component of the New Hampshire Supreme Court Attorney Discipline System (hereinafter "NHADO"). Prior to January 1, 2004, Defendant DeHart was Counsel for the former New Hampshire Supreme Court Professional Conduct Committee ("NHPCC").

13.   Defendant John P. Griffith is a lawyer admitted to the New Hampshire Bar and, at the relevant time, he was the respondent to a Professional Misconduct complaint originally filed by the Plaintiff in 2002, and docketed as #02-131 by the New Hampshire Supreme Court Professional Conduct Committee.

14.   Defendant Landya B. McCafferty was, at the relevant time, Disciplinary Counsel for the Attorney Discipline Office component of the New Hampshire Supreme Court Attorney Discipline System.

3

15.     Defendant Margaret H. Nelson was, at the relevant time, the Chair of the Professional Conduct Committee component of the New Hampshire Supreme Court Attorney Discipline System.

16.  Defendant Diane M. Nicolosi is a lawyer admitted to the New Hampshire Bar and she is currently serving as a New Hampshire Superior Court Justice. In 2006, Defendant Nicolosi had been assigned to reinvestigate Plaintiff's Professional Misconduct Complaint lodged against Defendant John P. Griffith in 2002. (Attorney Robert C. Dewhirst had conducted the original investigation of Plaintiff's Professional Misconduct Complaint lodged against Defendant John P. Griffith in 2002, and without a rational basis, Attorney Dewhirst's investigation was effectively discarded in 2006.)

17.     Defendants Max Does 1-12 and Maxine Does 1-12, were at the relevant time, members, officers, or lawyers associated with the New Hampshire Professional Conduct Committee prior to January 1, 2004, and who participated in the evaluation of Plaintiff's Professional Misconduct Complaint lodged against Attorney John P. Griffith, and whose names are presently unknown. Plaintiff will seek leave to amend his complaint to allege their true names and capacities when the same have been ascertained.

18.  Defendants Ned Zoes 1-12 and Nadine Zoes 1-12 are now or since January 1, 2004 were members, officers, or lawyers associated with the New Hampshire Supreme Court Attorney Discipline System, which includes the Attorney Discipline Office, the Complaint Screening Committee, the Hearings Committee, and the Professional Conduct Committee, and who participated in the reevaluation of Plaintiff's Professional Misconduct Complaint lodged against Attorney John P. Griffith, and whose names are presently unknown. Plaintiff will seek leave to amend his complaint to allege their true names and capacities when the same have been ascertained.

4

## IV.   <u>The Challenged Supreme Court Rules</u> (effective January 1, 2004)

### RULES OF THE SUPREME COURT OF THE STATE OF NEW HAMPSHIRE
### ADMINISTRATIVE RULES 35 TO 59
#### Rule 37.  ATTORNEY DISCIPLINE SYSTEM

*(5) Complaint Screening Committee:*

*(a)  The  court shall appoint a committee to be known as the complaint screening committee  which shall consist of nine members, one of whom shall be designated by the  court as chair and one of whom shall be designated by the court as vice chair  to act in the absence or disability of the chair. Five of the members shall be attorneys and four of them shall be non-attorneys.  The complaint screening  committee shall act only with the consensus of a majority of its members present  and voting provided, however, that three attorney members and two non-attorney  members shall constitute a quorum. The chair of the committee, or any member performing the duties of the chair, shall only vote on matters relating to specific complaints in the event of a tie among the members present and voting.  Initial appointments shall be for staggered terms: three members for three years; three members for two years; and three members for one year. Thereafter, the regular term of each member shall be three years. A member selected to fill a vacancy shall hold office for the unexpired term of his or her predecessor.  A member shall not serve more than three consecutive full terms but may be reappointed after a lapse of one year. No member of the complaint screening committee shall serve concurrently as a member of the professional conduct committee or the hearings committee.*

*(b)  The complaint screening committee shall have the power and duty:*

*(1)  To consider and act on requests for reconsideration filed by grievants following a decision by general counsel not to docket a matter, to divert attorneys out of the system, or to dismiss a complaint after investigation.*

*(2)  To consider and act on reports by staff members of the attorney discipline office with respect to docketed complaints.*

*(3)  To remove complaints from the docket if it determines that a complaint is not within the jurisdiction of the attorney discipline system and or does not meet the requirements for docketing.*

*(4)  To dismiss complaints with a finding of no professional misconduct, with or without a warning.*

*(5)  To dismiss complaints for any other reason, with or without a warning. If the committee determines that there is no reasonable likelihood that a complaint can be proven by clear and convincing evidence, the complaint should be dismissed.*

*(6)  To divert attorneys out of the attorney discipline system when appropriate and subject to the attorney complying with the terms of diversion. All diversion would be public unless the complaint screening committee determined that a given matter should remain non-public based on one or more of the following issues: health, finances, family considerations or highly personal matters.  If a respondent declines to accept diversion or violates the terms of a written diversion agreement, the complaint in such cases shall be acted upon as if diversion did not exist.*

5

*(7)  To refer complaints to disciplinary counsel for the scheduling of a hearing only where there is a reasonable likelihood that professional misconduct could be proven by clear and convincing evidence.*

*(8)  To  consider and act upon requests for reconsideration of its own decisions, subject  to the further right of disciplinary counsel or respondents to request that the professional conduct committee review a decision to refer a complaint  to disciplinary counsel for the scheduling of a hearing.*

*(c)  Meetings of the complaint screening committee shall be in the nature of deliberations and shall not be open to the public, respondents, respondents' counsel, disciplinary counsel or the complainant.  Records and reports of recommendations made shall in all respects be treated as work product and shall not be made public or be discoverable.  However, the decision of the committee shall be public.*

## Rule 37A.  RULES AND PROCEDURES OF ATTORNEY DISCIPLINE SYSTEM

*(II) Investigations and Informal Proceedings*

*(a) Preliminary Provisions*

*(6) Investigation.*

*Either prior to or following receipt of the respondent's answer, general counsel and his or her deputies and assistants shall conduct such investigation as may be appropriate.*

*Upon completion of the investigation, general counsel may (1) dismiss or divert a complaint on the grounds set forth in Rule 37(6)(c); or (2) present the complaint to the complaint screening committee with recommendations for diversion as provided in section (I)(g), dismissal for any reason (with or without a warning) or referral to disciplinary counsel for a hearing.*

*At any time while general counsel is investigating a docketed complaint, the respondent may notify general counsel that the respondent waives the right to have the matter considered by the complaint screening committee and consents to the matter being referred to disciplinary counsel for a hearing.  Agreement by the respondent to referral for a hearing shall not be considered an admission of misconduct or a waiver of any defenses to the complaint.*

*Meetings of the complaint screening committee shall be in the nature of deliberations and shall not be open to the public, respondents, respondents' counsel, disciplinary counsel or the complainant. Records and reports of recommendations made shall in all respects be treated as work product and shall not be made public or be discoverable. However, the decision of the complaint screening committee shall be public.*

*(IV) Confidentiality and Public Access*

*(a) Confidentiality of and Public Access to Proceedings and Records.*

*(1) General Rule. The confidentiality of and public access to records, files and proceedings shall be governed by Supreme Court Rule 37.*

*(2) Public Access to Files.*

*(A) Grievance against Person Not Subject to Rules of Professional Conduct. Correspondence to the grievant relating to a grievance against a person who is not subject to the rules of professional conduct shall be available for public inspection for a period of two years. After this two-year period, the correspondence shall be destroyed.*

6

*(B) Grievance Not Docketed as a Complaint.* All records (other than work product, internal memoranda and deliberations) relating to a grievance filed against a person who is subject to the rules of professional conduct but which is not docketed as a complaint, shall be maintained at the attorney discipline office for two (2) years from the date of original filing, and it shall be available for public inspection during this period. After this two-year period, the records shall be destroyed.

*(C) Complaints.* All records (other than work product, internal memoranda and deliberations) relating to a complaint that is docketed shall be maintained at the attorney discipline office and shall be available for public inspection in accordance with the provisions of Supreme Court Rule 37. Paper records may be destroyed after:

*(i) three years of the date of notice of dismissal with or without a caution; or*
*(ii) three years of the date of an annulment in accordance with section (V) of this rule; or*
*(iii) five years after the death of the attorney-respondent.*

*(D) Index of Complaints.* The attorney discipline office shall maintain an index of complaints docketed against each attorney, which shall contain pertinent information, including the outcome of the complaint. No index of grievances that are not docketed as complaints shall be maintained.

*(E) Protective Order.* Any person or entity, at any point in the processing of a complaint, may request a protective order from the professional conduct committee, or the committee may issue on its own initiative, a protective order prohibiting the disclosure of confidential, malicious, personal, or privileged information or material submitted in bad faith, and directing that the proceedings be so conducted as to implement the order. Upon the filing of a request for a protective order, the information or material that is the subject of the request shall be sealed pending a decision by the professional conduct committee. The professional conduct committee shall act upon the request within a reasonable time. Within thirty (30) days of the committee's decision on a request for protective order, or of the committee's issuance of one on its own initiative, an aggrieved person or entity may request that the supreme court review the matter. The material in question shall remain confidential after the committee has acted upon the request for protective order until such time as the supreme court has acted, or the period for seeking supreme court review has expired.

## V.   **Factual Allegations**

19.   On October 21, 2002, Plaintiff filed a Professional Misconduct complaint against Attorney John P. Griffith, which complaint was docketed as #02-131 by the New Hampshire Supreme Court Professional Conduct Committee ("NHPCC"). A true copy of Plaintiff's 10/21/2002 Professional Conduct Complaint is attached hereto as Exhibit A.

20.   At the time Plaintiff filed his complaint, Attorney Griffith was representing the NHPCC in a Professional Misconduct matter lodged against Attorney Steven E.

Feld. Please see New Hampshire Supreme Court August 30, 1999 ruling in "Feld Case" LD-97-009, a true copy of which is attached hereto as <u>Exhibit B</u>.

21. On January 24, 2003, Margaret H. Nelson, Chair of the NHPCC, notified the Plaintiff in writing that the "potential conflict of interest" raised by the Plaintiff with regard to Attorney Griffith's active representation of the NHPCC was understood and therefore the NHPCC would (i) not retain Attorney Griffith for any other matter during the pendency of Plaintiff's complaint, (ii) request the New Hampshire Supreme Court to appoint a substitute member to the NHPCC to investigate Plaintiff's complaint, and (iii) ask the New Hampshire Supreme Court to appoint a substitute panel to hear the case if it is determined that an investigation is necessary. A true copy of Margaret Nelson's 01/24/2003 letter is attached hereto as <u>Exhibit C</u>.

22. On or about March 23, 2003, the New Hampshire Supreme Court appointed Attorney Robert C. Dewhirst to investigate Plaintiff's 10/21/2002 complaint. Please see <u>Exhibit D</u>.

23. On an unknown date between March 23, 2003 and December 19, 2003, Attorney Robert C. Dewhirst presented a report to the NHPCC, which report contained a determination that Plaintiff's 10/21/2002 complaint lodged against Attorney Griffith contained allegations of chargeable violations of the New Hampshire Rules of Professional Conduct.

24. On December 19, 2003, Margaret H. Nelson, Chair of the NHPCC, notified the Plaintiff in writing that the NHPCC had determined that a hearing will be necessary to determine if the Plaintiff's allegations lodged against Attorney Griffith should be sustained with clear and convincing evidence. In addition, Chair Margaret H. Nelson advised the Plaintiff that –

> The New Hampshire Supreme Court attorney discipline structure will be undergoing change effective on January 1, 2004. The file will be assigned to the newly appointed Disciplinary Counsel at that time.

A true copy of Margaret Nelson's 12/19/2003 letter is attached hereto as <u>Exhibit E</u>.

8

25.  On March 10, 2004, Attorney Landya B. McCafferty, in her official capacity as Disciplinary Counsel for the Attorney Discipline Office component of the New Hampshire Supreme Court Attorney Discipline System, wrote Attorney Griffith and copied the Plaintiff, informing that she would be reviewing all pending cases that the former NHPCC had recommended for a hearing.  A true copy of Attorney Landya B. McCafferty's March 10, 2004 letter is attached hereto as Exhibit F.

26.  On an unknown date after March 10, 2004, Attorney Landya B. McCafferty decided to discard the investigation and report previously submitted to the NHPCC by Attorney Robert C. Dewhirst, and thereafter Attorney Landya B. McCafferty requested that the New Hampshire Supreme Court approve the assignment of Attorney Diane M. Nicolosi to the task of conducting a new investigation of Plaintiff's 10/21/2002 complaint lodged against Attorney Griffith.

27.  On October 12, 2004, the New Hampshire Supreme Court approved the hiring of Attorney Diane M. Nicolosi to act as Assistant Disciplinary Counsel and to perform a new investigation of Plaintiff's 10/21/2002 complaint lodged against Attorney Griffith.

28.  On April 19, 2006, Attorney Diane M. Nicolosi completed a new investigation of Plaintiff's 10/21/2002 complaint lodged against Attorney Griffith, and presented her report with findings and recommendations to NHPCC Attorney Landya B. McCafferty.

29.  On June 9, 2006, Attorney Landya B. McCafferty filed a document with the NHPCC, titled "Request For Dismissal With A Warning", which document apparently adopted Attorney Diane M. Nicolosi's report in its entirety, including a determination that Plaintiff's 10/21/2002 complaint lodged against Attorney Griffith contained no sustainable allegations of professional misconduct.  A true copy of Attorney Landya B. McCafferty's 06/09/2004 "Request For Dismissal With A Warning" is attached hereto as Exhibit G.

9

30. On or about June 28, 2006, the Plaintiff filed a "Response To Request For Dismissal With A Warning And Request For a Hearing" with the NHPCC. A true copy of Plaintiff's "Response To Request For Dismissal With A Warning And Request For a Hearing" is attached hereto as Exhibit H.

31. On June 28, 2006, Attorney Griffith filed an "Objection to Proposed Warning" with the NHPCC. A true copy of Attorney Griffith's "Objection to Proposed Warning" is attached hereto as Exhibit J.

32. On July 18, 2006, the NHPCC voted to dismiss Plaintiff's 10/21/2002 complaint with a finding of no professional misconduct but with a Warning, and on July 19, 2006 NHPCC Chair, Attorney Margaret H. Nelson, notified Attorney John P. Griffith of the dismissal. A true copy of the 07/19/2006 "Dismissal With A Warning" is attached hereto as Exhibit K.

33. On or about August 21, 2006, the Plaintiff filed an Amended Rule 11 Petition For Original Jurisdiction with the New Hampshire Supreme Court, which Petition was assigned Case No. LD-2006-0008. A true copy of the 08/21/2006 "Amended Rule 11 Petition For Original Jurisdiction" is attached hereto as Exhibit L.

34. On October 18, 2006, the New Hampshire Supreme Court issued an order accepting Plaintiff's Rule 11 Petition for briefing and oral argument. A true copy of the 10/18/2006 order of acceptance is attached hereto as Exhibit M.

35. Plaintiff's Rule 11 Petition invoked the New Hampshire Supreme Court's original jurisdiction for the purpose of reviewing the NHPCC's July 19, 2006 decision dismissing the professional misconduct complaint originally filed on October 21, 2002. Pursuant to Supreme Court Rule 11(2)(b), the following questions were accepted for review by the New Hampshire Supreme Court.

> Whether, in requesting a dismissal of the charges filed against Attorney John Griffith with a warning, the Disciplinary Counsel of the Professional Conduct Committee of the Supreme Court of the State of New Hampshire improperly evaluated the evidence rather than developing it to determine whether there is a valid basis for proceeding to a hearing, incorrectly applying a standard of "clear and convincing evidence" burden of proof rather than the "preponderance of the

10

evidence" burden of proof to the investigatory stage of the proceedings, and in doing so it has so far departed from the accepted or usual course of judicial or administrative agency proceedings as to call for an exercise of this Court's power of supervision.

Whether the original complaint submitted by Petitioner to the Committee in itself met the proper burden of proof because citations to the record were supplied for each allegation made, and failure of the Committee to consider this showed improper bias in Mr. Griffith's favor, and in doing so it has so far departed from the accepted or usual course of judicial or administrative agency proceedings as to call for an exercise of this Court's power of supervision.

Whether the Committee's failure to comply with its own decisions that (i) its investigator, Attorney Dewhurst, had determined that a hearing was necessary in this matter and (ii) the Committee had a conflict of interest with Mr. Griffith that would warrant appointment of a special hearing panel, showed improper bias in favor of Mr. Griffith, and in doing so it has so far departed from the accepted or usual course of judicial or administrative agency proceedings as to call for an exercise of this Court's power of supervision. Whether the Committee's failure to give any weight to evidence misrepresented and ignored by Diane Nicolosi, Special Disciplinary Counsel, obtained from Attorney Hantz, Attorney Pillsbury and GAL Attorney Earnshaw, and the Committee's failure to give any weight to evidence developed in a meeting held at the Committee's office attended by Disciplinary Counsel, Assistant Disciplinary Counsel, Petitioner and Attorney Hantz, Petitioner's divorce attorney, shows improper bias, and in doing so it has so far departed from the accepted or usual course of judicial or administrative agency proceedings as to call for an exercise of this Court's power of supervision.

Whether the Committee's conclusion of no evidence of professional misconduct is unsupportable on its face because its Disciplinary Counsel found Mr. Griffith's conduct, *inter alia*, harmful to the children and lacking basic decency, and in doing so it has so far departed from the accepted or usual course of judicial or administrative agency proceedings as to call for an exercise of this Court's power of supervision.

Whether the Committee's based its decision on the Disciplinary Counsel's Request for Dismissal which contained factual errors or deliberate misrepresentations of the record, and in doing so it has so far departed from the accepted or usual course of judicial or administrative agency proceedings as to call for an exercise of this Court's power of supervision.

Whether Mr. Griffith's conduct after receiving a copy of the Disciplinary Counsel Request for Dismissal with Warning, in that he attempted to mislead the Committee by taking things out of context itself demonstrated to a preponderance of the evidence standard, that Mr. Griffith indeed engages in a pattern of abuse of the system and failure of the Committee to consider this showed bias in his favor, and in doing so has it so far departed from the accepted or usual course of

11

judicial or administrative agency proceedings as to call for an exercise of this Court's power of supervision.

Whether Mr. Griffith's conduct in other matters, such as lying in his own divorce case, which led to his arrest for non-payment of alimony and lying to the New Hampshire Supreme Court on an appeal in that case, evidence of which was supplied to Disciplinary Counsel, in itself demonstrated to a preponderance of the evidence standard, that Mr. Griffith indeed engages in a pattern of abuse of the system and failure of the Committee to consider this showed bias in his favor, and in doing so it has so far departed from the accepted or usual course of judicial or administrative agency proceedings as to call for an exercise of this Court's power of supervision.

36. On November 7, 2006, Plaintiff filed a motion with the New Hampshire Supreme Court in case no. LD-2006-0008, and captioned that motion: Petitioner's Motion For An Order Directing The Professional Conduct Committee To File A Certified Copy Of The Entire Record Of The Proceedings Held In The Underlying Attorney Discipline Case Docketed In 2002 As #02-131 And Captioned Griffith, John P. Advs. Arthur Ginsberg. A true copy of the 11/07/2006 motion is attached hereto as Exhibit N.

37. On November 13, 2006 Disciplinary Counsel Landya B. McCafferty filed a reply to Plaintiff's 11/07/2006 motion. A true copy of Attorney McCafferty's 11/13/2006 reply is attached hereto as Exhibit O.

38. On December 7, 2006, the New Hampshire Supreme Court reversed its acceptance order dated October 18, 2006, and dismissed Plaintiff's Rule 11 Petition. A true copy of the 12/07/2006 order is attached hereto as Exhibit P.

39. On or about December 18, 2006, Plaintiff filed a motion with the New Hampshire Supreme Court in case no. LD-2006-0008, and seeking en banc reconsideration of the December 7, 2006 order, which reversed the acceptance order dated October 18, 2006 and dismissed Plaintiff's Rule 11 Petition. A true copy of Plaintiff's motion for reconsideration is attached hereto as Exhibit Q.

12

40.  On January 4, 2007, the New Hampshire Supreme Court issued an order denying the Plaintiff's motion for reconsideration.  A true copy of the 01/04/2007 order is attached hereto as Exhibit R.

41.  On numerous days since January 5, 2005, Plaintiff unsuccessfully attempted to obtain a copy of the investigation and report previously submitted to the NHPCC by Attorney Robert C. Dewhirst, which had been discarded without any apparent rational basis by Defendant Attorney Landya B. McCafferty.

42.  On June 16, 2010, Plaintiff again attempted to obtain access to the investigation and report authored by Attorney Robert C. Dewhirst.  Defendant Attorney James L. DeHart informed the Plaintiff that the status had not changed and Attorney Dewhirst's report was not available.

43.  Plaintiff has repeatedly attempted to obtain an index to all docketed and not docketed professional misconduct grievances and complaints, which are open to the public.  Plaintiff's efforts were unsuccessful.

44.  Plaintiff has repeatedly attempted to obtain an index to all non-public docketed and not docketed professional misconduct grievances and complaints. Plaintiff's efforts were unsuccessful.

45.  On information and belief, other New Hampshire citizens, including Mr. Edward N. Farley, have also been unsuccessful in their efforts to obtain an index to public and non-public records maintained by the NHPCC.

46.  On information and belief, Defendant James L. DeHart advised Mr. Edward N. Farley, in a letter dated September 10, 2010, that –

> There is no "index to all [your] grievances" filed regarding any attorneys. See Supreme Court Rule 37 A(IV)(a)(2)(D). Grievances not docketed as complaints are maintained in a file accessible to the public for two years from the date of the original filing, which according to your letter, you have searched.  See Supreme Court Rule 37A(IV)(a)(2)(B).  After two years, nondocketed grievances are destroyed. See Supreme Court Rule 37A(IV)(a)(2)(B). There is no index of correspondence.

13

47.   The New Hampshire Supreme Court Attorney Discipline System Defendants have violated the Plaintiff's protected First Amendment rights by failing to establish a functioning, *bona fide* and meaningful system for dealing with requests and complaints regarding the public's right of access to attorney misconduct complaints, but instead responding to such requests and complaints with bureaucratic power and official denials, carefully calculated to mislead the Plaintiff and the public into forming an opinion that the practice of ineffective access to attorney misconduct records was legally permitted by the laws of the State of New Hampshire.

48.   The Plaintiff's complaint alleging violations of the New Hampshire Rules of Professional Conduct concerns matters of great public interest. Public discussion concerning the NHPCC processing of that complaint and the performance of their governmental duties has been restrained by Supreme Court Rule 37(5)(c) and Rule 37A(II)(a)(6).

49.   Our democratic society is founded on the principle that vigorous and robust debate on matters of public interest will provide the public the best opportunity to learn the truth. The foregoing Supreme Court Rules thwart discussion and are contrary to the nearly universal agreement that one of the primary purposes of the First Amendment to the United States Constitution is to protect the free discussion of governmental affairs.

## VI.    Relevant Law - First Amendment Right of Access

50.   The United States Supreme Court has determined that a First Amendment right of access attaches when "public access plays a significant positive role in the functioning of the particular process in question." See Press-Enterprise Co. v. Superior Court of California for Riverside County, 478 U.S. 1, 8-9 (1986). The Plaintiff respectfully submits that the relevant "particular process in question" is the "restraint on possible abuse of official power" provided by "contemporaneous review in the forum of public opinion." See Justice Brennan's concurrence in Richmond Newspapers v. Virginia, 448 U.S. 555 at 592 (1980). [Quoting: In re Oliver, 335 U.S. 257, 270 (1948)].

14

51. The First Amendment right of access to government controlled information has become firmly established by a line of U.S. Supreme Court decisions, including: Press-Enterprise v. Superior Ct., 478 U.S. 1 (1986) ("Press-Enterprise II"); Press-Enterprise v. Superior Ct., 464 U.S. 501 (1984) ("Press-Enterprise I"); Waller v. Georgia, 467 U.S. 39 (1984); Globe Newspaper Co. v. Superior Ct., 457 U.S. 596 (1982); Richmond Newspapers, Inc. v. Commonwealth of Virginia, 448 U.S. 555 (1980); and Gannett Co. v. DePasquale, 443 U.S. 368 (1979). The U.S. Supreme Court has been strikingly consistent in its refusal to allow concerns for the "orderly administration of justice" justify any limitations on the First Amendment. Bridges v. California, 314 U.S. 252 (1941); Pennkamp v. Florida, 328 U.S. 331 (1946); Craig v. Harney, 331 U.S. 367 (1947); Wood v. Georgia, 370 U.S. 375 (1962); Cox Broadcasting v. Cohn, 420 U.S. 469 (1975); Oklahoma Publishing Co. v. District Court, 430 U.S. 308 (1977); Smith v. Daily Mail, 443 U.S. 97 (1979); Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982); Florida Star v. B.J.F., 491 U.S. 524 (1989) and Butterworth v. Smith, 494 U.S. 624 (1990).

52. A clear majority of Supreme Court Justices have repetitively articulated the theoretical basis for the First Amendment right of access in Press-Enterprise I and II and Globe Newspaper, stating the First Amendment guarantees that public discussion of governmental affairs should be an informed one, free of unnecessary restraints on access to government held information. If freedom of speech is to be meaningful, government may not impermissibly control or restrict the flow of information to the public.

53. The right of access to governmental documents and proceedings is not explicitly mentioned in the First Amendment. But courts have long eschewed any "narrow, literal conception" of the Amendment's terms, NAACP v. Button, 371 U.S. 415, at 430 (1963), on the theory that the Framers were concerned with broad principles, and wrote against a background of shared values and practices. The First Amendment is thus broad enough to encompass those rights that, while not unambiguously enumerated in the very terms of the Amendment, are nonetheless

15

necessary to the enjoyment of other First Amendment rights. Richmond Newspapers, Inc. v. Virginia, 448 U.S. at 579-580, and n.16 (plurality opinion) and at 587-588, and n.4 (Brennan, J., concurring in the judgment). Underlying the First Amendment right of access is the common understanding that "a major purpose of that Amendment was to protect the free discussion of governmental affairs." Mills v. Alabama, 384 U.S. 214, at 218 (1966). By offering such protection, the First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government. See Thornhill v. Alabama, 310 U.S. 88, at 95 (1940); Richmond Newspapers, Inc. v. Virginia, 448 U.S. at 587-588 (Brennan, J., concurring in the judgment). See also Id. at 575 (plurality opinion) (the "expressly guaranteed freedoms" of the First Amendment "share a common core purpose of assuring freedom of communication on matters relating to the functioning of government"). Thus to the extent that the First Amendment embraces a right of access to governmental records and proceedings, it is to ensure that this constitutionally protected "discussion of governmental affairs" is an informed one.

54. Relying on language from United States Supreme Court cases, the lower federal courts have identified six structural interests to determine whether public access plays a significant positive role including "informing the public discussion of government affairs, assuring the public perception of fairness, promoting the community-therapeutic effect of criminal justice proceedings, providing a public check on corrupt practices, intimidating potential perjurers, and generally enhancing the performance of all involved in the process."[1]

55. The U.S. Supreme Court further explained in Press-Enterprise II that "because a tradition of accessibility implies the favorable judgment of experience, we have considered whether the place and process have historically been open to the

---

**1.** United States v. McVeigh, 106 F.3d 325, 336 (10th Cir. 1997); *see also* Boston Herald, Inc. v. Connolly, 321 F.3d 174, 187 (1st Cir. 2003); United States v. Gonzales, 150 F.3d 1246, 1259 n. 18 (10th Cir. 1998); United States v. Simone, 14 F.3d 833, 839 (3d Cir. 1994).

press and general public."[2] The Court in Richmond Newspapers indicated that it was appropriate to look at whether criminal trials were open "at the time when our organic laws were adopted," 448 U.S. at 569, but the Court in Press-Enterprise II also considered the tradition of accessibility to preliminary hearings starting somewhat later in this country's history.[3] Since then, some lower courts have looked to the openness of the proceeding as far back as the colonial period and to more recent history to determine whether there has been a tradition of accessibility.[4] Where the procedure is of relatively recent origin, the courts have also looked to analogous proceedings and documents of the same "type or kind." El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147, at 150-51 (1993); Boston Herald, Inc. v. Connolly, 321 F.3d 174, at 184 (1st Cir. 2003).

56. Lawyer disciplinary proceedings were conducted in the open for centuries in England and were also open to the public in the United States at the time that the Bill of Rights was ratified.[5] Over the next 125 years, lawyer discipline continued to be handled in open proceedings before the courts. Court opinions and news coverage of lawyer discipline charges and proceedings up until the early 1900s demonstrate that the disciplinary process remained open until it was taken over by the organized bar. Even then, in a few jurisdictions, public access to discipline proceedings was permitted as soon as a formal complaint was filed.

---

**2.** Some courts and commentators have questioned whether there must be a tradition of accessibility in order to demonstrate a First Amendment right of access. *See* Boston Herald, Inc. v. Connolly, 321 F.3d 174, 182 (1st Cir. 2003); United States v. Gonzales, 150 F.3d 1246 (10th Cir. 1998); United States v. Suarez, 880 F.2d 626, 631 (2d Cir. 1989); *see also* United States v. Simone, 14 F.3d 833, 839-42 (3d Cir. 1994) (relying primarily on "logic" prong of test in absence of evidence supporting a tradition of openness). Thus, even if this prong is not satisfied, a right of access might still be found.

**3.** Press-Enterprise II, 478 U.S. at 10-11. Moreover, the Supreme Court has considered whether a proceeding has generally been open in many jurisdictions rather than focusing on the history of a particular jurisdiction. *See* El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147, 150-51 (1993).

**4.** See, e.g., North Jersey Media Group, Inc. v. Ashcroft, 308 F.3d 198 (3d Cir. 2002); NBC, Inc. v. Presser, 828 F.2d 340, 344 (6th Cir. 1987).

**5.** See, ROSCOE POUND, The Lawyer From Antiquity to Modern Times, 99-100 (1953).

57. The deep involvement of bar associations in lawyer discipline and their increasing use of secrecy did not produce favorable results. By 1970, even the ABA's Special Committee on Evaluation of Disciplinary Enforcement ("The Clark Committee") concluded that the state of lawyer discipline was "scandalous" and recommended that the courts take back responsibility for administering lawyer discipline. The Clark Committee noted that many of the problems, including that "disciplinary agencies will not proceed against prominent lawyers and law firms," occurred at least in part because so much discipline was handled in secrecy.

## VII. Access to Attorney Discipline Records

58. Where there is a right to attend judicial proceedings, there is a concomitant First Amendment right to access documents submitted in connection with those proceedings. Thus, the formal charges, transcripts of discipline hearings, documents submitted to the hearing committee, and records concerning the disposition of disciplinary matters should also be accessible to the public under a First Amendment right of access theory. The more difficult question is whether additional documents might be obtained through a constitutional right of access claim, including access to the initial complaints or private sanctions.

59. One basis for obtaining additional discipline information may be found in the court decisions recognizing a First Amendment right of access to court docket sheets. The courts that have considered the issue have concluded that docket sheets relating to judicial proceedings enjoy a presumption of openness.[6] Access to docket sheets provides an opportunity for the public to understand "the system in general **and** its workings in a particular case." Hartford Courant Co., 380 F.3d at 95 (quoting Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, at 572 (1980). Important

---

**6.** United States v. Ochoa-Vasquez, 428 F.3d 1015, 1028-29 (11th Cir. 2005); Hartford Courant Co. v. Pellegrino, 380 F.3d 83 (2d Cir. 2004); United States v. Valenti, 987 F.2d 708, 715 (11th Cir. 1993); *see also* Globe Newspaper Co. v. Fenton, 819 F. Supp. 89, 94-95 (D. Mass. 1993). This was true even in cases involving, *inter alia,* the docket sheets for paternity proceedings where the proceeding itself may have been private. *See* Hartford Courant Co., 380 F.3d at 93.

18

discipline information can be derived from docket sheets, including the identities of lawyers who have been charged and the sanctions imposed on lawyers. The availability of docket sheets can also be used to reveal potential biases.[7]

60. If there is a qualified First Amendment right of access to disciplinary proceedings and records, then the proceedings and records cannot be closed unless "specific, on the record findings are made demonstrating that 'closure is necessary to preserve higher values and is narrowly tailored to serve that interest.' "[8] Preservation of the integrity of the investigative process is not a "higher value" that would justify limiting access to disciplinary hearings, documents submitted in those proceedings, transcripts, or court docket sheets because the investigation would be complete by the time of the hearing or before those documents were generated.[9]

61. Moreover, it seems doubtful that fairness to the lawyer or protection of a lawyer's reputation are higher values than the public's right to observe what is happening in the discipline process, especially after a finding of probable cause has been made. Although a closer question, the interest in fairness to the attorney and protection of reputational interests are probably not higher values, even when no probable cause is found.[10] The argument for administrative efficiency typically has not been found to be the type of higher value that outweighs First Amendment rights.

---

7. *See* Hartford Courant Co. ("Precisely because docket sheets provide a map of the proceedings in the underlying cases, their availability greatly enhances the appearance of fairness.").

8. Press-Enterprise II, 478 U.S. 1, 14 (1986) (quoting Press-Enterprise I, 464 U.S. 501, 510 (1984)).

9. Even if access to the docket sheets of the disciplinary agency were sought, once a finding of probable cause was made or the complaint was dismissed without finding probable cause, the investigation would be largely complete and the integrity of the investigative process would not be affected. Moreover, most courts have rejected investigative integrity as an argument that outweighs First Amendment interests.

10. The fact that no probable cause was found can be made public, along with the reasons why this determination was made, so that interested parties who access the information can determine what weight, if any, to give the complaint. At a minimum, a blanket statute or rule making all such records private is subject to attack as not sufficiently narrowly tailored. *See* Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 509 (1st Cir. 1989) (striking down as unconstitutional a statute that sealed all criminal records in cases where there was an acquittal or no probable cause was found).

Likewise, the interest in rehabilitation has not been found to outweigh First Amendment interests.[11] Because there is substantial evidence that the reputation of the Bar is actually undercut by secrecy, that argument would unlikely to be found to be a "higher value" that overrides the public's First Amendment right of access.

62. Lawyer discipline documents may also be obtained based on a common law right of access. The most cited discussion of the historical common law right appears in Nixon v. Warner Communications, Inc., 435 U.S, 589, at 597-98 (1978). In that case, the United States Supreme Court considered whether audiotapes which had been admitted into evidence in the trials of President Richard Nixon's former advisors could be copied for broadcasting and sale to the public. The Court noted that "[i]t is clear that the courts in this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." Although the Court observed that the contours of the qualified right of access "had not been delineated with any precision," it explained that "[t]he interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies." Id. 435 U.S. 589, at 597-98 (1978). While the Nixon Court considered materials that had been admitted at trial, the common law right also extends to judicial documents not introduced in open court and to other public records.[12]

---

**11.** *See* Smith v. Daily Mail Publ'g Co., 443 U.S. 97, 104-106 (1979) (state's interest in rehabilitation of juvenile offenders does not outweigh First Amendment rights); Globe Newspaper Co. v. Fenton, 819 F. Supp 89, at 98 (D. Mass. 1993) (noting that protection of state's interest in reintegration and rehabilitation of defendants can be effected through means other than burdening First Amendment right of access). Moreover, there would have to be a clear showing and specific findings that keeping all discipline information *private* is necessary for rehabilitation. *See* Press-Enterprise II, 478 U.S. 1, 13-15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion."). In the absence of empirical evidence supporting this claim, it would be difficult to make this showing.

**12.** *E.g.,* Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 903 (D.C. Cir. 1996) ("[Judicial records are but a subset of the universe of documents to which the common law right applies."). Ctr. for Nat'l Sec. Studies v. U.S. Dep't. of Justice, 331 F.3d 918, 936 (D.C. Cir. 2003) (common law right of access extends to all branches of government). Since lawyer disciplinary activities are typically supervised within the judicial branch, the analysis with respect to the other branches need not be developed here.

63. Lower federal courts and state courts recognize the common law right to inspect judicial documents.[13] This right of access allows the citizenry to monitor the courts[14] and serves as a check on arbitrary judicial behavior. It also promotes public confidence in the legal system.[15] The common law right is broader than the First Amendment right because the common law right attaches to virtually all judicial records and documents without the need to show a historic tradition of openness.[16]

64. The Plaintiff has initiated this proceeding primarily to enhance his ability to petition his government and to redress grievances concerning the functioning of the governmental agencies comprising the New Hampshire Supreme Court Attorney Discipline Office and the New Hampshire Judicial Conduct Committee. This Petition may be construed as a public means of redressing the Plaintiff's grievances against improper procedures adopted by both those organs of government. Accordingly, there must be a public hearing simply because petitioning for a redress of grievances is in itself a quintessentially public act. See, e.g., Eastern R.R. Presidents Conference v. Noerr Motor Freight, 336 U.S. 127 (1961). The right to petition extends to the "approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government." California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, at 510 (1972).

---

**13.** *See, e.g.,* Holland v. Eads, 614 So. 2d 1012, 1014-15 (Ala. 1993); Ark. Best Corp. v. Gen. Elec. Capital Corp., 878 S.W.2d 708, 711 (Ark. 1994); In re Johnson, 598 N.E.2d 406 (Ill. App. 1992); Roman Catholic Diocese of Lexington v. Noble, 92 S.W.3d 724 (Ky. 2002); People v. Atkins, 514 N.W.2d 148, 149 (Mich. 1994); Republican Co. v. Appeals Court, 812 N.E. 2d 887, 891 (Mass. 2004); State v. Cribbs, 469 N.W.2d 108 (Neb. 1991); *see also* Daily News v. Teresi, 706 N.Y.S.2d 527 (App. Div. 2000) (noting that state recognizes common law right of access to court records but looks to federal courts for instruction).

**14.** FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987); *see also* Leucadia, Inc. v. Applied Extrusion Tech., 988 F.2d 157, 161 (3d Cir. 1993); Roman Catholic Diocese of Lexington, 92 S.W.3d at 732.

**15.** Wash. Legal Foundation, 89 F.3d 897, at 901.

**16.** *See, e.g.,* Va. Dept. of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004); United States v. Gotti, 322 F. Supp. 2d 230, 239-41 (E.D.N.Y. 2004).

21

65. The right of petition is a posting of remonstrances on the official door; it is a vexatious and clamorous gonging; it is at once a demand for official response and an invitation for collective support from fellow citizens. King George might well have preferred that Thomas Jefferson had catalogued his "long train of abuses" in a private complaint rather than a public Declaration of Independence, but Jefferson had another agenda. The members of the Attorney Discipline Office and the Judicial Conduct Committee, and indeed, the Justices of the New Hampshire Supreme Court have failed to appreciate that the very act of complaining to government is an act of democratic participation, individual catharsis, and free expression in its own right.

## VII. **Relevant Law – New Hampshire Right-To-Know Law**

66. Information that reveals governmental operations or activities falls within the ambit of the public interest Chapter 91-A was enacted to serve. Every New Hampshire citizen, including the Plaintiff, has a right to keep a watchful eye on the workings of public agencies and to engage in meaningful public debate aimed to reform any discovered corruption or deficiencies. Essentially, public access also serves as a check on corrupt practices by exposing government agencies to public scrutiny.

67. The New Hampshire Supreme Court has developed a consistent parallel track of cases with similar reasoning in regard to the release of official records pursuant to NH RSA Chapter 91-A. The core principles of the two leading seminal cases, Lodge v. Knowlton, supra, 118 N.H. 574 (1978) and Petition of Keene Sentinel, 136 N.H. 121, (1992) have been referenced together in later precedents, such as: Union Leader Corp. v. New Hampshire Housing Finance Authority, 142 N.H. 540 (1997) and Union Leader Corp. v. City of Nashua, 141 N.H. 473 (1996). The New Hampshire Supreme Court has mandated that in the case of records that may be subject to release pursuant to RSA Chapter 91-A and the situation involving the closure or nondisclosure of court records, the reviewing court must employ a kind of

22

strict scrutiny review. Because there is a presumption that both classes of records are public, before withholding release of a record, the reviewing Court is obligated to make a finding that there exists no reasonable alternative to nondisclosure, while at the same time using the *"least restrictive means necessary to effectuate the purposes sought to be achieved. For example, instead of sealing an entire document because it has been determined that parts of it should not be accessible to the public, the court should consider if redaction of those parts is the appropriate least restrictive means."* Petition of Keene Sentinel, 136 N.H. at 131.

68. Under part I, article 8 of the New Hampshire Constitution, the Plaintiff (and members of the public and media) has a presumptive right of access to all governmental proceedings and records, unless limited by a statutory provision that does not offend the New Hampshire Constitution and/or the United States Constitution. It is important to realize that the New Hampshire Supreme Court, when ruling in Petition of Keene Sentinel, held that, with respect to the public's protected right of access, the New Hampshire Constitution does not distinguish between criminal and civil records or proceedings.

> In une quivocal language, part I, article 8 of the New Hampshire Constitution provides for the openness, accessibility, accountability and responsiveness of government. Furthermore, part I, article 8 specifically provides that in aid of the foregoing "the public's right of access to governmental proceedings and records shall not be unreasonably restricted." These constitutional provisions make no explicit distinction between civil and criminal records, and none can reasonably be implied. 131 N.H. at 127.

## VIII. **Irreparable Injury**

69. Plaintiff is suffering, and will continue to suffer irreparable injury by the lack of effective access to judicial misconduct and attorney misconduct records, insofar as that lack of access impacts the Plaintiff's ability to materially and effectively criticize government in the performance of its duties. Additionally, Plaintiff is

23

suffering, and will continue to suffer irreparable injury by the brooding presence and chilling effect of the prevailing policy, practice and custom of limiting effective access to judicial misconduct and attorney misconduct records

## IX.   **Jury Demand**

70.  Plaintiff respectfully demands a jury for the trial of this action.

## X.   **Causes of Action**

First Cause of Action

71.  Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 70 of this complaint, as though fully set forth herein.

72.  At all times relevant herein, the Defendants were state actors and their conduct was subject to Title 42 U.S.C. Sections 1983, 1985, and 1988.  ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions."  Dennis v. Sparks, 449 U.S. 24, at 27-28 (1980).

73.  Defendants have relied on unconstitutional provisions of New Hampshire Supreme Court Rule 37(5)(c) and Rule 37A(II)(a)(6) insofar as those Rules' definition of "work product" is inconsistent with New Hampshire Supreme Court caselaw and Federal caselaw, offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

74.  Defendants' actions under color of state law are offensive to Plaintiff's protected First Amendment (United States Constitution) right of access to government controlled information.

24

75. Defendants' actions are subject to strict judicial scrutiny and violate Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, and the federal Civil Rights Act of 1871, Title 42 U.S.C. § 1983.

76. As a result of Defendants' ongoing violations of the First and Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, the Plaintiff has suffered and will continue to suffer injury.

77. Pursuant to Title 42 U.S.C. § 1983, the Plaintiff is entitled to a declaration proclaiming that Defendants have violated several different constitutional provisions, including the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, the Privileges and Immunities Clause of Article IV of the Constitution, and the First Amendment's Petition Clause.

78. Plaintiff is also entitled to injunctive relief requiring Defendants, in their official capacity, to include the foregoing investigation and report by Attorney Dewhirst in the list of documents available to the Plaintiff and to the public through the Attorney Discipline web site: http://nhattyreg.org/

Second Cause of Action

79. Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 78 of this complaint, as though fully set forth herein.

80. At all times relevant herein, the Defendants were state actors and their conduct was subject to Title 42 U.S.C. Sections 1983, 1985, and 1988. ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions." Dennis v. Sparks, 449 U.S. 24, at 27-28 (1980).

81. Defendants have relied on unconstitutional provisions of New Hampshire Supreme Court Rule 37A(IV)(a)(2)(B) insofar as that Rule commands the NHPCC, or any component of the Attorney Discipline Office, to destroy all public records of non-

docketed professional misconduct grievances after those records have been available for public inspection for two years from the date of original filing. This mandatory procedure of destroying public records after the public has had unbridled access for two years is offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

82. Defendants' actions under color of state law are offensive to Plaintiff's protected First Amendment (United States Constitution) right of access to government controlled information.

83. Defendants' actions are subject to strict judicial scrutiny and violate Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, and the federal Civil Rights Act of 1871, Title 42 U.S.C. § 1983.

84. As a result of Defendants' ongoing violations of the First and Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, the Plaintiff has suffered and will continue to suffer injury.

Third Cause of Action

85. Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 84 of this complaint, as though fully set forth herein.

86. At all times relevant herein, the Defendants were state actors and their conduct was subject to Title 42 U.S.C. Sections 1983, 1985, and 1988. ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions." Dennis v. Sparks, 449 U.S. 24, at 27-28 (1980).

87. Defendants have relied on unconstitutional provisions of New Hampshire Supreme Court Rule 37A(IV)(a)(2)(C) insofar as that Rule permits the NHPCC, or any component of the Attorney Discipline Office, to destroy all public records of

26

docketed professional misconduct complaints three years after notice of a dismissal with or without a caution, or three years after the date of an annulment, or three years after the death of the attorney respondent. This discretionary procedure of destroying public records after the public has had unbridled access for three years is offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

88. Defendants' actions under color of state law are offensive to Plaintiff's protected First Amendment (United States Constitution) right of access to government controlled information.

89. Defendants' actions are subject to strict judicial scrutiny and violate Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution, and the federal Civil Rights Act of 1871, Title 42 U.S.C. § 1983.

90. As a result of Defendants' ongoing violations of the First and Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, the Plaintiff has suffered and will continue to suffer injury.

Fourth Cause of Action

91. Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 90 of this complaint, as though fully set forth herein.

92. At all times relevant herein, the Defendants were state actors and their conduct was subject to Title 42 U.S.C. Sections 1983, 1985, and 1988. ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions." Dennis v. Sparks, 449 U.S. 24, at 27-28 (1980).

93. Defendants have relied on unconstitutional provisions of New Hampshire Supreme Court Rule 37A(IV)(a)(2)(D) insofar as that Rule mandates that the NHPCC,

27

or any component of the Attorney Discipline Office, shall not maintain an index of
grievances that were not docketed as complaints.  Without an index, public access to
non-docketed grievances provided by Supreme Court Rule 37A(IV)(a)(2)(B) is
impracticable and the proviso of unbridled two years of public access is rendered
nonsensical.  This Supreme Court Rule offends the public access provisions of the
New Hampshire Constitution, and impairs the transparency of judicial conduct
grievance proceedings in violation of the First and Fourteenth Amendments to the
United States Constitution.

94.  Defendants' actions under color of state law are offensive to Plaintiff's
protected First Amendment (United States Constitution) right of access to government
controlled information.

95.  Defendants' actions are subject to strict judicial scrutiny and violate
Plaintiff's rights under the First and Fourteenth Amendments to the United States
Constitution, and the federal Civil Rights Act of 1871, Title 42 U.S.C. § 1983.

96.  As a result of Defendants' ongoing violations of the First and Fourteenth
Amendment to the United States Constitution and the Civil Rights Act of 1871, the
Plaintiff has suffered and will continue to suffer injury.

Fifth Cause of Action

97.  Plaintiff realleges and incorporates the allegations of Paragraphs 1 through
96 of this complaint, as though fully set forth herein.

98.  Under part I, article 8 of the New Hampshire Constitution, the Plaintiff has a
presumptive right of access to all governmental proceedings and records, unless
limited by a statutory provision that does not offend the New Hampshire Constitution
and/or the United States Constitution.  As stated hereinabove, the "work product"
definition promulgated by Supreme Court Rule 37(5)(c) and Rule 37A(II)(a)(6) is
inconsistent with New Hampshire Supreme Court caselaw and Federal caselaw,

28

offensive to the public access provisions of the New Hampshire Constitution, and
impairs the transparency of attorney grievance proceedings in violation of the First
and Fourteenth Amendments to the United States Constitution.

99. As a supplemental claim, Plaintiff invokes New Hampshire RSA Chapter
91-A in a further effort to obtain records, which are being unreasonably withheld by
government officials. Of relevance is an April 2003 ruling by the New Hampshire
Supreme Court in the case: New Hampshire Civil Liberties Union v. City of
Manchester, 149 N.H. 437, emphasizing that -

> The purpose of the Right-to-Know Law is to "ensure both the greatest
> possible public access to the actions, discussions and records of all public
> bodies, and their accountability to the people." RSA 91-A:1 (2001). The
> Right-to-Know Law "helps further our State Constitutional requirement that
> the public's right of access to governmental proceedings and records shall not
> be unreasonably restricted." Goode v. N. H. Legislative Budget Assistant,
> 48 N.H. 551, 553, 813 A.2d 381 (2002); see N.H. CONST. pt. I, art. 8. "We
> resolve questions regarding the [Right-to-Know] law with a view to
> providing the utmost information in order to best effectuate the statutory and
> constitutional objective of facilitating access to all public documents. Thus,
> we construe provisions favoring disclosure broadly, while construing
> exemptions narrowly." Goode, 148 N.H. at 554, 813 A.2d 381 (quotation and
> citation omitted). The party seeking nondisclosure has the burden of proof.
> Union Lea der Cor p. v. N.H. H ousing Fin. Auth., 142 N.H. 540, 549, 705
> A.2d 725 (1997).
>
> We note that the Right-to-Know Law requires governmental agencies to
> maintain public records in a manner that makes them available to the public.
> Hawkins v. N.H. Dep' t of Health and Human Services, 147 N.H. 376, 379,
> 788 A.2d 255 (2001).
>
> . . . . . .
>
> Finally, we balance the public interest in disclosure against the governmental
> and individual interests in non-disclosure. The legislature has provided the
> weight to be given to the public's interest in disclosure. Nashua, 141 N.H. at
> 476, 686 A .2d 310. The purpose of th e Right-to-Know Law "is to provide
> the utmost information to the public about w hat its 'government is up to.' "
> *Id.* According to the legislature, "Openness in the conduct of public business
> is essential to a democratic society. The purpose of this chapter is to ensure
> both the greatest possible public access to the actions, discussions and

records of all public bodies, and their accountability to the people." RSA 91-A:1. The public has a strong interest in disclosureof information pertaining to its government's activities. See Nashua,[17] 141 N.H. at 477, 686 A.2d 310.

## XI. **Prayer**

**AS TO ALL CAUSES OF ACTION**, Plaintiff respectfully prays this Court enter judgment in favor of the Plaintiff against all Defendants jointly and severally, for the violation of his civil rights, for actual, general, special, compensatory damages in an amount within the jurisdictional limits of the Court to be determined by the jury and further demands judgment against all Defendants, jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

**AS TO THE PLAINTIFF'S FIRST CAUSE OF ACTION**, Plaintiff respectfully prays this Court enter judgment in favor of the Plaintiff against all Defendants, including:

(a) issue a declaratory judgment declaring New Hampshire Supreme Court Rule 37(5)(c) and Rule 37A(II)(a)(6) unconstitutional, insofar as the Rules' definition of "work product" is inconsistent with New Hampshire Supreme Court caselaw and Federal caselaw, offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

(b) grant the Plaintiff permanent injunctive relief requiring Defendant James DeHart, Esq., in his official capacity, to forthwith release to the Plaintiff the aforementioned investigation and report authored by Attorney Robert C. Dewhirst.

---

**17.** Union Leader Corp. v. City of Nashua, 141 N.H. 473, 686 A.2d 310 (1996).

(c) grant the Plaintiff permanent injunctive relief requiring Defendant James DeHart, Esq. to forthwith add the investigation and report authored by Attorney Robert C. Dewhirst to the collection of attorney discipline files available to the public.

(d) grant the Plaintiff permanent injunctive relief requiring Defendant James DeHart, Esq. to forthwith add the investigation and report authored by Attorney Robert C. Dewhirst to the collection of attorney discipline files available to the public at the Attorney Discipline System web site at: *http://nhattyreg.org/search.php*.

(e) award the Plaintiff his reasonable attorneys' fees and costs pursuant to Title 42 U.S.C. section 1983 and /or other applicable provisions; and

(f) award further relief the Court finds just and appropriate.

**AS TO THE PLAINTIFF'S SECOND CAUSE OF ACTION**, Plaintiff respectfully prays this Court enter judgment in favor of the Plaintiff against all Defendants, including:

(a) issue a declaratory judgment declaring New Hampshire Supreme Court Rule 37A(IV)(a)(2)(B) unconstitutional, insofar as that Rule commands the NHPCC, or any component of the Attorney Discipline Office, to destroy all public records of non-docketed professional misconduct grievances after those records have been available for public inspection for two years from the date of original filing.

(b) issue a declaratory judgment declaring New Hampshire Supreme Court Rule 37A(IV)(a)(2)(B) unconstitutional, insofar as this Rule's mandatory procedure of destroying public records after the public has had unbridled access for two years is offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

31

**AS TO THE PLAINTIFF'S THIRD CAUSE OF ACTION**, Plaintiff respectfully prays this Court enter judgment in favor of the Plaintiff against all Defendants, including:

(a)   issue a declaratory judgment declaring New Hampshire Supreme Court Rule 37A(IV)(a)(2)(C) unconstitutional, insofar as that Rule permits the NHPCC, or any component of the Attorney Discipline Office, to destroy all public records of docketed professional misconduct complaints three years after notice of a dismissal with or without a caution, or three years after the date of an annulment, or three years after the death of the attorney respondent.

(b)   issue a declaratory judgment declaring New Hampshire Supreme Court Rule 37A(IV)(a)(2)(C) unconstitutional, insofar as this Rule's discretionary procedure of destroying public records after the public has had unbridled access for two years is offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

**AS TO THE PLAINTIFF'S FOURTH CAUSE OF ACTION**, Plaintiff respectfully prays this Court enter judgment in favor of the Plaintiff against all Defendants, including:

(a)   issue a declaratory judgment declaring New Hampshire Supreme Court Rule 37A(IV)(a)(2)(D) unconstitutional, insofar as that Rule mandates that the NHPCC, or any component of the Attorney Discipline Office, shall not maintain an index of grievances that were not docketed as complaints. Without an index, public access to non-docketed grievances promised by Supreme Court Rule 37A(IV)(a)(2)(B) is impracticable and the proviso of unbridled two years of public access is rendered nonsensical.

(b)   issue a declaratory judgment declaring New Hampshire Supreme Court Rule 37A(IV)(a)(2)(D) unconstitutional, insofar as this Supreme Court Rule offends the public access provisions of the New Hampshire Constitution, and

32

impairs the transparency of judicial conduct grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

**AS TO THE PLAINTIFF'S FIFTH CAUSE OF ACTION**, Plaintiff respectfully prays this Court enter judgment in favor of the Plaintiff against all Defendants, including:

(a) grant the Plaintiff permanent injunctive relief pursuant to Section 91-A:7 of the New Hampshire Revised Statutes ("RSA");

(b) award the Plaintiff his reasonable attorneys' fees and costs pursuant to NH RSA section 91-A:8 and /or other applicable provisions; and

(c) award further relief the Court finds just and appropriate.

October 5, 2010

\_\_\_\_/s/Arthur Ginsberg
Arthur_Ginsberg
10 Glendale Drive
Nashua, NH 03064-1634
(603)889-0393
*aginsberg@comcast.net*