# EXHIBIT A

Arthur Ginsberg
10 Glendale Drive
Nashua, NH 03064


Re:  In the matter of Jennifer Ginsberg Wilson and Arthur Ginsberg
     Docket No. 98-M-1116

I am writing you because of what I believe are the unethical and illegal actions by Attorney John Griffith of Wilton, his wife (Barbara Griffith), who is **not** a lawyer, and in one particular instance, Attorney Henry Spaloss of Nashua.

**Overview**
My divorce proceedings began in July 1998 when my wife abruptly announced that she was sick of the house, the kids and me, wanted a trial separation, and moved out in less then a month. What I didn't know at that time was that this wasn't a trial separation; my wife was actually having a trial relationship with another man.  I was granted the divorce on the grounds of adultery, in my cross petition, and awarded physical custody of my children.

My ex-wife did not make much of an attempt to see our children when she moved out of the house. She told the Guardian ad Litem and me that she didn't actually want physical custody. She said our children should live with me and she didn't even want overnight visitation during the week. Unbelievably, she said that she just wanted to be able to come over and hang out at the house, be part of the family again, sometimes take the children out to dinner, but then return the children to my house. She then said that I could have the children in exchange for her desired financial settlement. She tried to sell me our own children and referred to them as bargaining chips.  I was shocked and wouldn't even discuss it with her. She told this to the Guardian ad Litem before she fired her first lawyer and hired Attorney Griffith. My wife has since moved to Vermont and doesn't see our children much. Unfortunately, my oldest daughter's therapist said she is going through a divorce of her own with my ex-wife.  My ex-wife treated court ordered visitation, as if it was optional and discontinued weekday visitation three months before she moved. Both of my children have learning disabilities and my oldest daughter attends a private boarding school that has a special "Learning Assistance Program". The school cost about $40,000 a year.

My wife was originally represented by Attorney John Durkin through the temporary hearing and the production of the Guardian at Litem report. My wife disagreed with both. Only 5 weeks away from trial, my wife obtained new counsel, Attorney John Griffith. As soon as Attorney Griffith came on this case things went decidedly down hill. Up until that date, my wife and I communicated directly. While at times it was difficult, we had come to terms with the divorce and were trying to get by the pain. My wife had no problem being forthcoming with the Guardian ad Litem before Attorney Griffith came on this case.

As soon as Attorney Griffith took over he notified my lawyer that my wife and I could no longer communicate directly. All communication would go through him, and there began a series of false and malicious accusations that dragged out the proceedings, alienated my wife, broke down our relationship,

1

dragged our children into the fray, got two Judges recused, caused me inordinate expense to defend, and, ultimately in my opinion, affected the final orders. Although Attorney Durkin represented my wife for a year without complaint, Attorney Griffith, successfully got Judge Hampsey to recuse himself, in what I believe were unethical and illegal circumstances and essentially started the divorce over. He made outrageous false allegations against me and the Guardian ad Litem that were never brought up by Attorney Durkin.

I was represented by Attorney Luci Pillsbury and later the addition of Attorney Steve Frasca, after Attorney Griffith came on this case. As a sole practitioner, Attorney Pillsbury couldn't keep up with all of Attorney Griffith's frivolous litigations and needed Attorney Frasca to handle the issues brought up by Attorney Griffith concerning my business. Shortly after the Judge Holman's ruling Luci Pillsbury retired. At the suggestion of Luci Pillsbury and Steve Frasca, believing that there was nothing else to be done, I represented myself Pro se for several months after the Judge's ruling. My ex-wife and I both had appeal Lawyers. Steve Frasca, who had told me many times that Attorney Griffith had stepped way over the line, but refused to file anything with the Court, was still a consultant to me and reviewed my motions to be filed with the Court and my correspondence with Attorney Griffith. Attorneys Pillsbury and Frasca did not hide their uncomfortable feelings in this case, because of the unethical conduct of Attorney Griffith, which neither wanted to deal with. All of my lawyers have acknowledged and openly stated that Attorney Griffith stepped way over the line and broke the law. I have learned that it is one thing for a lawyer to acknowledge that opposing counsel has broken the law; it's another to get them to do something about it. There is something wrong with the legal community in New Hampshire. Judges and lawyers all socialize with each other and then tolerate unethical and illegal actions.

When things heated up to the point that I felt no longer able to represent myself I asked Attorney Frasca to re-enter the case. Attorney Frasca said that the direction the case was going because of the conduct of Attorney Griffith, "It would be in your best interest to have new blood--a lawyer that didn't know Attorney Griffith."  Attorney Frasca took it upon himself to arrange representation for me with Attorney Anna Barbara Hantz of Gottesman & Hollis. Attorney Hantz did not know Attorney Griffith before she became my lawyer.

Roughly $600,000 has been spent in legal fees on this divorce, between the two parties, so far. At that cost, someone might think this was a complicated case. This was a simple case! My wife left for another man…didn't want custody…didn't even want visitation during the week…she told this to the Guardian ad Litem…all before Attorney Griffith came on this case. The complication was not in the case, but that Attorney Griffith has been out of control, abusing the system and breaking the law, all to his own financial benefit, as this case has become an annuity for him. This is not right.

It is my understanding that the Rules of Professional Conduct prohibit deceitful and malicious conduct by lawyer's lying, misrepresentation, false allegations, manipulating witnesses, intimidating witnesses, fabricating evidence and raising frivolous claims before the Court, all of which took place in this case. I ask the Committee to investigate these proceedings as I do not think it is fair for anyone to have to put up with what I have. All I have ever looked for from the Court is an honest decision on the facts, and I believe this lawyer did everything in his power to prevent that from happening. I have spent about $300,000 on legal fees and according to Attorney Griffith so has my ex-wife. I am now on the brink of bankruptcy.

I have enclosed an outline with some examples (there's a lot more) of the type of conduct, which I believe proves a pattern of abuse:

2

| 1 | Hiring co-counsel to force recusal of Trial Judge | My wife got an unfavorable ruling at the Temporary Hearing from Judge Hampsey and unfavorable Guardian ad Litem report. Five weeks from the schedule divorce trial, my wife fired her lawyer and hired Attorney Griffith. About a week later, Attorney Griffith brought on Attorney Henry Spaloss, a good friend of Judge Hampsey. Judge Hampsey, at first, denied Attorney Spaloss' appearance, stating that the Petitioner was already adequately represented. On a later date, at a hearing not related to this issue, with Attorney Spaloss seated at Petitioner's table, Judge Hampsey reversed his own previous decision, allowed the appearance of his good friend Attorney Spaloss and recused himself. There have been over 300 motions filed in this case (235 alone were filed after the divorce trial). There were countless appeals, yet the only one that was ever granted was by Judge Hampsey for his good friend, Attorney Spaloss. I find this more then a little suspicious. Judge Hampsey's recusal delayed the trial by almost 5 months, allowed Attorney Griffith to reopen issues, abuse the system and lead to serious effects on the process. Attorney Spaloss did almost nothing further in the case. Later at an emergency hearing where the Guardian ad Litem moved to suspend my wife's visitation with my daughter Elizabeth, because of physical and verbal abuse, Judge Holman had Attorney Spaloss summoned from another Courtroom for the hearing because Attorney Griffith was late. Upon entering the Courtroom, Attorney Spaloss said in open Court, "I don't know why you called me here. I don't know anything about the case." To me, this is evidence that Attorney Spaloss was brought in for the sole, improper purpose of forcing the recusal of Judge Hampsey. As further evidence, when Attorney Spaloss first came on this case, Attorney Pillsbury called Attorney Spaloss with a question. Attorney Spaloss abruptly stated "why are you calling me, call John (Griffith) it's his case." Both of my lawyers, Attorneys Pillsbury and Frasca, filed motions, attended depositions, corresponded with Attorney Griffith and at times each attended Court hearings alone. Attorney Spaloss was just a fixture in a chair at the Petitioner's table for the trial. I was able to observe in court that my lawyers didn't even treat Attorney Spaloss as opposing counsel and Attorney Spaloss didn't act as if he was opposing counsel. Also, where Judge Hampsey was alert and followed the case, Judge Holman seemed board, tired, at times closed his eyes, and was easily distracted by Attorney Griffith theatrics. It was obvious why Attorney Griffith went Judge shopping. |
| 2 | False accusation to the Court by Attorney Griffith that he had evidence that I earned twice as much money as I claimed on my taxes and that I was funneling products through a third party and taking money under the table | Although proof of these wild, false, and slanderous allegations was requested by Attorney Pillsbury in writing, Attorney Griffith never even responded to her request and did not produce the evidence. My wife told a witness, Diane Nazarenko, that she knew the allegations were not true. (**see Diane Nazarenko's 2nd affidavit paragraph 11.**) |

3

| 3 | Malicious, false and slanderous claims that I have a mental defect. | Attorney Griffith has continually claimed and filed in Court motions that I have a mental defect and am paranoid. He even attached pages of the DSM-IV Diagnostic Manual to his pleadings. On one motion, he claimed that he had proof that I was delusional and paranoid because I suggested that my daughter Alyssa called me to come to her mother's condo as part of her mother's and her lawyer's plot to have me arrested. The testimony of the responding police officer and the Guardian ad Litem notes from her interview with my daughter, Alyssa, and with my other daughter, Elizabeth, showed that Alyssa was, in fact, being used by her mother and her lawyer. The Court has never found any reason to have me evaluated for mental defect. |
|---|---|---|
| 4 | Improperly influencing witnesses and producing a fraudulent forensic psychologist report. | Attorney Griffith came up with this wild claim that his client was a victim of my "Psychological Terrorism." To support this fictitious claim Attorney Griffith hired a forensic psychologist, Dr. Kinsler, to write a report concerning my wife, me, and our marriage. Dr. Kinsler was a gun for hire, who at best was derelict of his duties. He did not qualify the people he interviewed for this report submitted to the court. It was clear from communication with my lawyer that Attorney Griffith supplied the witnesses to Dr. Kinsler. The main witness was a Mr. MacDevitt who is in his mid 50's and a former student of my wife's late father, and lives in upstate New York. I had only met him briefly a few times in my life and had not seen him in 13 years before my divorce. My wife saw him only once in the 10 years before she moved out of the house. Mr. MacDevitt described me as a monster and my wife as an abused wife. He had no first-hand knowledge of my marriage and was brought in specifically for the purpose of lying in this report and giving the Court a false impression of me. Attorney Griffith knew this was not a proper witness but used him anyway, attempting to deceive the Court by planting this witness within the report. In addition, Dr. Kinsler's report relied on the testimony of another person, Laurie Harris, who lives in Newton, MA, and we only saw twice a year for dinner, and my wife's brother who lives in Washington, D.C., who we only saw a couple of times a year. Attorney Griffith did not make any attempt to supply witnesses to Dr. Kinsler that my wife and I saw on a regular basis, like neighbors and close friends. It is irresponsible and unethical, if not illegal, that Dr. Kinsler did not qualify his witnesses for a Forensic Psychologist Report submitted in a court of law. It appears that Attorney Griffith and Dr. Kinsler worked together on this bogus report. It makes me wonder if Attorney Griffith or his wife already knew Dr. Kinsler. Attorney Griffith then requested that the Guardian ad Litem have Dr. Kinsler do a full family evaluation, claiming that he was the only independent mental health professional involved in this case. This claim couldn't be further from the truth. Although this report had little if any factual support and was clearly manufactured for the litigation, I believe it adversely influenced the judge's decision. Judge Holman, in the divorce decree, stated that my wife was a caring and loving mother. The only evidence offered to the court to support Judge Holman's finding was this bogus Forensic Psychologist Report. The only witness to testify in court on my marriage and my wife's mothering habits was Tricia Norris, our neighbor, and my wife's best friend in the neighborhood. Tricia Norris testified that I treated my wife like a queen and that my wife did not take care of the kids and was negligent as a mother. Tricia said that many times my wife would go out without making plans for anyone to watch our children. At times, when I was out of town, my younger daughter Alyssa would go over to Tricia's house |

4

| | | |
|---|---|---|
| | | saying that she was hungry and didn't know where her mother went. |
| 5 | Witness intimidation and asking a witness to lie to the Court. | A friend of the family, Diane Nazarenko, was a witness in this case. Diane Nazarenko lives in Ferrisburg, Vermont, which is 15 miles south of Burlington, VT. My wife had a planned visit with the Nazarenko's, who she visited quite often after she left the marital home. Attorney Griffith's wife, Barbara, accompanied my wife into the house, letting Diane Nazarenko think that she was an associate in my wife's multi-level marketing business. Once Diane found out that this person was Attorney Griffith's wife, it shocked Diane, and she needed get her husband, Peter, to accompany her in this unannounced and uninvited meeting at their house. Peter Nazarenko, who was downstairs in his home office, was also in shock and felt blindsided by this move. When the Nazarenko's returned to the living room Attorney Griffith was also now present. He had been waiting outside and his wife let him into the Nazarenko's home. Once in their house Attorney Griffith and his wife went to work on the Nazarenko's. They attempted to influence the Nazarenko's to testify against me. Attorney Griffith and his wife specifically told the Nazarenko's that I was crazy and trying to take everything away from my wife, leaving her broke. They tried to convince Diane to testify to this. Since this happened before trial and before Attorney Griffith was embarrassed into mediation, which he refused to do until Judge Holman questioned him about his refusal to mediate, there was absolutely no truth to the allegations that I was trying to leave the Petitioner with nothing. The Nazarenko's did not tell me about this incident until after the trial. They were concerned about the repercussions it would have caused. My wife told Diane Nazarenko and me that Attorney Griffith threatened to drop her if she agreed to mediation. When mediation did take place, it was <u>not</u> done in good faith. Attorney Griffith would not allow his client to speak on her own behalf as requested by the mediator, Attorney James Leary. Attorney Griffith just went into a litany of false allegations and ultimately demanded an outrageous combined alimony and joint child support package of $13,500 per month, plus a $5,500 increase in the monthly temporary alimony going back 16 months ($88,000), in addition to the property settlement and other benefits. In essence he sabotaged the mediation. The next day I contacted my wife and suggested that we both go for arbitration/mediation with Attorney Leary, leave our lawyers at home, get this done and move on with our lives. We actually agreed on a property settlement. She agreed to this and we set up an appointment with Attorney Leary. Later in the day Attorney Griffith called Attorney Leary and cancelled the appointment. It appeared that Attorney Griffith wasn't going to let this source of revenue get away. **(See 2nd Diane Nazarenko Affidavit)**. |
| 6 | Witness tampering. | Dr. Laura Landerman, a psychologist, met with my wife on two occasions and with me on one occasion before meeting with my daughter Alyssa. This was before Attorney Griffith came on this case. Dr. Landerman only met with Alyssa alone 4 times over a three month period. Before Attorney Griffith and his wife met with Dr. Landerman, she told me that Alyssa was doing fine and only had to check in with her maybe once a month. Alyssa did not see her at all after that. Yet, Dr. Landerman changed her diagnosis and opinion of this case after meeting with the Griffiths for two hours at a local restaurant. There was a prior relationship |

5

| | | |
|---|---|---|
| | | between the Griffiths and Dr. Landerman, which she acknowledged, although Dr. Landerman refused to say what it was. Attorney Griffith then wrote a letter to the Guardian ad Litem and stated that after his discussion with Dr. Landerman, he was questioning the validity of the Guardian ad Litem's notes from her own discussions with Dr. Landerman. **(Attorney Griffith included this letter as an exhibit to the Court in a motion)** Although I only met with Dr. Landerman alone one time, Attorney Griffith said that Dr. Landerman told him about my constant insistence that my wife was an alcoholic and cult member. After reading this letter, I called Dr. Landerman who had a different tone with me and stated that she was recommending a full family evaluation. I informed her that she didn't have any standing in this case and questioned her motives and what made her change her opinion in this case from just a couple of weeks ago, during which time she did not see Alyssa, but I never got a straight answer from Dr. Landerman. This is another example of Attorney Griffith's misrepresentation, making things up and attempting to influence the Court with misrepresentation and innuendo. The Court never found any reason for a full family evaluation and denied all of Attorney Griffith's motions for one. Also, after the Griffith's met with Dr. Landerman, I found out that an appointment was made, without my knowledge, for my other daughter, Elizabeth, to meet with Dr. Landerman. Elizabeth claimed that her mother said that it would help her out in court if she went to see Dr. Landerman. When I called to cancel this appointment, Dr. Landerman's secretary gave me a hard time, telling me that even though I have primary physical custody, my wife and I have shared legal custody and that I could not cancel the appointment. I found it odd that a secretary would involve herself in something like this or even have any specific knowledge of this case. |
| 7 | Misrepresentation of my wife's arrest. | Attorney Spaloss handled my wife's arrest hearing, which resulted from her disorderly conduct, attempting to enter my house, and making a scene in front of the house that included threatening to drive her car through my garage door. I did <u>not</u> file any charges in this incident. I was called by the State to testify in the criminal proceeding. Attorney Spaloss asked me on cross-examination if it was true that I told the police that I didn't want them to arrest my wife. I responded by stating "it was absolutely true. I told the police officers that I did <u>not</u> want my wife arrested. I only wanted her to leave the premises, but the police told me it was not my decision." **(Later, Attorney Griffith, in a motion to the Court, claimed that I made dishonest, criminal accusations against my wife and "had her arrested.")** He knew this was a lie. He continues to say it, even today. **(See Deposition of Jennifer Wilson, page 90)** |
| 8 | Undermining the Guardian ad Litem. | At my wife's request, Attorney Kate Earnshaw was appointed Guardian ad Litem in this case. The Petitioner did not have a single complaint about the Guardian ad Litem until Attorney Griffith came on the case. The Guardian ad Litem did her full evaluation and recommendations to the Court without a single complaint from the Petitioner, before Attorney Griffith came on the case. The Petitioner cooperated with the Guardian ad Litem before Attorney Griffith came on the case. As soon as Attorney Griffith came on the case, he started a barrage of groundless attacks against the Guardian ad Litem. He continually moved for her removal until finally, despite my children's reliance on her intervention on issues of visitation and their relationship with their mother, he succeeded in having the |

6

| | | |
|---|---|---|
| | | Guardian ad Litem removed last summer when Judge Groff was assigned to this case, after Attorney Griffith moved to have Judge Holman recused. The Guardian ad Litem consistently found the allegations against me to be groundless. There was never any hearing on the recusal of Judge Holeman. Judge Groff was given this case on "special assignment." |
| 9 | Intimidation of witnesses in Court. | On the last day of trial, when I was on the witness stand being questioned by Attorney Griffith, the Court Bailiff had to get up and tell Attorney Griffith's wife to stop trying to intimidate me. She was using facial expressions, body movements and mouthing words to me. I have spoken with the Court Bailiff since the trial, and he has confirmed this. Attorney Pillsbury and Attorney Earnshaw also witnessed this incident. Diane Nazarenko described similar intimidation by Attorney Griffith's wife at her deposition in Vermont. My lawyer and I did not go to Vermont, but participated via conference call. Diane Nazarenko said that the Griffiths' intimidation at her house and at her deposition greatly affected her testimony. **(see Court Bailiff, Paul Haskel's Affidavit and Diane Nazarenko's 2nd Affidavit paragraph 10).** |
| 10 | False Affidavit submitted to Court. | The Petitioner lied in her Affidavit taken under oath, and Attorney Griffith submitted it to the Court, knowing it was not true **(Affidavit Jennifer Wilson attached).** Diane Nazarenko told Respondent she never told the Petitioner my children were suffering psychological harm while in my care. Helene Ginsberg told me that she never told the Petitioner the children were suffering psychological harm while in my care. Attorney Griffith produced this affidavit to justify his client passing around selective portions of the Guardian ad Litem's notes. Attorney Griffith didn't bother to check with the Guardian ad Litem about these claims. Most of what the Petitioner claimed is either a lie or taken out of context **(See Diane Nazarenko's 2nd and Helene Ginsberg's responsive Affidavits).** |
| 11 | Disruption of school meeting. | In June, 2000, Attorney Griffith's wife disrupted a special school meeting on my daughter Elizabeth's future by showing up with my wife at this meeting. I informed the school before hand that I suspected Attorney Griffith may show up for the meeting--this time his wife went solo. The Griffith's inappropriate conduct was becoming predictable. School officials, who also thought it was inappropriate and would be disruptive for a divorce attorney to attend this meeting, decided to have Attorney Bennett, the School District's lawyer present. This was not a divorce issue. At first Mrs. Griffith refused leave and called her husband on her cell phone. Mrs. Griffith then asked Attorney Bennett to speak with her husband, which was done in private. Discussions went on for awhile until Mrs. Griffith finally agreed to leave the meeting. This delay limited the amount of time Elizabeth's teachers, counselors, and the head of the School Districts Special Education Department could attend the meeting. With the support of Elizabeth's therapist in attendance, the school agreed that Elizabeth could be promoted to ninth grade. The Petitioner agreed to this plan at the meeting but later rejected the plan on advice of her counsel. Elizabeth's Guidance Counselor said that up until this meeting her mother showed little interest her education. Attorney Griffith used my |

7

| | | children all through this case without concern for their welfare. |
|---|---|---|
| 12 | Conspiracy to deceive the Court | It's my understanding that attorneys are required to inform the Court if they become aware that allegations in a pleading turn out to false.<br><br>*The knife incident*: The Petitioner alleged in her pleading that I threatened my daughter with a knife. After having to expend substantial funds deposing the police officer, having the Guardian ad Litem investigate and speak with my daughters, it became clear to all that I never threatened my daughter with a knife. Rather than withdraw the accusation, Attorney Griffith changed their story, in another lie, but indicating he knew when he wrote the motion that it was not true but prosecuted the motion anyway.<br><br>*Misrepresentation of earnings*. Attorney Griffith claimed he had evidence that I earned twice as much money as I reported on my tax return. He did not respond to my lawyer's request for this evidence. His client told me and Diane Nazarenko she knew this wasn't true. **(see Diane Nazarenko's 2nd Affidavit paragraph 11)**<br><br>*Various reports to the Guardian ad Litem about my conduct with my children that was determined to be unfounded.* I ended up paying legal fees and inordinate sums (about $17,000) to the Guardian ad Litem since I was paying 100% of the cost, and not one of their allegations was ever found to be true. This caused great stress on my children, who had to be interviewed in these investigations. My daughter Elizabeth's therapist and I believe this contributed to her diagnosed clinical depression. My wife and Attorney Griffith dragged the children into this case without any concern for their well being. My wife said our children were bargaining chips but I never thought that she would allow her lawyer to jeopardize their well being in her quest for money.<br><br>Fraudulent Affidavit. <u>See</u> Helene Ginsberg's and Diane Nazarenko's situation above.<br><br>Attorney Griffith assisted my ex-wife in claiming that money from a $25,000 Home Equity Line of Credit was invested in my company. This was a lie. Attorney Griffith had a copy the company's accounting records and knew it was a lie. $5,000 of the Home Equity Loan was used to paint the house, and it is not known what my wife did with the remaining $19,000 and other joint marital monies. The court made me sole responsible for the repayment of this loan.<br><br>Attorney Griffith filed a motion claiming that I fraudulently understated my assets. He claimed that stock options that I have from my client was worth $271,000. Although my lawyer asked in writing for his evidence that the options were worth $271,000, as usual Attorney Griffith never responded. Attorney Griffith had the Options certificates that showed that it had a par value of .003 cents per share. These stock options are practically worthless. The company in question has never gone public, has never turned a profit, and is in financial trouble. Attorney Griffith lied to the Court. I believe this also effected the Judges decision. Also, half of these options were offered to my wife before this claim was even made. |

My ex-wife, who has documented history with the Court of illegally entering my house when I am not home, planted drugs in my house, after which Attorney Griffith filed an Emergency Ex Parte Motion to gain access to my house to look for records, while my children and I were in Florida. Clearly, he knew the drugs had been planted, and it was part of a scheme to discredit me. I was ordered to be in court the morning after I returned from Florida for a hearing. The night I returned from Florida I found the drugs and the missing company files that were previously taken from my house. I turned all the items over to Attorney Pillsbury that morning before the hearing. Attorney Griffith called the police and reported that there were large sums or Marijuana in my house. I was shocked and humiliated when a van with 4 police officers from the narcotics squad arrived at my house. Fortunately, I had found the drugs and handed it over to my lawyer before the police showed up. This didn't stop Attorney Griffith from filing another motion regarding drugs.

The judge ruled that the drugs were not mine, and Attorney Griffith did not appeal that ruling, but this did not stop him from continually using it in pleadings to the Supreme Court.

Attorney Griffith filed an Emergency Ex Parte Motion to have my children taken away from me claiming the night before I told my wife that I wanted a reconciliation, and if she didn't agree, I would keep the children from her. My children were actually present for this telephone call where the claimed discussion took place and reported to the Guardian ad Litem that it was a lie. Attorney Griffith faxed this motion to my lawyer's office and the Guardian ad Litem at about 1:15 AM, obviously hoping that they would not see the fax in time to respond. When I confronted my wife about this ridiculous lie, she embarrassedly said, "Don't blame me--It wasn't my idea." At first my children thought the whole incident was funny. Later, when it sunk in that it wasn't just Attorney Griffith, that their mother was part of the relentless lies and dirty tricks, they found this claim and others to be very disturbing. Attorney Griffith filed other unnecessary Emergency Ex Parte Motions when he knew that my lawyer was out of town.

Attorney Griffith submitted to the Court a calendar market with two different color X's showing that Elizabeth missed most of her days from school while in my custody. He gave my attorneys a black and white photocopy of the calendar. In the photocopy all the X's are just black which Attorney Griffith did deliberately so my counsel could not make out which days they claimed were missed at each house. Elizabeth, on the other hand, told the Guardian ad Litem and Diane Nazarenko that she missed most of her days during her visitation with her mother. Elizabeth told the Guardian ad Litem that on many mornings her mother could not or would not even wake up and try to get her to school. The Guardian ad Litem spoke with Diane Nazarenko and Attorney Griffith had the Guardian ad Litem's notes. Attorney Griffith had this information but submitted the fraudulent schedule anyway. At a later date, Attorney Griffith and his client made similar claims about my other daughter Alyssa, but her teacher testified in court that she missed almost all of her days and did not do her homework while in my wife's care.

Attorney Griffith and his client claimed to the Court that I testified, at a hearing for

a shareholder's lawsuit, to making a deal with my partner to give him a larger piece of the company in exchange for his favorable testimony at my divorce trial. He claimed to the Court that he had a tape of the testimony. Attorney Hantz requested, in writing, for a copy of this tape. Once again Attorney Griffith did not respond and the tape was never provided. One of my Attorneys in this matter, Michael J. Lambert of Sheehan, Phinney, Bass + Green, stated that Attorney Griffith's claim is not true and is willing to provide an affidavit to that effect. Attorney Griffith continues to make this misrepresentation to the Court in an attempt to influence the Court against me. The manner in which this was done would indicate that my ex-wife and her counsel committed perjury and suborned perjury.

My wife told Diane Nazarenko that her family was very angry me. They have deep pockets and they are paying Attorney Griffith to break me. **(see Diane Nazarenko 2nd Affidavit paragraph 12)**

Attorney Griffith filed contradicting pleadings in which he claimed that his client invested $40,000 in my company. Later, he submitted pleadings that alleged that she invested $100,000 in my company. Just after the trial ended, Attorney Griffith sent a further pleading claiming that his client put in $200,000 of "seed money" into my company. My company never had "seed money". At my ex-wife's deposition she claimed to be a major financial investor in my company, but has never produced any evidence. Oddly enough, Judge Holman awarded my wife $200,000 for her share of my company. There was no evidence, and, in fact, there was contrary evidence from the company's accountant that only $2,000 was ever invested in the company. My company has virtually no assets, no products, no contracts and no value. We just bill our one client by the hour for computer programming. In the final decree the Judge ruled that my company <u>did</u> have products and services with a bright future. Going back before the divorce, my company had 2 software products. One failed completely and we only sold a few copies. The other was an add-on software product for computerized cameras. This had a short life span because the manufactures then developed their own version of the software that was included in the purchase of the cameras. The software sales had dried up before my wife left the marital home. The only evidence offered that the company had products to sell at the time of the divorce was Attorney Griffith's false accusation that I earned twice as much money then I claimed on my taxes and that I was funneling products through a third party and taking money under the table. Attorney Griffith had the accounting records from my company, never challenged its authenticity, and knew he was lying. My company does not sell any products-- I wish we did. The only client I have, just pays us by the hour and has drastically cut back our hours. I have had to lay off three people, cut back other employee's hours and give up 1/3 of our office space. These allegations were patently falsely conceived to influence the Courts decision, which I believe it did.

The bookkeeping duties of my company were taken away from my wife, because of her sloppy and negligent work, a few months before she announced that she wanted a trial separation. Attorney Griffith, who claimed that his client devoted her life to keeping the books of my company, submitted contradictory pleadings that changed the story several times about the bogus, handwritten documents that she made up long after she left the marital house to support her claim of expenses the company owed me. Attorney Griffith first submitted allegations that his client

10

| | | |
|---|---|---|
| | | never had the receipts that I was seeking and they were part of the records that they were requesting all along. This was not true. At this time they were requesting personal financial records, not business records and never requested receipts. When I pointed this out to the Court and that if they did not have the receipts, the handwritten expense document was a fraud. So they changed their story and said that my wife did the expense document before she left the house and that the receipts were in our dining room. If she did the expense document before she left the house why didn't she reimburse me for the expenses? So they changed their story again and said that all of the receipts were given to my partner. When she left the house, my wife took the company computer where the expense records should have been on the accounting system rather then a handwritten piece of paper. Although Attorney Pillsbury asked in writing for the return of the company computer, again Attorney Griffith never responded. The upshot of this issue is there is no way I can recover these expenses from my company which were awarded to me as part of the property settlement in the divorce. |
| 13 | Assisting his client in hiding my children's educational funds | For many years, my wife told my children and me that the money gifted to them by her maternal grandfather, my parents, and other relatives were in bank accounts in their names. Several months after she left the house, I asked for documentation on the children's bank accounts. My wife told me there weren't any bank accounts, but refused to say what she did with the money. She claimed to the Court that the money was invested in my company--not true. They later changed their story and said it was converted to investment funds for the children--the same investment funds that my wife had previously listed as joint marital investments. When my wife decided to keep the investment funds for herself, she then testified that I demanded that the children's educational money be kept in our general funds to be used for living expenses. How many different things can the same money be used for? It is my understanding that lawyer can't file contradictory pleadings without first informing the Court that they are aware that something they previously filed was not true. My ex-wife, who produced evidence at trial that her grandfather gave the children at least $80,000, took more then $120,000 belonging to my children. She also took joint marital funds. The upshot of this issue is that by changing stories (lying) to fit the situation, Attorney Griffith has assisted his client in hiding the children's education funds for her own use, including paying Attorney Griffith. Attorney Hantz proved in court that my ex-wife has spent way more money then she claims to have. Later at her deposition with production of financial documents, there were missing investment accounts statements. Other statement production had gaps and Attorney Griffith inappropriately answered for his client on my lawyers questions on her finances. **(see section 18 of this complaint)** |
| 14 | False Contempt of Court charges | Attorney Griffith filed Contempt of Court charges against me for trying to hide money by opening bank accounts for my children. He did this even though he knew his client was aware that I took the children to open these accounts. My ex-wife even went with me to deposit money in these accounts. Some months earlier, I prepaid my wife for her half of our IRS tax return. When the check for about $10,000 came in, she signed it over to me. The bank wanted her to fill out a form in person so she accompanied me to the bank to deposit this money into the children's accounts. I opened these accounts specifically because the educational |

11

| | | |
|---|---|---|
| | | accounts were missing, yet Attorney Griffith filed Contempt of Court charges claiming I was trying to hide money from his client. |
| 15 | False claims of violence. | In the fall of 2000, Attorney Griffith, knowing full well that at this point the only way to get a change of custody was on the grounds that my children were in imminent danger living with me started a new assault. My wife refused to return my daughter Alyssa from visitation and ended up keeping her for 3 months. At that time, <u>she and Attorney Griffith made claims in Court of escalating violence between my daughter and me, and that my daughter was afraid to be alone with me. Then in another pleading Attorney Griffith filed, he claimed I had "written off" my daughter,</u> yet during this time I had been seeing my daughter regularly, she was staying overnight, going out to dinner, going away for weekends, and going on vacation with me. I was trying to address this delicate situation by having Alyssa transition back into my care without feeling guilty for leaving her mother, even though her mother was making her feel like it would be an abandonment. Alyssa's therapist denied that there were any problems between Alyssa and me. The Guardian ad Litem did not find any escalating violence and knew that Alyssa and I were visiting, going away for weekends and vacation. After a few months, the Court ordered Alyssa back into my care, in particular, because she had missed an inordinate amount of school and was failing school while living with her mother. After this whole incident was over, my wife told me that I should not get mad at her for claims made by her lawyer. Clearly, Attorney Griffith had made up these false claims of escalating violence. <u>Alyssa's therapist told me that their claims were absurd.</u> In August of 2000, before any problems, the Guardian ad Litem asked that a scheduled follow up hearing for November be changed because of her vacation plans. Attorney Griffith agreed to the changed but suggested to the Guardian ad Litem that an evidentiary hearing should be held at the same time. Attorney Griffith gave no reason for his request. There was nothing happening at that time and no reason to hold an evidentiary hearing. This was a planned attack by Attorney Griffith and his client. The Court never found any reason for a change in custody, and in one ruling, Judge Groff, in effect said that my wife was negligent and incompetent as a mother and the only reason why my daughter Alyssa wanted to live with her mother was because her mother didn't make her go to school or do homework. Judge Holman also found my ex-wife to be incompetent as a mother. |
| 16 | Lied to an officer of the Court and obstructed justice | During a shareholders dispute when I was locked out of my company and not getting paid regularly, I couldn't pay my ex-wife's alimony. Beside the typical expenses of a single father with physical custody of his children and alimony, I had a school loan, because of my oldest daughter's special needs, with a repayment of $4,300 per month over a 9 month period and extraordinary legal fees because of the shareholder's dispute and Attorney Griffith's ongoing frivolous litigation. The Court gave me 10 days to pay my ex-wife or a warrant for my arrest would be issued. The deadline came on a Friday and I still was not able to raise the money. I was in Vermont visiting friends and calling around to various people, embarrassingly, to try and borrow the $10,500 for the back alimony. Plus, the current monthly payment of $3,500 was coming due for a total of $14,000. On Sunday I drove to Boston to pick up a check from a friend who graciously agreed to help me. I called Attorney Hantz, who told me to bring that check and my check to her office on Sunday afternoon. Earlier in the day her boss, Attorney Gottesman, had called Attorney Griffith and made arrangements to bring the |

|    |    | would explain why my wife and her mother were waiting at the Courthouse. **(See deposition of Jennifer Wilson page 43)** This was a well planned out attempt by Attorney Griffith and his client to illegally have me arrested, which my wife told John Hamilton. **(See second deposition of John Hamilton (pg. 10, line 21); (pg. 17, lines 13-18); (pg. 37 line 20 through pg. 38) ; (pg. 41, line 23 through pg. 42)** Judge Groff assigned a new Guardian at Litem to investigate this situation, which involved my children, Petitioners Motions and several Affidavits. She found most of their claims to be false. |
|----|----|---|
| 17 | Filing false and misleading motions to influence the Trial Judge's decision in this case | During the Court's deliberation to make a ruling on the case, Attorney Griffith intentionally and without proper evidence filed a motion with the Court, based on another company's press release, claiming that my company was benefiting from a contract between two other companies. We had nothing to do with the contract, which Attorney Pillsbury informed Attorney Griffith before he filed the motion. Attorney Griffith fabricated the whole story to influence the Court's decision, which I believed he did.<br><br>Also, during the Court's deliberation to make a ruling on the case, Attorney Griffith intentionally and without proper evidence filed a motion with the Court, once again based on someone else's press release, claiming that my company was benefiting from our client receiving <u>equity funding for computer purchases.</u> Attorney Griffith knew my company did not benefit from this other company getting the investment, which Attorney Pillsbury informed him before he filed the motion. Once again, Attorney Griffith fabricated the whole story to influence the Court's decision. Throw enough mud and some is bound to stick. It did! |
| 18 | Improperly interfering with a deposition by answering for his client and preventing his client from answering questions | Throughout the deposition of Jennifer Wilson, **Attorney Griffith improperly answered for his client.** At times he cut her off in mid sentence without objecting to the question—preventing her from answering truthfully and/or answering for her. He also inappropriately instructed her not to answer my lawyer's questions. At times she changed her answer after Attorney Griffith's objections. Attorney Griffith inappropriately interfered with the deposition to prevent my lawyer from getting to the truth, including Attorney Griffith's wrong doing. **(see Jennifer Wilson deposition pages 14, 16, 22, 36-38, 48, 67, 85-86, 89, 91-92, 95-96, 96-97, 109, 121-123, 125, 126, 127, 130-133, 135-137, 139, 141, 142)** As the deposition shows, my ex-wife, conveniently, couldn't remember a considerable amount when questioned by my lawyer, but had perfect memory on issues that would favor her. She was well briefed by her counsel on how to avoid the truth. On the times she slipped up, Attorney Griffith interrupted his own client to avoid her telling the truth. **(see complete deposition of Jennifer Wilson)** |
| 19 | Falsely accusing me of stalking his client. | My ex-wife was observed by my former counsel, Attorney Frasca, consuming alcohol in the presence of my daughter Alyssa, against Court Orders. This took place at The Bar at Michael Timothy's. Attorney Frasca reported this to Attorney Hantz, who filed Contempt of Court charges. Although Attorney Griffith was aware that it was Attorney Frasca that witnessed this incident he claimed to the court that I was stalking his client. Obviously, I had nothing to do with Attorney |

|  |  | Griffith's client getting caught drinking against court orders. Attorney Griffith did not have any foundation or evidence to his claim that I was stalking his client. Again, Attorney Griffith intentionally lied to the Court. |
|---|---|---|

There is a lot more to this saga and I am looking forward to presenting with the supporting evidence—court transcription, depositions, filed motions, attorneys and Guardian at Litem correspondence, testimony from my attorneys and the Guardian's at Litem, Guardian at Litem notes etc.... I am shocked by how many times Attorney Griffith intentionally lied, changed his story, staged events, and ignored my attorney's request for proof of his claimed evidence. This entire proceeding has been a nightmare for my children and me. Attorney Griffith got Judges recused; new judges were not familiar with this case, all to Attorney Griffith's benefit as he abused the system and retried issues of this case with each new Judge, all at considerable financial expense.

Attorney Griffith's malicious litigation was based on theatrics without concern for the law. He went from gathering evidence to fabricating it. This should have been a simple divorce. My wife left the marital home…never wanted our children--only money…didn't take care of our children when she had visitation…treated visitation as an option. She made it clear to the Guardian ad Litem that she only wanted money, before Attorney Griffith came on this case. Not only did two Judges find that my ex-wife was not a responsible mother, they ruled that she interfered with my children getting their homework done. This didn't stop Attorney Griffith and his client from scheming, making up outrageous lies, and filing for changes in custody, and Emergency Ex Parte Motions for Change in Custody, filing frivolous malicious litigation.

Their attempts to get the children were really only for child support money. As testimony showed my ex-wife was a spendaholic, who only cared about money, not having to work and not having parental responsibilities, which is why she moved to Vermont. After the trial, the Court found that my wife was *not* making our children do homework while in her care. Unbelievably, Judge Holman ordered *me* to get my children's homework done by 5 PM, before my wife picked up our children on her visitation days. Attorney Griffith had the nerve to threaten to file Contempt charges against me when I couldn't always complete this task. I work full-time. My wife who is a Registered Nurse didn't work after she left the house. She still doesn't work fulltime. Yet, she somehow she lives an extravagant lifestyle.

My wife was found in Contempt of Court for drinking alcohol in my children presence, against Court Orders, and telling our children the Guardian ad Litem was a bad person who had hurt many children. She also told our children that if they talked to the Guardian ad Litem they would be lucky if they got to my ex-wife twice a year. While living with my wife for 3 months, my daughter Alyssa missed about 28 days of school. Alyssa went with her mother to The Bar at Michael Timothy's more then she went to school. After another filing for change in custody, Judge Groff in effect found my wife negligent and incompetent as a mother.

What started out as a simple divorce has caused a major disruption to our lives, the physical and mental health of my children, my business, and has me on the brink of personal bankruptcy. This attorney has no regard for me, as an opposing litigant, or my children, as human beings; has no respect for the system; and, certainly, has not had even my ex-wife's best interest at heart. He has, by latest admission, earned over $280,000 (it's more now) in legal fees from my wife (my costs are similar if not more) and has merely promoted all sorts of baseless and frivolous litigation in her name.

The latest round included a flat out, unreasonable interpretation of a prior Court Order (and prior Judge) which had me paying permanent alimony at a higher rate for the past two years (based on my own motion granted in April of 2000, to start permanent alimony payments), yet Attorney Griffith claimed the final order was not yet in effect and, in essence, tried to start the alimony clock all over again. When pointed out to the Court that Attorney Griffith's new motion also contradicted his own motion filed two years ago, Attorney Griffith said to the Court something to the effect that it didn't matter what he thought or filed two years ago. Although the Superior Court denied this request, it has caused me, again, an inordinate amount of money to respond. At this same hearing Attorney Griffith openly stated that he would be filing further motions in the future for change of custody. This is another example of Attorney Griffith's frivolous litigation.

There is evidence that Attorney Griffith's wife is practicing the law without a license. She has spoken to witnesses and advised (and tried to convince them) on legal action(s) to pursue. Attorney Spaloss made a statement to my lawyer that supports this claim. At trial, during a recess, Attorney Frasca asked Attorney Spaloss to relay a question to Attorney Griffith. Attorney Spaloss replied by saying "you think John (Griffith) is running the show? Barbara (Attorney Griffith's wife) calls all the shots." I believe this attorney and his wife are a danger to clients.

As a citizen and resident of the State of New Hampshire I am asking this Professional Conduct Committee of the Supreme Court of the State of New Hampshire to conduct an investigation and hearing into the conduct of Attorney Griffith, his wife, and Attorney Spaloss. I am also aware that Attorney Griffith has close ties and has represented the Professional Conduct Committee in the past. I request my right to a fair impartial investigation and hearing to be conducted by your committee and that all personal relationships with Attorney Griffith are put aside in the pursuit of justice. I would also request that any member of the Professional Conduct Committee that is a friend of Attorney Griffith or can not be impartial, recuse themselves from this process. Attorney Griffith has acted smug at times by telling the court that issues I have raised have no place in the current court proceedings and are issues for the Professional Conduct Committee. I agree with Attorney Griffith, only in that I also believe these are issues for the Professional Conduct Committee. Will your committee look at the facts of this case in the pursuit of justice or just act in the best interest of a friend and/or colleague?

Sincerely yours,


Arthur Ginsberg


_____
Justice of the Peace/ Notary Public