# EXHIBIT B

NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Clerk/Reporter, Supreme Court of New Hampshire, Supreme Court Building, Concord, New Hampshire 03301, of any errors in order that corrections may be made before the opinion goes to press. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is:
http://www.state.nh.us/courts/supreme.htm

THE SUPREME COURT OF NEW HAMPSHIRE

---

Original

No. LD-97-009

FELD'S CASE

August 30, 1999

Griffith & Associates, PLLC, of Wilton (John P. Griffith on the brief and orally), for the committee on professional conduct.

Tober Law Offices, P.A., of Portsmouth (Stephen L. Tober and Tara C. Schoff on the brief, and Mr. Tober orally), for the respondent, Steven E. Feld.

JOHNSON, J. The Supreme Court Committee on Professional Conduct (committee) petitioned this court requesting that the respondent, Steven E. Feld, be disbarred from the practice of law. We appointed a Judicial Referee (Temple, J.) to conduct a de novo hearing on the committee's petition. The referee found, by clear and convincing evidence, that the respondent violated New Hampshire Rules of Professional Conduct (Rules) 3.4(b)-(d) and 8.4(a), and recommended a public censure and payment to the committee of a percentage of the costs of investigation. The committee now objects to the referee's recommended sanction, and Feld objects to both the findings of violations and the recommended sanction. We agree with the referee and impose the recommended sanction.

We recite the relevant facts supported by the referee's report and the record. Additional facts underlying this petition arise from the case of Bussiere v. Roberge, 142 N.H. 905, 714 A.2d 894 (1998). Feld's professional violations arise from his conduct in litigation involving a seventy-six-unit apartment building in Manchester. In 1984, Emile Bussiere and a partner sold the apartment building and both retained an interest in one unit each. The initial buyer of the building intended to convert the apartments into condominiums, at which time Bussiere's and his partner's respective units would be conveyed to them as condominiums. While Bussiere's leasehold interest was recorded at the registry of deeds, the parties' agreement regarding his right to full ownership upon conversion was not. Certain documents exchanged by legal counsel, the lending institution, and Bussiere, however, reflected such agreement (the 1984 unrecorded documents). The buyer never

1

converted the property into condominiums, however, and in 1994, defaulted on the first mortgage. The mortgage lender took possession of the property, and desired to sell it.

On July 18, 1994, Carolyn Roberge signed an agreement to purchase the first mortgage. Attorney Feld was retained to represent, inter alia, Carolyn and her father, Roland Roberge, to provide legal advice on issues arising from the transaction. The bank sent Feld copies of the 1984 unrecorded documents on July 19, 1994. Bussiere, upon learning that Feld's clients desired to purchase the property, and unaware that the bank had provided Feld with the documents, left several phone messages with Roland Roberge to inform them of his interest. On July 21, Carolyn Roberge spoke with Bussiere on a speaker phone and informed Bussiere that Feld was present in the room; Carolyn recorded the conversation. On July 28 and September 1, 1994, Bussiere sent copies of the documents regarding his interest in the property by mail and by facsimile transmission. Feld acknowledged receipt of the documents on September 2.

On September 7, 1994, two corporations, including Fifty-Five Associates, Ltd. (Fifty-Five), purchased the first mortgage. Carolyn, her mother, and her brother's trust owned shares in Fifty-Five, and Carolyn and her mother were the directors. In April 1995, Feld initiated eviction proceedings against Bussiere, believing that Bussiere's leasehold interest was terminable because the lease did not contain a termination date. Bussiere responded by initiating an equitable proceeding against Fifty-Five, Carolyn, and Roland in June 1995. Bussiere's discovery focused on the central questions of what did the Roberge family know regarding Bussiere's rights in the property, which members of the family knew what, and when did they know it. Bussiere also sought information on what role Roland played in arranging the purchase of the first mortgage.

During discovery, Feld's actions in the interrogatories and the deposition enabled his clients to deny Roland Roberge's involvement in the purchase arrangement and knowledge of its terms. In reality, the referee found that Roland Roberge was heavily involved in the transaction and was the only member of the Roberge family with full knowledge of the financial circumstances of the Roberge family. Feld's participation in the discovery process, during which he admits mistakes were made, along with his involvement in taping the July 21 conversation, resulted in the present disciplinary matter. At trial, Feld clarified these misperceptions, allowing the truth to come to light.

When reviewing a disciplinary matter, we address two issues.

First, whether the record supports the findings and rulings of the referee, and second, the appropriate sanction to impose against the respondent. In reviewing the referee's findings, we determine whether a reasonable person could have reached the same decision as the referee on the basis of the evidence before him.

Doherty's Case, 142 N.H. 446, 449, 703 A.2d 261, 263 (1997) (citations and quotations omitted). Although we defer to the referee's factual findings if supported by the record, see Wehringer's Case, 130 N.H. 707, 716, 547 A.2d 252, 257 (1988), we retain the ultimate authority to determine whether, on the facts found, a violation of the rules governing attorney conduct has occurred and, if so, the appropriate sanction. Wood's Case, 137 N.H. 698, 701, 634 A.2d 1340, 1342 (1993).

The referee found that the committee had not proven by clear and convincing evidence that Feld violated Rule 8.4(c) by participating in the taping of the telephone conversation with Bussiere. The referee noted that the recording was made by Feld's client, and that Feld did not tape and did not participate in the taping of the speaker phone conversation. The referee found that Feld had no intention to create evidence or establish an advantage in litigation. Further, the referee found that Feld advised his client, perhaps erroneously, based on previous research in another matter, that taping a speaker phone conversation did not violate State law. See RSA ch. 570-A (1986 & Supp. 1998) (amended 1998). The referee found that the committee did not establish by clear and convincing evidence that Feld's conduct involved dishonesty, fraud, deceit, or misrepresentation, involving the recording of the speaker phone conversation, or that Feld had an improper intent when he was present during the recording. In the context of this case, we accept the referee's findings that no violation occurred in recording the speaker phone conversation.

We conclude that the record supports the referee's finding that Feld's conduct during the discovery process violated Rules 3.4(b)-(d) and 8.4(a). First, the referee found that in the course of Roland Roberge's deposition, "Feld watched and listened to his clients (Roberge) testify to facts and circumstances that he knew to be inaccurate." (Quotation omitted.) Feld's actions in Roland's deposition and ensuing interrogatories permitted his clients to give nonresponsive answers.

The record aptly supports the referee's finding that when Bussiere sought information during Roland's deposition relating to his financial involvement in the transaction, Feld prevented his client from answering by making objections that "went beyond any court-ordered protection arising out of an earlier representation [of] Mr. Roberge by Attorney Bussiere." While Feld may not have learned the full extent of Roland's financial involvement in the transaction until Roland's disclosure to Feld during the lunch recess of his deposition, and Feld testified that he then told his client to "[j]ust continue to tell the truth," Feld did not clarify Roland's earlier denials, or advise his client that a correction was necessary when the deposition resumed. Cf. N.H. R. Prof. Conduct 3.4(b).

Second, the record supports the referee's finding that Feld proffered a non-responsive answer in interrogatories when he responded that the requested information about Roland's financial involvement was outside Roland's personal knowledge, an "inaccuracy [which] was allowed to persist without correction throughout the pretrial period."

Third, the record supports the referee's finding that Feld inexcusably allowed his client to deny timely receipt of the July 28 Bussiere letter with the enclosed 1984 unrecorded documents establishing Bussiere's claim to the property. Feld's failure to correct the record established violations of Rules 3.4(b)-(d) by clear and convincing evidence. Rules 3.4(b)-(d) provide that a lawyer shall not:

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

N.H. R. Prof. Conduct 3.4(b)-(d). The referee also found that these violations further established a violation of Rule 8.4(a), which provides that professional misconduct occurs when a lawyer "violate[s] or attempt[s] to violate the Rules of Professional Conduct, knowingly assist[s] or induce[s] another to do so, or do[es] so through the acts of another." N.H. R. Prof. Conduct 8.4(a).

Feld argues that the evidence, "viewed in the context of the spurious litigation below," does not support a violation of the Rules. He argues that he entered into the representation in this matter without a full appreciation of the extent of the personal animosity between the parties and the potential for fierce "war-like litigation." He contends that the evidence merely shows that he made improper objections, that "Bussiere's conduct was not above reproach," and that some of the information sought was mistakenly withheld and "collateral, if not irrelevant," to the litigation.

Because the Rules govern each attorney, cf. N.H. R. Prof. Conduct 5.1, 8.4(a), a client's confrontational or caustic relationship with an opposing party or attorney cannot excuse the attorney's professional misconduct, see N.H. R. Prof. Conduct 1.2(e). An attorney has an obligation to insure that his professional conduct complies with the limits outlined in the Rules, irrespective of a client's or an opposing party's conduct. Of course, a lawyer always has a duty to correct errors created by his client when the attorney learns of them. See N.H. R. Prof. Conduct 3.4(b).

The referee was apparently aware of, but not persuaded by, the parties' relationship when he made his recommendation, noting elsewhere in his report that "[b]ut for the ill will existing" between the parties, "it may be that more prompt and responsive answers would have resulted." Based on a review of the record, we cannot say that a reasonable person could not have reached the same conclusion as the referee.

Next, we consider the sanction to be imposed. "The sanction must be determined by affording appropriate weight to the severity of the violations found and to the mitigating circumstances disclosed by the record." Doherty's Case, 142 N.H. at 450, 703 A.2d at 264 (quotation omitted). As mitigating factors, the referee found no prior disciplinary record, an absence of a dishonest motive, and good faith efforts to correct inaccuracies during the trial so that "the real and relevant issues were litigated." The referee also found that Feld cooperated with the committee throughout the entire investigative process. The referee recommended a public censure, along with reimbursement for the committee's expenses "in an amount recognizing that [Feld] has prevailed in part."

Feld argues that this sanction is too severe in light of the referee's finding that the parties had an acrimonious relationship that may have contributed to this incident. He also notes mitigating factors that the referee should have given greater weight in recommending a sanction, including absence of a prior disciplinary record, absence of a dishonest or selfish motive, timely good faith efforts to rectify his errors, a cooperative attitude towards the committee, good character and reputation, and remorse for his conduct. Feld buttresses his claim by relying on the referee's finding that Bussiere described his own conduct in the matter as "fighting fire with fire."

4

In other instances involving similar violations, attorneys have received more serious sanctions. See, e.g., Jones' Case, 137 N.H. 351, 361, 628 A.2d 254, 260 (1993). We are convinced that the referee considered the mitigating factors in ordering a public censure. After considering all factors presented by the committee and Feld, we conclude that a public censure in this instance will further the purposes of protecting the public, preserving the integrity of the bar, maintaining public confidence in the bar, and preventing similar instances in the future. Cf. Welts' Case, 136 N.H. 588, 593-94, 620 A.2d 1017, 1019-20 (1993). The absence of a prior disciplinary record and selfish motives are mitigating factors weighing against the committee's recommendation of disbarment. Carpenito's Case, 139 N.H. 168, 174, 651 A.2d 1, 5 (1994).

Lastly, Feld argues that we should consider Attorney Robert Varney's improper participation in the matter before the referee as a mitigating factor. Specifically, he argues that his due process rights were compromised because Varney improperly served as co-counsel for the committee in this matter before the referee after serving as the committee's investigating member and chair of the hearing panel, in violation of Supreme Court Rule 37(2)(b). That rule provides in relevant part that "`Bar Counsel' means the attorney or attorneys responsible for the prosecution of all the disciplinary proceedings before the court, the committee or any hearing panel . . . other than one of their number." Feld argues that once Varney served as the investigating member before the committee, see Sup. Ct. R. 37(2)(b), he was precluded from participating in the prosecution of the matter before the referee.

Even assuming that Feld's assertion is correct, we note that once notified of the situation, the referee asked Varney not to participate in the hearing process and further, Feld concedes that "there is no question that the Referee was not influenced" by Varney's participation. Accordingly, absent a demonstrable impact on the fairness of the proceedings before the referee, an allegation of a meaningful due process concern strains credibility. See Appeal of Trotzer, 143 N.H. 64, 68-69, 719 A.2d 584, 587-88 (1998). Feld concedes that the referee was not influenced by Varney's participation; therefore, any alleged error in this instance was harmless.

Having concluded that the record supports the referee's findings and rulings, Drucker's Case, 133 N.H. 326, 329, 577 A.2d 1198, 1199 (1990), we also agree that his recommended sanction of a public censure is the appropriate sanction on the facts of this case. Accordingly, we order a public censure, and note that the conduct of Feld resulted in a substantial portion of the committee's expenses in this matter. Accordingly, we remand to the referee for an allocation of such expenses.

So ordered.

THAYER, HORTON, and BRODERICK, JJ., did not sit; BATCHELDER, J., retired, participated by special assignment under RSA 490:3; all who participated concurred.