# EXHIBIT J

# GRIFFITH & ASSOCIATES, TRIAL ADVOCATES, PLLC

### An Independent Barrister's Practice.

JOHN F. GRIFFITH
BOARD CERTIFIED
CIVIL TRIAL ADVOCATE

1020 ISAAC FRYE HWY
POST OFFICE BOX 1 2 0 8
WILTON, N. H. 03086 USA
TEL.     (603)  654 6988
FAX.     (603) 654-5564
e-mail griffithtrial@earthlink.net

June 28, 2006

**HAND DELIVERED**

Holly B. Fazzino, Administrative Coordinator
New Hampshire Supreme Court
Professional Conduct Committee
4 Park Street, Suite 304
Concord, NH 03301

Re:   Griffith, John P. Advs. Arthur Ginsberg - #02-131

Dear Ms. Fazzino:

Enclosed please find the original and 12 copies of Respondent's Objection to Warning in this matter. Would you kindly forward this pleading to the members of the PCC.

Thank you for your cooperation.

Very truly yours,

John P. Griffith, Esquire

Enclosures

cc:   Landya B. McCafferty, Esq.
      Arthur Ginsberg

STATE OF NEW HAMPSHIRE

SUPREME COURT

PROFESSIONAL CONDUCT COMMITTEE

Re:     **Griffith, John P. advs. Arthur Ginsberg - #02-131**

### OBJECTION TO PROPOSED WARNING

NOW COMES the respondent, John P. Griffith, and respectfully objects to the recommendation of Disciplinary Counsel that the Committee issue a warning in this matter.

1. Disciplinary Counsel has submitted an eighty six page motion to dismiss because none of the allegations of misconduct could be proven by the required clear and convincing evidence. Regardless of the lack of evidence of violations of the Rules of Professional Conduct, Disciplinary Counsel requests that the Respondent be issued a warning because of conclusory statements and arguments which, in the opinion of Disciplinary Counsel, were stronger than necessary.

2. Such a warning would be a violation of the Respondent's freedom of speech; would set a dangerous precedent for the future of advocacy; would violate the "Scope" of the Rules of Professional Conduct; and would be without a factual basis.

**First Amendment Right to Freedom of Speech**

3. "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. [Footnote omitted.] But there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S.

1

323, 339--40 (1974). The New Hampshire Supreme Court held that it adheres to that statement of law in the case of <u>Pease v. Telegraph Publishing Co.</u>, 121 N.H. 62 (1981)

4. All of the complaints of overly vigorous language, raised by Counsel are opinions and arguments. The factual basis for the opinions and arguments are given in each instance. The freedom of voicing one's opinions is protected and any effort to restrain this freedom must be resisted.

**Dangerous Precedent for the Future of Advocacy**

5. "Going to law school entails learning to talk like a lawyer. Trying cases involves learning to talk like a real person once again. Picking the right word goes even further. It means becoming sensitive to how different terms affect people." J. McElhaney, "McElhaney's Trial Notebook, at 629 (American Bar Association 2005) An effective advocate knows the power of the right word. That advocate agonizes day and night to find an impact phrase to effectively convey the message. A warning to a lawyer that he or she used the wrong impact phrase would be the equivalent to telling Tiger Wood that he used the wrong club and this warning will be held against him in future club choices. If he uses too many wrong clubs he may be suspended.

6. "The difference between the right word and the almost right word is the difference between lightning and the lightning bug". Mark Twain . The difference between a mediocre lawyer and a good one is the ability to find the right word or phrase which will have an impact on the fact finder. Based on the language used in the Motion to Dismiss, clearly, Disciplinary Counsel understands the power of words and the need to use the power to be an effective advocate. For example, Disciplinary Counsel concludes

2

paragraph 236 with the following: "Mr. Griffith's reliance upon the DAS business Plan to make accusations of "fraud" on the part of Mr. Ginsberg was inflammatory, unnecessary, and probably negligent".

7. While the phrase sounds good and has an initial impact, when it is more carefully analyzed, it is hyperbole, without basis in fact.

8. "Inflammatory" is defined as "rousing or likely to rouse excitement, anger, violence, rioting etc." Webster's New World College Dictionary, at 732 (4th Ed. 1999). The use of such a term to characterize Respondent's arguments before the court is certainly not accurate or fair to Respondent and is not likely to be of assistance to Respondent or any other lawyer practicing law in this state.

9. In the same vein, Disciplinary Counsel's opinion that it was not <u>necessary</u> to call the attention of the court to the failure to list stock options on a financial affidavit where the same options are shown to prospective investors as having a value of more than $250,000 is presumptuous. The activities of Mr. Ginsberg, which Respondent brought to the attention of the court were the same type of activities which the New Hampshire Supreme Court held to be fraud as a matter of law in the case of Shafmaster v. Shafmaster, 138 N.H. 460 (1994).

10. Likewise, counsel's opinion that the claim of fraud in these circumstances was "probably negligent" is not supported by law or by the facts. In order for Respondent to have been negligent, three elements had to be present: "(1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty;

3

and (3) resultant harm legally caused by that breach." McIntire v. Lee, 149 N.H. 160. (2003). Respondent's only client was Ms. Wilson. She was the only one owed a legal duty of care, and that was to provide her with effective representation. The failure to raise a charge of civil fraud in the face of the known evidence would have been negligent.

11. Other instances of hyperbole on the part of Disciplinary Counsel are:

   a. The use of the phrase "**Allegation of Mental Defect**", as a heading, was unwarranted, misleading and intended to unfairly prejudice the Committee against Respondent. At no time did Respondent allege that Mr. Ginsberg was mentally deficient or that he had a mental defect. The phrase is nothing more than a "catch phrase", "a phrase that catches or is meant to catch the popular attention." Webster's id at 231. It is not supported by a strong factual basis.

   b. Likewise the use of the terms "overly vigorous", "the better course"; "elected to characterize Mr. Ginsberg's conduct as 'fraudulent' and therefore criminal in nature"; "reckless characterization"; and "had Mr. Griffith reviewed the DAS financial records available to him in advance of the July 1999 hearings, Mr. Griffith would have discovered that his 'fraud' charge was a grave misstatement" are opinions which are intended to be influence the Committee to issue a warning, but are otherwise without substance and are just tools in the art of advocacy.

12. Disciplinary Counsel, by requesting that this Committee issue a warning, is asking this Committee to start down a slippery slope, not envisioned nor approved by the Supreme Court when it adopted these rules and expressly forbidden by the Constitutions of the United States and the State of New Hampshire. If the Committee agrees to issue a

4

warning, then every lawyer whose argument, on behalf of their client, is rejected faces a professional conduct complaint. Every lawyer who, on behalf of their client, expresses a strong opinion faces a professional conduct complaint. Every lawyer who, on behalf of their client, makes serious accusations against an opposing party faces a professional conduct complaint.

13. Such a standard, if adopted by this Committee, would turn our adversary system of justice into an "Alice in Wonderland".

**Contrary to the Scope of the Rules of Professional Conduct**

14. In this case, the ground for the requesting a warning is alleged to be that "the factual predicate for a number of Respondent's conclusory statements and arguments concerning (a) Complainant's mental health and actions toward his ex-wife, and (b) Complainant's 1999 financial earnings were inflammatory and without a strong factual basis."

15. Apparently, the warning is being requested because of the tone of Respondent's pleadings. The words used are stronger than the Disciplinary Counsel thinks should have been necessary. Respondent used such terms as: "fraud"; "psychological terrorism"; "classic signs of paranoid personality disorder"; "stalking"; and "spying".

16. The proposed warning, in essence, would have this Committee holding that "the factual predicate for a number of Respondent's conclusory statements and arguments...are without a strong factual base." The same could be said for any legal arguments which have not prevailed. See Lane's Case, __ N.H. __ (LD-2003-010 2005) Is the Committee being asked to write a new rule that requires a strong factual base for conclusions and arguments?

5

17. Finally, Disciplinary Counsel several times criticizes the decisions of Respondent as making certain elections; making charges which were not necessary; or was too aggressive lacked a basic civility; drafted "pleadings using a highly inflammatory tone"; "was overly vigorous in presenting his client's position" all of which go to decisions made by counsel at the time as to how best to effectively represent their clients' interests. Such "second guessing" is not intended by the Rules of Professional Conduct.

18. The preamble to the Rules of Professional Conduct expressly sets forth the role of the Committee in the enforcement of the Rules. "The Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and recognition that a lawyer often has to act upon uncertain or incomplete evidence of the situation." Rules of Professional Conduct, Scope at ¶ 5. The Committee should not be second guessing the decisions made by attorneys as to what was necessary in order to effectively represent their client interests.

**The Warning Requested is not Warranted by the Facts**

19. The pleadings, authored by Respondent and signed by his client, are supported by the facts as Respondent understood them to be at the time. The opinions and arguments were factually supported. For example:

    a. Mental instability. In answer to several of Mr. Ginsberg's post divorce motions which alleged conspiracies, Respondent, on behalf of his client and signed by his client, prepared pleadings which argued that Ginsberg's allegations of conspiracies were classic signs of a paranoid personality disorder. The basis for

6

       the characterization was strong and were disclosed to the court. They were the contents of Ginsberg's own pleadings, when reviewed in the light of a learned treatise, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed. 1994), published by the American Psychiatric Association.

b. Respondent, on behalf of his client, did request a psychological evaluation of the whole family. This was also recommended by the two mental health professional who testified to the court at the divorce hearing. To request such an evaluation is not inflammatory and should not be discouraged in the appropriate circumstances.

c. The use of the term "psychological terrorism was a "catch phrase", but an accurate "catch phrase". "Terrorism" is defined as "the act of terrorizing; use of force or threats to demoralize, intimidate and subjugate..." <u>Webster's,</u> id. at 1479, while one definition of psychological is "affecting or intended to affect the mind." id at 1158. A close cousin is "psychological warfare, the use of propaganda or other psychological means to influence or confuse the thinking, undermine the moral...of the opponent." id at 1158.

d. Respondent's client was repeatedly being characterized, by Mr. Ginsberg and his counsel, as: an alcoholic, an adulteress; a cult member, a spendthrift, an unfit mother and a person who was willing to give up her children for a good settlement. The effect of the seemingly constant attacks on her was debilitating. Even the court, in its final order commented on her fragile state. The characterization of the campaign against Ms. Wilson as psychological terrorism was warranted under the circumstances.

        unreimbursed expense due to travel on behalf of the company.

    g.    Disciplinary Counsel concluded that "such a serious accusation [fraud] was unwarranted, even with the D.A.S. Business Plan in hand. Mr. Griffith had access to all of the discovery which had been conducted and offered in the case, which included all financial records of Mr. Ginsberg's company." This assertion is based on statements of Mr. Ginsberg and Ms. Pillsbury. Such assertions are untrue. A copy of a motion to compel answers to interrogatories, filed by Respondent on July 19, 1999, sets forth the state of disclosure as of that date. In particular, the attached affidavit of CPA Anthony Albright relates his efforts to use the authorizations to obtain financial information and the lack of results

20.    The Rules of Professional Conduct, Rule 1.1 ( c)(4) require a lawyer to "[u]ndertake actions on the client's behalf in a timely and **effective** manner...." Effective is defined as "1. Having an effect; producing a result 2 producing a definite or desired result; efficient 3 in effect; operative; active 4 actual, not merely potential or theoretical 5 making a striking impression; impressive." id at 454. Effective representation is required under all of the circumstances, it should be the responsibility of the trial court to determine when effective becomes overly vigorous and to take appropriate actions.

21.    Lastly, the warning requested by Disciplinary Counsel suggests, that Respondent, by responding to his client's demands and assertions, prolonged the litigation unnecessarily. No evidence is cited for this proposition. There is no factual predicate for such a warning. The only reason for the Committee agreeing to such a warning would be to appease Mr. Ginsberg. Such action by this Committee would not only be ineffectual, it would be error.

9

WHEREFORE, Respondent, for the reasons stated above, requests that the Professional Conduct Committee dismiss the matter with a finding of no professional misconduct, with no warning attached to the dismissal; and for such other and further relief as justice may require.

Respectfully Submitted

Dated  June 28, 2006

John P. Griffith
PO Box 1208
Wilton, NH 03086
(603) 654-6988

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the answer, together with all exhibits, has been forwarded to all complainants, respondents listed below pursuant to New Hampshire Supreme Court Rule 37A(7), and that I included a copy of all attachments, enclosures and exhibits submitted with it.

| Name | Address |
|---|---|
| Landya B. McCafferty, Esq.<br>Disciplinary Counsel | 4 Park Street<br>Concord, NH 03301 |
| Arthur Ginsberg | 10 Glendale Drive<br>Nashua, NH 03064 |

Dated: June 28, 2006

John P. Griffith

10