# EXHIBIT Q

THE STATE OF NEW HAMPSHIRE
SUPREME COURT

LD-2006-0008

PETITION OF ARTHUR GINSBERG

**PETITIONER'S MOTION FOR FULL COURT RECONSIDERATION OF THE 12/7/2006 PANEL DECISION REVERSING AN EARLIER ACCEPTANCE ORDER PENDING FOR NEARLY TWO MONTHS UNTIL THE DISGRACED FORMER SUPREME COURT CHIEF JUSTICE DAVID A. BROCK WAS SPECIALLY ASSIGNED TO THE PANEL FOR THE APPARENT CORRUPT PURPOSE OF BENEFITTING HIS CRONY, RESPONDENT JOHN P. GRIFFITH**

Now comes Arthur Ginsberg, appearing in his *pro se* capacity, and pursuant to Supreme Court Rule 22, respectfully requests en banc reconsideration of the order issued on December 7, 2006, reversing without a scintilla of articulation the October 18, 2006 acceptance order of Petitioner's Rule 11 Petition. In support thereof the Petitioner states:

1.  Pursuant to Supreme Court Rule 11(6) this Court accepted the Petitioner's Rule 11 Petition and ordered Respondent Professional Conduct Committee ("PCC") to file a certified record of the proceedings, and noted that after that record is received, this Court would issue a briefing schedule. When the PCC filed an incomplete record containing but a small fraction of the relevant proceedings, the Petitioner moved this Court to direct the PCC to file a complete record. That event apparently catalyzed this Court to reverse itself without explanation and to clumsily claim that Rule 11(6) allowed this Court to first accept a Rule 11 petition for briefing and argument and also to later *sua sponte* reverse itself and deny the same Rule 11 petition before the briefs have been filed. Section 6 of Rule 11 clearly specifies the sequence of first deciding whether or not to accept the petition and if accepted to then designate which questions presented by the petition should be briefed and/or scheduled for oral argument.

> **Rule 11(6)** If the supreme court is of the opinion that the petition should not be granted, it shall deny the petition. The supreme court may, in its discretion, accept and schedule for briefing, with or without oral argument, any question presented in the petition.

On October 18, 2006 this Court issued the following order:

> **In Case No. LD-2006-0008, Petition of Arthur Ginsberg, the court on October 18, 2006, issued the following order:**
>
> Arthur Ginsberg's petition for original jurisdiction is accepted for briefing and oral argument. Arthur Ginsberg, John P. Griffith, and the Attorney Discipline Office's disciplinary counsel shall be considered parties to this case.
>
> On or before November 17, 2006, the Professional Conduct Committee shall file a certified copy of the record of proceedings before the committee. Upon receipt of the certified record, a briefing schedule will be issued.
>
> This order is entered by a single justice (Duggan, J.). See Rule 21(7).

2. Rule 21(9) provides a procedural mechanism to refer to the full Court any order issued by a single justice, provided a motion to reconsider the single justice's order has been filed. There is no procedural means authorized by Rule 11 or Rule 21 for the Court to *sua sponte* reconsider an order issued by a single justice. (If this Court had actually reacted to a motion for reconsideration filed by Attorney Griffith, that would have been highly improper to do so without due process notice to all parties. In light of the reality that this Court did not state it had ruled on a pending reconsideration motion, it must be assumed that the reconsideration was *sua sponte*.)

> **Rule 21(9)** Any motion to reconsider an order issued by a single justice or the clerk shall be filed within ten days from the date of the issuance of the order. A motion to reconsider an order issued by a single justice shall be referred to the court for decision. A motion to reconsider an order issued by the clerk shall be referred to a single justice or to the court for decision.

3. The penultimate issue appears to be whether this Court has followed the procedures implemented to improve public access to official records, which revised procedures were implemented after the dark years preceding 2000 and the discovery of this Court's highly improper secret SMC docket, apparently created to protect New Hampshire lawyers subject to discipline or engaged in various matters before the Courts. Obviously, this Court has incorrectly (and possibly, corruptly) implicitly granted the PCC's wish to conceal the proceedings involving Attorney John P. Griffith. In achieving this result, the Court has apparently ignored relevant rules and the long established consistent parallel track of cases

with similar reasoning in regard to the release of official records pursuant to RSA Chapter 91-A and the release of sealed Court records. The core principles of the two leading seminal cases, Lodge v. Knowlton, 118 N.H. 574, 391 A.2d 893 (1978) and Petition of Keene Sentinel, 136 N.H. 121, 612 A.2d 911 (1992) have been referenced together in later precedents, such as: Union Leader Corp. v. New Hampshire Housing Finance Authority, 142 N.H. 540, 705 A.2d 725 (1997) and Union Leader Corp. v. City of Nashua, 141 N.H. 473, 686 A.2d 310 (1996). This Court has repeatedly mandated that in both the case of records that may be subject to release pursuant to RSA Chapter 91-A and the situation involving the closure or nondisclosure of court records, the reviewing court must employ a kind of strict scrutiny review. Because there is a presumption that both classes of records are public, before withholding release of a record, the reviewing Court is obligated to make a finding that there exists no reasonable alternative to nondisclosure, while at the same time using the "least restrictive means necessary to effectuate the purposes sought to be achieved. For example, instead of sealing an entire document because it has been determined that parts of it should not be accessible to the public, the court should consider if redaction of those parts is the appropriate least restrictive means." Keene Sentinel, 136 N.H. at 130-131. In Lodge v. Knowlton, this Court effectively adopted a similar standard by requiring the party seeking nondisclosure to shoulder the burden of proving that the requested record falls within the purview of the six listed exemptions and that there is no reasonable alternative to nondisclosure, such as redaction of a portion of the record. Lodge preceded Keene Sentinel by about 14 years, but the reasoning underpinning Lodge was effectively similar to the principles articulated by this Court when ruling in Keene Sentinel. That is to say, the Lodge Court held that –

> The trial court should also in this case, and in future cases, require in camera review to decide whether there will be total or partial nondisclosure. This decision should be made in accordance with the guidelines discussed in this opinion and with our previously stated "intention to resolve questions 'with a view to providing the utmost information.'" (Quoting: Menge v. City of Manchester, 113 N.H. 533 at 537, 311 A.2d 116 at 118 (1973).)

3

4.      Indubitably, this Court never considered whether its implicit approval of the PCC's concealment of records comports with the noble purpose of resolving all questions of public access "with a view to providing the utmost information." This Court seems to have ignored the reality that the right of access to judicial records (and quasi judicial records) is protected by part I, article 8 of the New Hampshire Constitution and the First Amendment to the U.S. Constitution. Moreover, this Court surely realizes that where the New Hampshire Constitution and the First Amendment to the U.S. Constitution guarantees access, it may be denied only on the basis of a compelling governmental interest, and only if the restricted access is narrowly tailored to serve that interest.

5.      This Court is reminded that the United States Supreme Court has determined that a First Amendment right of access attaches when "public access plays a significant positive role in the functioning of the particular process in question." See: Press-Enterprise Co. v. Superior Court of California for Riverside County, 478 U.S. 1, 8-9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986). The relevant "particular process in question" is the "restraint on possible abuse of judicial power" provided by "contemporaneous review in the forum of public opinion." See: Justice Brennan's concurrence in Richmond Newspapers v. Virginia, 448 U.S. 555 at 592, 100 S.Ct. 2814 at 2835 (1980) [quoting In re Oliver, 335 U.S. 257, 270, 68 S.Ct. 499, 506, 92 L.Ed. 682 (1948)]. Plain and simple, in our free democracy all citizens have an absolute right to have complete information on how all their government organs function, including, of course, attorney discipline entities.

6.      Unfortunately, this Court and its Attorney Discipline Office (PCC) sincerely believe that the judiciary (as a whole) and the Bar are the best institutions to investigate, ascertain and take measures against individual aberrant judges and lawyers who may be guilty of various forms of judicial and professional misconduct. Yet when we look at claims for self-regulation in other professions -- in medicine and in the police force, for example -- we find historically that progress only takes place when outside lay persons dominate ethics and misconduct boards. Otherwise the general operating rule is "cover it up." No matter what the profession, any charge that a fellow professional is guilty of malpractice is a

4

prima facie invitation to other professionals to retreat to a guild mentality, denying that the infraction took place. The impetus to cover up is not primarily due to friendship toward the accused but rather to a general perception that disclosure would lead to public disrespect of the profession as a whole. The guild mentality is self-protective at the group level, and results in trumping honest disclosure in all but the most egregious cases that would leak to the public anyway. With respect to guild mentality, there is no compelling distinction for judges or lawyers from doctors or police officers (among whom cover-ups are routine). Perhaps we demand too much of human nature if we expect judges to be unconcerned with the loss of public prestige that results from admitting that cases of serious judicial and/or attorney lawyer misconduct are not extraordinarily rare.

7.    The Petitioner objected to the PCC's refusal to provide this Court with the records, which this Court would customarily require to be able to rationally determine the validity of the PCC's decision to reverse itself and allow Attorney Griffith to escape unscathed. When this Court was confronted by a manifestly absurd argument, crafted by Disciplinary Attorney McCafferty with the clear objective of concealing records that should be actually properly construed as public records, this Court elected to decamp rather than protect the lofty ideals it had apparently hypocritically pontificated.

WHEREFORE, the Petitioner respectfully requests that this Court, sitting <u>en banc</u>, reconsider and thereafter issue an order reinstating the Petitioner's Rule 11 Petition, and grant such further or other relief as justice requires.

Respectfully submitted,

*[signature]*

Arthur Ginsberg
10 Glendale Dr.
Nashua, NH 03064
(603) 889-0393

5

## CERTIFICATE OF SERVICE

    I hereby certify that, on December 18, 2006, I caused copies of the foregoing motion to be forwarded by prepaid First Class U.S. Mail, addressed to: Attorney John P. Griffith, 1020 Isaac Frye Highway, P.O. Box 1208, Wilton, NH 03086, and to:

Landya McCafferty, Disciplinary Counsel
Professional Disciplinary Committee
4 Park Street
Concord, NH 03301

Professional Disciplinary Committee
4 Park Street
Concord, NH 03301

                                              */s/ Arthur Ginsberg*
                                              Arthur Ginsberg