## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

<u>Arthur Ginsberg</u>

      Plaintiff

v.

<u>James L. DeHart,</u>
<u>John P. Griffith,</u>              Case No. 10-cv-452-JL
<u>Landya B. McCafferty,</u>
<u>Margaret H. Nelson,</u>
<u>Diane M. Nicolosi,</u>
<u>Max and Maxine Does 1-12,</u>
<u>Ned and Nadine Zoes 1-12</u>

      Defendants

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants James L. DeHart, Esq., Margaret Nelson, Esq., the Honorable Diane M. Nicolosi, and the Honorable Landya B. McCafferty (collectively "NHADO defendants") submit this memorandum of law in support of their motion to dismiss the complaint.  LR 7.1(a)(2).

## I.    FACTUAL BACKGROUND

### A.    Factual Allegations

The Plaintiff's complaint arises solely from an alleged inability to obtain documents currently in the possession of the New Hampshire Attorney Disciplinary Office.  Complt. ¶¶ 1 through 7.  The Plaintiff named James DeHart, Esquire, the general counsel for the Attorney Discipline Office, Margaret Nelson Esquire, the chair of the Professional Conduct Committee (PCC), the Honorable Diane M. Nicolosi, formerly "assigned to reinvestigate Plaintiff's Professional Misconduct Complaint," and the Honorable Landya B. McCafferty, former "Disciplinary Counsel for the Attorney Discipline Office" as defendants.  Complt. ¶¶ 12, 14, 15,

and 16. The Plaintiff also named forty-eight as yet unidentified "members, officers or lawyers associated with" the Professional Conduct Committee or the Attorney Discipline Office. Complt. ¶¶ 17 and 18. For reasons that remain unclear, the Plaintiff further named opposing counsel in an underlying divorce proceeding, John P. Griffith Esquire, as a defendant. Complt. ¶ 13.

The Plaintiff included thirty-one paragraphs of factual allegations. Complt. ¶¶ 19 through 49. Only four of these paragraphs actually pertain to conduct related to the Plaintiff's requested disclosure of records. Complt. ¶¶ 41 through 44. Only one of these four paragraphs alleges conduct related to any of the NHADO defendants. Complt. ¶ 42. This paragraph relates only to NHADO defendant James DeHart, and asserts that defendant DeHart told the Plaintiff that a certain report remained publicly unavailable. *Id*. The Plaintiff also included second-hand allegations related to a document request by Mr. Edward Farley. Complt. ¶¶ 45 and 46. The Plaintiff does not attribute any further instances of alleged non-disclosure to the NHADO defendants.

The Plaintiff has not alleged that defendant DeHart did anything other than act in accordance with specific New Hampshire Supreme Court Rules. In fact, the references to relevant laws and statutes and the prayers for relief all indicate that, in truth, the Plaintiff's claims hinge on the constitutionality of these rules rather than the actions of individuals.

**B. Claims**

The Plaintiff alleges five causes of action. Complt. ¶¶ 71 through 99. The legal premise for these causes include violations of the First and Fourteenth Amendments to the United States Constitution, violations of federal due process, violations of 42 U.S.C. §1983, and violations of

the Privileges and Immunities Clause of the United States Constitution.[1]  Complt. ¶¶ 71 through

98.  The complaint further alleges violations of RSA 91-A, the State's "right to know" law.

Complt. ¶ 99.  In the body of the complaint, the Plaintiff also claims to "confront questionable

and possibly corrupt practices" of various State officials although the exact nature of this

"confrontation" other than the constitutional issues already mentioned remains unspecified.

Complt. ¶ 6.

As stated above, although the Plaintiff initially indicates various legal theories, many of

which seem related to various stages of different judicial or quasi-judicial proceedings, the only

substance in the Plaintiff's causes of action and prayers for relief relate to the alleged non-

disclosure of records.  *See* Complt. ¶¶ 71 through 99.  Within his causes of action, the Plaintiff

merely states that the NHADO defendants "relied" on provisions of the New Hampshire

Supreme Court rules.  *See* Complt. ¶¶ 73, 81, 87, and 93.  As stated above, the only conduct

alleged with any specificity pertains solely to defendant DeHart and reiterates defendant

DeHart's specific reliance on these same New Hampshire Supreme Court rules.  Complt. ¶ 42.

The factual portions of the causes of action that actually pertain to NHADO defendants are set

forth below.

First Cause of Action

*Defendants have relied on unconstitutional provisions* of New Hampshire Supreme Court
Rule 37(5)(c) and Rule 37A(II)(a)(6) insofar as those Rules' definition of "work product"
is inconsistent with the New Hampshire Supreme Court caselaw and Federal caselaw,
offensive to the public access provisions of the New Hampshire Constitution, and impairs
the transparency of the First and Fourteenth Amendments to the United States
Constitution.

Second Cause of Action

---

[1] There is no discussion anywhere in the complaint as to how Plaintiff's claims arise under the Privileges and
Immunity clause.  Therefore, although it is mentioned for completeness here, to the extent the conclusory allegation
is contained in the complaint it should be summarily dismissed.

*Defendants have relied on unconstitutional provisions* of New Hampshire Supreme Court Rule 37A(IV)(a)(2)(B) insofar as that Rule commands the NHPCC, or any component of the Attorney Discipline Office, to destroy all public records of non-docketed professional misconduct for grievances after those records have been available for public inspection for two years from the date of the original filing.  The mandatory procedure of destroying public records after the public has had unbridled access for two years is offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

Third Cause of Action

*Defendants have relied on unconstitutional provisions* of New Hampshire Supreme Court Rule 37A(IV)(a)(2)(C) insofar as that Rule permits the NHPCC, or any component of the Attorney Discipline Office, to destroy all public records of docketed professional misconduct complaints three years after notice of a dismissal with or without a caution, or three years after the date of an annulment, or three years after the death of the attorney respondent.  This discretionary procedure of destroying public records after the public has had unbridled access for three years is offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

Fourth Cause of Action

*Defendants have relied on unconstitutional provisions* of New Hampshire Supreme Court Rule 37A(IV)(a)(2)(D) insofar as that Rule mandates that the NHPCC, or any component of the Attorney Discipline Office shall not maintain an index of grievances that were not docketed as complaints.  Without an index, public access to non-docketed grievances provided by Supreme Court Rule 37A(IV)(a)(2)(B) is impracticable and the proviso of unbridled two years of public access is rendered nonsensical.  This Supreme Court Rule offends the public access provisions of the New Hampshire Constitution, and impairs the transparency of judicial conduct grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

Complt. ¶¶ 73, 81, 87, and 93 (emphasis added).  The Plaintiff also states a fifth cause of action

focused solely on the rules promulgated by the New Hampshire Supreme Court and unrelated to

the actions of the NHADO defendants.  Complt. ¶ 97 and 98.

Fifth Cause of Action

Under part I, article 8 of the New Hampshire Constitution, the Plaintiff has a presumptive right of access to all governmental proceedings and records, unless limited by a statutory provision that does not offend the New Hampshire Constitution and/or the United States

4

Constitution.  As stated hereinabove, the "work product" definition promulgated by Supreme Court Rule 37(5)(c) and Rule 37A(II)(a)(6) is inconsistent with New Hampshire Supreme Court caselaw and Federal caselaw, offensive to the public access provisions of the New Hampshire Constitution, and impairs the transparency of attorney grievance proceedings in violation of the First and Fourteenth Amendments to the United States Constitution.

*Id.*  The Plaintiff then raises alleged RSA 91-A violations as a "supplemental claim."  Complt. ¶ 99.

Although all claims fundamentally involve allegedly unlawful conduct within the NHADO defendants' respective roles within the State attorney disciplinary process, and all actions were taken pursuant to and in accordance with specific New Hampshire Supreme Court rules, the complaint is ambiguous with respect to whether the Plaintiff considers the NHADO defendants as private individuals acting under the color of State law or as individuals acting in their official capacities.  *See generally* Complt.  For the purposes of completeness, this motion to dismiss provides reasons for dismissal under both contingencies.[2]

## C.  RULES AND STATUTES

Relevant sections of the New Hampshire Supreme Court rules are as follows:

**Rule 37. Attorney Discipline System**

(3)(c)The professional conduct committee shall have the power and duty:

(2)  . . .To dismiss grievances or complaints with or without a warning, administer a reprimand, public censure or a suspension not to exceed six (6) months.

(5)  To institute proceedings in this court in all matters which the professional conduct committee has determined warrant the imposition of disbarment or of suspension for a period in excess of six (6) months.

(6) *Attorney Discipline Office*

(c) General counsel shall perform a variety of legal services and functions and shall have the power and duty:

(1) To receive, evaluate, docket and investigate professional conduct complaints.

---

[2] The Plaintiff also names Max Does 1-12, Maxine Does 1-12, Ned Zoes 1-12, and Nadine Zoes 1-12 as currently unidentified "members, officers or lawyers" for the New Hampshire Professional Conduct Committee, now referred to as New Hampshire Attorney Disciplinary Office.  To the extent that the Plaintiff later identifies these individuals, the arguments set forth herein apply to them as well and the court should exercise its authority under Local Rule 4.3(d)(1)(A) to dismiss the complaint as to those defendants.

(2) To remove complaints from the docket if it determines that a complaint is not within the jurisdiction of the attorney discipline system and/or does not meet the requirements for docketing.

(3) To dismiss complaints with a finding of no professional misconduct, with or without a warning.

(7) . . . . The committee's members, staff, counsel and all others carrying out the tasks and duties of the Attorney Discipline System shall be immune from civil liability for any conduct arising out of the performance of their duties.

(20) *Confidentiality:*

(b) *Grievance Docketed as Complaint*: All records and proceedings relating to a complaint docketed by the attorney discipline system shall be available for public inspection (other than work product, internal memoranda, and deliberations) in accordance with Supreme Court Rule 37A upon the earliest of the following:

(1) When the Attorney Discipline Office general counsel, the complaint screening committee or the professional conduct committee finally disposes of a complaint;

(2) When disciplinary counsel issues a notice of charges;

(3) When the professional conduct committee files a petition with the supreme court, except as provided by section (11) regarding resignations; or

(4) When the respondent attorney, prior to dismissal of a complaint or the issuance of a notice of charges, requests that the matter be public.

(k) Nothing in this section prevents a grievant from disclosing publicly the conduct of an attorney which he or she believes violates the rules of professional conduct or is otherwise inappropriate. . . . . This section does prohibit a grievant, however, from disclosing publicly the fact that a grievance or complaint against the attorney about the conduct had been filed with the attorney discipline system pending the grievance or complaint becoming public in accordance with the provisions of this section.

**Rule 37A.  Rules And Procedures Of Attorney Discipline System**

(II) (3)(A) Initial Screening of Grievance.  General Counsel shall review each grievance upon receipt to determine whether the grievance is within the jurisdiction of the attorney discipline system and whether the grievance meets the requirements for docketing as a complaint.

(II) (4)(B): If the attorney discipline office determines that a grievance fails to meet the requirements for docketing as a complaint, it shall so advise the grievant in writing.

(II) (6) Investigation:  . . . . Meetings of the complaint screening committee shall be in the nature of deliberations and shall not be open to the public, respondents, respondents' counsel, disciplinary counsel or the complainant. Records and reports of recommendations made shall in all respects be treated as work product and shall not be made public or be discoverable. However, the decision of the complaint screening committee shall be public.

(IV) Confidentiality and Public Access

(a) Confidentiality of and Public Access to Proceedings and Records.

(1) General Rule. The confidentiality of and public access to records, files and proceedings shall be governed by Supreme Court Rule 37.

(2) Public Access to Files.

(B) Grievance Not Docketed as a Complaint. All records (other than work product, internal memoranda and deliberations) relating to a grievance filed against a person who is subject to the rules of professional conduct but which is not docketed as a complaint, shall be maintained at the attorney discipline office for two (2) years from the date of original filing, and it shall be available for public inspection during this period. After this two-year period, the records shall be destroyed.

(C) Complaints. All records (other than work product, internal memoranda and deliberations) relating to a complaint that is docketed shall be maintained at the attorney discipline office and shall be available for public inspection in accordance with the provisions of Supreme Court Rule 37.  Paper records may be destroyed after:

(i) three years of the date of notice of dismissal with or without a caution; or

(ii) three years of the date of an annulment in accordance with section (V) of this rule; or

(iii) five years after the death of the attorney-respondent.

(D) Index of Complaints. The attorney discipline office shall maintain an index of complaints docketed against each attorney, which shall contain pertinent information, including the outcome of the complaint. No index of grievances that are not docketed as complaints shall be maintained.

## Rule 40 Procedural Rules of Committee on Judicial Conduct.

(3) *Confidentiality of Proceedings.*

(a) Except as provided in this section, all proceedings before the committee, and all information, communications, materials, papers, files, and transcripts, written or oral, received or developed by the committee in the course of its work, shall be confidential. No member of the committee or its staff and no employee of the committee shall disclose such proceedings, information, communications, materials, papers, files, or transcripts, except in the course of official duty and as otherwise authorized in this section.

(b) Grievance Not against a Judge or Not Satisfying Requirements for a Complaint.

(2) In accordance with section (5)(d), a grievance that fails to comply with the requirements for docketing as a complaint shall be dismissed. All records and materials relating to such a grievance shall be available for public inspection (other than work product, internal memoranda, and deliberations) in accordance with section (16)(b) after correspondence is sent to the judge who is the subject of the grievance and that judge has the opportunity to provide a reply to be filed in the public record in accordance with section (5)(d)(2). The judge's reply shall be filed in the public record.

## Supreme Court Comment – 2000 Amendment, order effective Jan. 3, 2000

Nothing in the rule of confidentiality prevents a grievant from disclosing publicly the conduct of a judge which he or she believes violates the Code of Judicial Conduct or is otherwise inappropriate. The immunity from civil liability does not apply to such disclosures. The rule does prohibit a grievant, however, from disclosing publicly the fact that a grievance against the judge about the conduct has been filed with the committee until a statement of formal charges is prepared and filed as described in section 9(a) of this rule, a grievance that had been docketed as a complaint is disposed of by informal resolution or adjustment or is

dismissed, or a grievance that has not been docketed as a complaint is disposed of by the committee.

Once a grievance or complaint has been disposed of by the committee, a grievant may make a public disclosure concerning the filing of a grievance including the conduct complained of and the action of the committee, and the committee's file, with the exception of work product, internal memoranda, and deliberations, shall be public.

(5)(a) The executive secretary of the committee shall acknowledge receipt of a grievance in a timely fashion.

(d) A grievance that is filed against a person who is not a judge or that fails to satisfy the requirements for docketing as a complaint as set forth in section (5)(c) shall be dismissed. The committee shall notify the grievant in writing of the reason for the committee's action.

(14) . . . .The committee, its staff, counsel, and investigators shall be immune from civil liability for any conduct arising out of the performance of their duties.

(16)(b) All records (other than work product, internal memoranda, and deliberations) relating to a grievance against a judge that is not docketed as a complaint shall be maintained by the committee for two years from the date of filing, and shall be available for public inspection during this period. After this two-year period, the records shall be sealed.

## II.      Standard for Motion to Dismiss

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court takes all well pleaded facts in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Gray v. Evercore Restructuring L.L.C.,* 544 F.3d 320, 324 (1st Cir. 2008). Until recently, the pleading standard for a motion to dismiss set a high bar for defendants, requiring essentially that it appear beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

However, *Conley* was abrogated recently by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562-563 (2007), which rejected the "no set of facts" formulation in favor of a more rigorous standard that requires more of the plaintiff. Although a complaint "does not need detailed factual allegations," *Bell Atl. Corp.,* 550 U.S. at 555-56, the court should reject "unsupported conclusions or interpretations of law," *Estate of Bennett,* 548 F.3d 155, 162 (1st Cir. 2008) (quotations omitted), and the allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555-56. Put differently, dismissal is

appropriate "if the complaint fails to state facts sufficient to establish a claim to relief that is plausible on its face." *Gray*, 544 F.3d at 324 (quotations omitted); *see Estate of Bennett,* 548 F.3d at 162 (to survive dismissal, a complaint "must possess enough heft to set forth a plausible entitlement to relief" (quotations omitted)).  This more stringent standard was recently confirmed and elaborated on by the Supreme Court in *Ashcroft v. Ibqal,* __ U.S. __, 129 S.Ct. 1937 (May 18, 2009).  The court made it clear that "[f]irst, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.  The court also made it clear that the *Bell Atl. Corp.* standard applies to all federal civil cases.  *Id.* at 1941.

While a complaint by a *pro se* litigant is held to a less stringent standard than one drafted by a lawyer, the right to self-representation does not confer immunity from compliance with relevant rules of procedural and substantive law.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 140 (1st Cir. 1985); *Eagle Eye Fishing Corp. v. U.S. Dept. of Commerce*, 20 F.3d 503, 506 (1st Cir. 1994).

When examining a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court is generally confined to the pleadings.  However, a motion asserting lack of subject matter jurisdiction under the Eleventh Amendment based on sovereign immunity is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *Wang v. New Hampshire Bd. of Registration in Medicine*, 55 F.3d 698 (1st Cir. 1995).  When faced with a motion to dismiss for lack of subject matter jurisdiction under Rule 12 (b)(1), the plaintiff, as the party invoking the court's jurisdiction, has the burden to establish by competent proof that such jurisdiction exists.  *See Bank of N.H. v. United States*, 115 F. Supp. 2d 214, 215 (D.N.H. 2000).  Rule 12 motions based on jurisdictional

grounds, may also include consideration of material outside the pleadings without converting the

motion to one for summary judgment. *See Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947);

*General Contracting & Trading Co., LCC v. Interval, Inc.*, 899 F.2d 109, 114-115 (1st Cir.

1990).

### III.    ARGUMENT

        **A.    The Court Lacks Subject Matter Jurisdiction With Respect To The Plaintiff's Cause Of Action II, Cause Of Action III, And Cause Of Action IV, As The Plaintiff Has Not Pled Facts Demonstrating Any Case Or Controversy.**

        The Plaintiff's Cause of Action II and Cause of Action IV pertain to rules regarding the

destruction of records related to non-docketed grievances.  Complt. ¶¶ 79 through 84 and 91

through 96.  However, the Plaintiff clearly asserts that the grievance that he filed was, in fact,

docketed.  Complt. ¶ 1.  Specifically, the Plaintiff states:

> In the year 2002, the Plaintiff filed a professional misconduct complaint with the New Hampshire Supreme [sic] Professional Conduct Committee (hereinafter "NHPCC"), naming Attorney John P. Griffith.  *That professional misconduct complaint was docketed* and ultimately dismissed four years later, in 2006.

*Id*. (emphasis added).  Given that the Professional Conduct Committee docketed the Plaintiff's

complaint, the rules regarding undocketed grievances do not apply and the Plaintiff lacks

standing to raise issues concerning them.  As this court noted in *Kamasinski v. New Hampshire*

*Supreme Court Committee on Judicial Conduct,* 1995 WL 89344 (1995), which also sought to

raise issues with New Hampshire attorney grievance practices, "it is axiomatic that a federal

court's jurisdiction can be invoked only when the plaintiff has suffered some actual or threatened

injury resulting from the allegedly illegal or unconstitutional conduct."  *Id*.  Therefore, the

Plaintiff's Cause of Action II and Cause of Action IV do not pertain to any controversy and

should be dismissed because the Court lacks subject matter jurisdiction over these claims.

With respect to Cause of Action III which pertains to the rule on docketed complaints, the Plaintiff has not alleged that the New Hampshire Attorney Discipline Office foreclosed him from reviewing the publicly available information in that case or that this information has, in fact, been destroyed.  Therefore, the Plaintiff's Cause of Action III does not pertain to any controversy and should be dismissed because the Court lacks subject matter jurisdiction over this claim.

**B.      The Plaintiff's Causes of Action Are Barred By The Eleventh Amendment.**

The allegations in the complaint pertain to activities performed within the scope of the NHADO defendants' job duties and pursuant to specific applicable rules.  Among other things, the complaint seeks money damages and findings of past misconduct for these activities.  *See* Complt., Section IX.

It is well-settled that the Eleventh Amendment bars suits against state entities and state agents in their official capacities unless the state has expressly waived immunity.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court).  The State has not waived immunity with respect to any judicial or quasi-judicial function and the Eleventh Amendment, therefore, bars any actions for conduct related to such functions.  *See* RSA 541-B:19, I(a) (2007).  New Hampshire has also not waived sovereign immunity for actions brought under Section 1983 and, absent such a waiver, the Eleventh Amendment bars suit against the State or its officials.  *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983).

The Federal District Court for Vermont addressed a similar issue in July of 2010 in the case of *McCain v. Hermann Law Office, et al.*, 2010 WL 3322708.  In that case, the Plaintiff sued the Vermont Disciplinary Counsel and Deputy Disciplinary Counsel under the Lanham Act, Title 42 U.S.C. 1983, the United States Trademark Act, and for violations of due process rights, equal protection, separation of powers, and several state laws.  *Id*.  The court held that the Eleventh Amendment barred the claim.  The court explained that "[w]hile the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Id*. at 5 *quoting Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  "When a suit names state officials as defendants and seeks to recover money, the Eleventh Amendment will bar the action if the state is the real, substantial party in interest."  *Id*. *quoting Regents of the U. of Cal. v Doe*, 519 U.S. 425, 429 (1997).  The court went on to specifically rule that "[c]laims for compensatory and punitive damages against disciplinary counsel acting in their administrative capacities fall within this category."  *Id*.

The Plaintiff's claims against the NHADO defendants in their official capacities are, therefore, barred by the Eleventh Amendment to the extent it seeks compensatory or other retrospective relief.  For this reason, those portions of the complaint should be dismissed.

### C.      The NHADO Defendants Are Entitled To Absolute Immunity.

The New Hampshire disciplinary system, now consisting of several components including the Professional Conduct Committee and the New Hampshire Attorney Discipline Office, is a judicial branch authority, created by the New Hampshire Supreme Court.  *See* New Hampshire Supreme Court Rules, 37, 37A, 39 and 40.  As described above, the Plaintiff bases his claims on allegedly unlawful conduct pertaining solely to execution of these judicial branch

functions in accordance with specific New Hampshire Supreme Court Rules.  Complt. ¶¶ 73, 81, 87, and 93.

Federal courts addressing claims against an attorney disciplinary counsel or other similar individuals have found that absolute judicial or quasi-judicial immunity protects the persons involved in the disciplinary actions from suit.  *Kissell v. Breskow,* 579 F.2d 425 (7th Cir. 1978) (executive secretary responsible for attorney discipline entitled to same quasi-judicial immunity that prosecutors enjoy as an arm of the Washington Supreme Court); *Kwasnik v. LeBlon,* 228 Fed. Appx. 238 (3d Cir. 2007) (members of state advisory committee on judicial conduct were entitled to quasi-judicial immunity and prosecutorial immunity); *Johnson v. Bd. of Bar Overseers of Massachusetts,* 324 F. Supp.2d 276 (D.Mass. 2004) (chair of Massachusetts Board and special hearings officer who conducted attorney disciplinary proceedings and prosecutor were entitled to absolute quasi-judicial or prosecutorial immunity); *Abbott v. Rabe*, 2005 WL 100258 (D. Mass. 2005) (Bar counsel responsible for investigating and prosecuting attorney discipline entitled to absolute immunity); *Overton v. Torruella,* 183 F. Supp.2d 295 (D.Mass. 2001) (federal judge on the judicial council responsible for reviewing claims of misconduct regarding federal judges entitled to absolute immunity); *McCain*, 2010 WL 3322708 (attorney discipline counsel entitled to absolute immunity regarding handling of plaintiff's grievance against attorney as an integral part of the judicial process); *Eston v. Van Bolt*, 728 F. Supp. 1336 (E.D. Mich. 1990) (Grievance administrator for the Michigan Attorney Grievance Commission and members of the Board involved in attorney's disciplinary proceedings entitled to absolute immunity).

Similarly, State law specifically retains such immunity for claims against any individuals administering a judicial function.  RSA 541-B:19, I(a) (2007).  Specifically, RSA 541-B:19, I(a) asserts that the State's limited waiver of sovereign immunity "shall not apply to (a) Any claim

which is based upon the exercise of a legislative or judicial function." *Id.* Therefore the

NHADO defendants are entitled to absolute judicial or quasi-judicial immunity and the

complaint should be dismissed.

### D.     Qualified Immunity

In addition, the NHADO defendants are immune from any civil liability pursuant to the

doctrine of qualified immunity.  "The doctrine of qualified immunity protects government

officials 'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'"

*Pearson v. Callahan*, 555 U.S. ___, ___, 129 S.Ct. 808, 815 (2009) (*quoting Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)).

"[T]o determine whether qualified immunity applies in a given case, [the court] must

determine: (1) whether a public official has violated a plaintiff's constitutionally protected right;

and (2) whether the particular right that the official has violated was clearly established at the

time of the violation." *Raiche v. Pietroski*, __ F.3d __, WL 4159611 at 3 (1st Cir. 2010).  "These

two prongs of the analysis need not be considered in any particular order, and both prongs must

be satisfied for a plaintiff to overcome a qualified immunity defense." *Id.*; s*ee Maldonado v.*

*Fontanes*, 568 F.3d 263, 269-70 (1st Cir. 2009).  "Additionally, in applying the second prong,

[the court] must consider two subsidiary issues: (a) the clarity of the law in general at the time of

the alleged violation; and (b) the clarity of the law as applied to the case - in other words,

whether a reasonable person in the defendant's shoes 'would have understood that his conduct

violated the Plaintiff['s] constitutional rights.'" *Raiche* at 3 *quoting Maldonado* at 269.

The first prong of the test will be substantively addressed below.  In short, the Plaintiff

incorrectly interprets the breadth and impact of First Amendment rights.  However, even if one

accepted the Plaintiff's legal premise, the second prong of the test describe above indicates that the NHADO defendants enjoy qualified immunity from suit.  Nothing in this case suggests that any named defendant could have thought that his or her actions violated constitutional rights or statutes.  In fact, the Plaintiff merely alleges that the NHADO defendants relied on validly promulgated rules – rules enacted by the New Hampshire Supreme Court and in existence in some form since approximately 1980.  *See* New Hampshire Supreme Court Rule 37 and 37A.  Specifically, the Plaintiff's causes of action allege that the defendants' conduct consisted simply of the fact that they "relied on unconstitutional provisions of New Hampshire Supreme Court" rules.  See First Cause of Action, para. 73; Second Cause of Action, para. 81; Third Cause of Action, para. 87; and Fourth Cause of Action, para. 93 (the Plaintiff's fifth and final cause of action does not allege conduct on the part of the individual defendants).  Based on the facts as alleged and specifically as set forth in the Plaintiff's causes of action, no reasonable person would have understood that this conduct violated the Plaintiff's constitutional rights.  In fact, given the facts as alleged, a reasonable person would have acted as the NHADO defendants acted and relied on clear regulatory directives blessed and enacted by the State's highest court.  The Plaintiff's claims rest merely on his own interpretation of First Amendment rights rather than any clearly recognized constitutional prohibition or directive.  Therefore, even if this Court were to declare the rules in question unconstitutional, the actions of the NHADO defendants remain protected by qualified immunity.

      **E.**      **The Plaintiff's Causes of Action II and III Must Be Dismissed for the Failure to State a Claim Because the Plaintiff's Causes of Action Admit That the Documents In Question Were Open And Available To The Public.**

      The Plaintiff premises his second and third causes of action on an allegation that certain documents were unavailable to the public thereby violating his First Amendment rights.  *See*

Complt. ¶¶ 79 through 90.  All other claims stem from the alleged unlawful failure to make these documents available.  See Complt. ¶¶ 71 through 78 and 91 through 99.  However, in Cause of Action II, the Plaintiff specifically admits that, in actuality, the records at issue are only destroyed "after the public has had *unbridled access* for two years."  Complt. ¶ 81 (emphasis added).  Similarly, in Cause of Action III, he states that the records are only destroyed "after the public has had *unbridled access* for three years."  Complt. ¶ 87 (emphasis added).  Any claim that the public has been unconstitutionally precluded from accessing records while simultaneously admitting that the public, in fact, had "unbridled" access for a number of years must fail as a matter of law.

Federal courts examining this issue have recognized that "[a] temporally based right is no stranger to the law."  *First Amendment Coalition,* 784 F.2d. at 473.  Several federal statutes authorize federal agencies to develop schedules for the disposal and retention of records.  Records Management Act, 44 U.S.C. Chapter 31, Disposal of Records, 44 U.S.C. Chapter 33.  Nor are such restrictions strangers to New Hampshire.  New Hampshire has several statutes that provide for various periods of retention for other types of government records.  For example, for State executive branch records, absent some other specified time period, records need be retained for only four (4) years.  RSA 5:38.  Local government records have a detailed statute setting out retention periods from one year to permanently.  RSA 33-A:3-a.  Building permits that are withdrawn or denied need only be retained for one year.  RSA 33-A:3-a, XVII.

Therefore, based on the Plaintiff's own pleading, sufficient access was provided and the Plaintiff's Cause of Action II and Cause of Action III must be dismissed.

      **F.**       **There Is No First Amendment Free Speech Right Of Access To Undocketed Judicial Or Attorney Grievances Or To All "Work Product".**

If any part of the complaint is not dismissed based on the preceding arguments, the complaint should be dismissed for failure to state a claim, as the constitutional rights asserted by the Plaintiff are not implicated by the facts of this case.  New Hampshire rules on access to records concerning attorney and judicial misconduct are among the most progressive in the nation in providing access to not only grievances that reach the stage of being docketed, but also to all undocketed grievances as soon as attorneys or judicial officials have had the opportunity to add any response they wish included.  *See* New Hampshire Supreme Court Rule 37, 37A and New Hampshire Supreme Court Comment – 2000 Amendment, order effective Jan. 3, 2000.

In New Hampshire there is access to all grievances filed, as well as protection for a grievant's right to publicly speak regarding their own complaint.  *See* New Hampshire Supreme Court Comment – 2000 Amendment, order effective Jan. 3, 2000.  Plaintiff's claim that the failure to keep an index of all undocketed grievances somehow rises to constitutional proportions is conclusory and unsupported such that it warrants no response except to point out that there is no right to a document that has never existed.  There simply is no right to force the government to create records.  Even the State's broad "right to know" laws require only the release of documents, not the creation of documents.  *See* RSA 91-A:4, VII (Supp. 2009) (stating "Nothing in this chapter shall be construed to require a public body or agency to compile, cross-reference, or assemble information into a form in which it is not already kept or reported by that body or agency.")

With respect to documents actually possessed by the State, the federal courts have consistently resisted efforts to transform the First Amendment into a federal constitutional "right to know" law or "right to access government documents" law, and have done so specifically in the arena of judicial or attorney misconduct proceedings.  The Third Circuit, in holding that

Pennsylvania's constitutional provision permitting public access to records of the Judicial

Inquiry and Review Board only after a Board recommendation to the Supreme Court that a judge

be disciplined did not run afoul of the First Amendment, stated:

> There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy [citing *Pell v. Procunier*]. The public's interest in knowing about its government is protected by the guarantee of a Free Press, but the protection is indirect. The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act.

*First Amendment Coalition v. Judicial Inquiry And Review Board, 7*84 F.2d 467, 475 (3rd Cir. 1986) (*quoting* Justice Stewart's oft-cited lecture, "Or of the Press," 26 Hast.L.J. 631, 636 (1975)).

The Third Circuit elaborated extensively on the lack of any First Amendment right to

access government records or information, reviewing constitutional history back to the debates at

the Constitutional Convention, a few months later in *Capital Cities Media, Inc. v. Chester,* in

which the media sought a constitutional right to access governmental records of various state

environmental agencies.  *Capital Cities Media, Inc. v. Chester,* 797 F.2d 1164 (3rd Cir. 1986).

The court concluded that there is no right to access implicit in the First Amendment.

> If a right of access were implicit in the First Amendment, as Times Leader urges, this task would be assigned to the judiciary and the courts would be required to fashion a constitutional freedom of information act.
>
> The First Amendment, however, seeks to promote the ideal of an informed electorate by barring government *interference* with the flow of information and ideas to the public.  The founding fathers intended affirmative rights of access to government-held information, other than those expressly conferred by the Constitution, to depend upon political decisions made by the people and their elected representatives.  This conclusion finds support in the text of the First Amendment, the historical gloss on that text, and the First Amendment caselaw.

*Id.* at 1167 (citing at length from *Houchins v. KOED, Inc.*, 438 U.S. 1 (1978)).  Specifically,

the court noted that the Supreme Court in *Houchins*, in finding no First Amendment right to

access, found that such a court role is unsupportable:

The respondents' argument is flawed, not only because it lacks precedential support and is contrary to statements in this Court's opinions, but also because it invites the Court to involve itself in what is clearly a legislative task which the Constitution has left to the political processes....

There is no discernible basis for a constitutional duty to disclose, or for standards governing disclosure of or access to information.  Because the Constitution affords no guidelines, absent statutory standards, hundreds of judges would, under the Court of Appeals' approach, be at large to fashion ad hoc standards, in individual cases, according to their own ideas of what seems "desirable" or "expedient."  We, therefore, reject the Court of Appeals' conclusory assertion that the *public and the media* have a First Amendment right to government information regarding the conditions of jails and their inmates and presumably all other public facilities such as hospitals and mental institutions.

*Houchins,* 438 U.S. at 12, 14, (emphasis supplied).

The cases distinguish between right of access and free speech or publication rights regarding what a person knows.  *First Amendment Coalition*, 784 F.2d at 472.  As pointed out previously, despite any conclusory or vague references in the Plaintiff's complaint to First Amendment rights, there is absolutely no limitation imposed by the New Hampshire Supreme Court Rules on his speech regarding his grievances at this point in time.

In *First Amendment Coalition,* after finding that there is no general right to access in the First Amendment, the court went on to review to what extent courts have found a right to access judicial conduct proceedings.  The factors the court considered are whether the same type of proceeding had historically been open at the time the First Amendment was adopted and whether access serves a compelling need.  *First Amendment Coalition,* 784 F.2d at 472-73.  Under this analysis, the Plaintiff cannot and has not stated a basis for a right to access to undocketed grievances, as unfounded grievances related to attorneys or judges have not historically been open.  To the extent that the proceedings regarding discipline have at any time been open, that has no relevance to undocketed grievances, as they never progress to a point that there is a proceeding.

To the extent that the Plaintiff seems to complain that although access is given, it should also include access to the Professional Conduct Committee or Attorney Discipline Office "work product," there is no support for that position.  There has been no history of judicial bodies' deliberations being open.  Appellate courts and juries all have the right to deliberate in private.  Nor has there ever been access to a judge's drafts of opinions or orders.  To the extent that the Plaintiff suggests that New Hampshire "right to know" practices are different, such a suggestion is not accurate.  RSA 91-A specifically exempts drafts and personal notes, as well as otherwise confidential documents, which would include attorney work product documents.  RSA 91-A:5, III, VIII, IX (Supp. 2009).  In fact, RSA 91-A does not apply to the judicial branch at all.  *See* RSA 91-A:1-a (Supp. 2009).

> **G.     There Is No First Amendment Right To Petition Related To Undocketed Judicial Or Attorney Grievances**

Constitutional claims regarding a lack of access to records, such as those raised by the Plaintiff, have been rejected in similar contexts.  In *West Farms*, the plaintiff claimed that the State Traffic Commission's failure to keep a public record of their *ex parte* meetings denied meaningful judicial review.  *West Farms Associates v. State Traffic Commission,* 951 F.2d 469, 474 (2d Cir. 1991).  The court rejected that claim, noting that there is no legal foundation for a claim that a state agency must keep a detailed public record for use in a subsequent petition to court.  *Id.*  Similarly, a federal district court in New York in rejecting a right to petition claim stated:

> The right to petition in general guarantees only that individuals have a right to communicate directly to government officials, and that individuals have the right of access to the courts to redress constitutional violations.  *See McDonald v. Smith,* 472 U.S. 479, 482 (1985); *Mozzochi v. Borden,* 959 F.2d 1174, 1180 (2d Cir.1992). . . . . Indeed, courts have recognized that government may conduct its business in private consistent with the First Amendment right to petition.  *West Farms*

*Associates v. State Traffic Commission of State of Connecticut,* 951 F.2d 469, 473 (2d Cir. 1991).

*Kittay v. Giuliani,* 112 F.Supp.2d 342, 354 (S.D.N.Y. 2000).

Here, because the Plaintiff has articulated no plausible way in which his right to petition the courts is affected by the public access rules, his complaint should be dismissed.

> **H.      There Is No First Or Fourteenth Amendment Due Process Right To Undocketed Judicial Or Attorney Grievances.**

Plaintiff repeatedly asserts that he is claiming violations of the First and Fourteenth Amendments.  To the extent that he intends to state a due process claim, as opposed to the First Amendment speech and petition claims addressed previously, he cannot prevail.

The Tenth Circuit has addressed a plaintiff's claims regarding substantive and procedural due process raised in the context of suit concerning an attorney discipline process, rejecting any foundation for the grievant to assert such claims.  *Doyle v. Oklahoma Bar Assoc*. 998 F.2d at 1567-70.  The Plaintiff has no property right that could be at stake in the disciplinary process and there is no additional process he is due.  McCain, at 4, 2010 WL 3322708 (stating that a third-party plaintiff has "no procedural or due process rights at stake" in an attorney's disciplinary proceeding).  For the same reasons articulated by the Tenth Circuit in *Doyle*, there can be no basis for a substantive or procedural due process claim in this case.

> **I.      This Court Does Not Have Jurisdiction Over State Law Claims.**

Plaintiff refers in a vague way to RSA 91-A, the New Hampshire "right to know" statute and the New Hampshire Constitution Part 1, Article 8 as giving rise to constitutional claims under the federal constitution.  They do not.  Federal and State courts that have addressed the issue have held that violation of a state law alone does not provide a basis for a §1983 claim. *Ebmeier, v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) ("We take this opportunity to emphasize

that violations of state laws, state-agency regulations, and, more particularly, state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983"); *Doe v. Conn. Dept of Child and Youth Services*, 911 F.2d 868, 869 (2d Cir. 1990); *Brown v. Grabowski,* 922 F.2d 1097, 1113 (3d Cir. 1990); *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988); *Coliseum Enterprises, Inc. v. Campbell,* 173 Vt. 585, 795 A.2d 1212 (2002) (§1983 claim based on denial of liquor license alleged to violate state statute dismissed as "plaintiffs may not use a violation of state law to bootstrap a violation of the federal constitution"); *Prentzel v. Dept of Public Safety,* 169 P.3d 573, 587 (Alaska 2007); *Starko, Inc. v. Gallegos,* 140 N.M. 136, 141, 140 P.3d 1085 (2006); *Thomas v. Gladstone*, 386 Md. 693, 702, 874 A.2d 434, 439 (2005); *McCormick v. City of Lawrence*, 278 Kan. 797, 805, 104 P.3d 991, 996 (2005).

As a preliminary matter, any reliance on RSA 91-A is misplaced as the statute does not apply to judicial branch activities. *See* RSA 91-A:1-a (Supp. 2009). In regard to the judicial branch's compliance with the directive of New Hampshire Constitution Part 1, Article 8, that provision explicitly provides only that access not be "unreasonably restricted." Federal courts are empowered to decide questions of federal constitutional law, not state constitutional law. The federal court may not intrude on the state prerogative to decide what is or is not reasonable under the State Constitution. As argued previously, the Eleventh Amendment bars the federal court from exercising any jurisdiction over a state law claim in these circumstances.

**J.      The Plaintiff Has Failed To Name A Necessary Party.**

The Plaintiff's claim, although framed in various and sometimes inconsistent ways, consists essentially of a challenge to the constitutionality of rules promulgated by the New Hampshire Supreme Court. *See generally* Complt. The Plaintiff, however, has not named the New Hampshire Supreme Court as a defendant. The New Hampshire Supreme Court is a

necessary party to any challenge to the rules it has promulgated.  *See Anderson v. Motorsports Holdings, LLC*, 155 N.H. 491, 493 (2007) (ruling that the Town of Tamworth was a necessary party to a declaratory judgment challenge to one of its ordinances).  Therefore, the claims regarding the constitutionality of New Hampshire Supreme Court rules must be dismissed for the failure to name a necessary party.

## IV.    CONCLUSION

For the reasons stated previously herein, the NHADO defendants respectfully submit that this Motion to Dismiss should be granted.

Respectfully submitted,

JAMES L. DeHART,
MARGARET H. NELSON
DIANE M. NICOLOSI
LANDYA B. MCAFFERTY

By their attorneys,

MICHAEL A DELANEY
ATTORNEY GENERAL

/s/ Mary E. Maloney

_____
Mary Maloney, Bar No. 1603
Assistant Attorney General
33 Capitol Street
Concord, N.H.  03301
Telephone:  (603) 271-3679

**Certificate of Service**

Dated: November 3, 2010

      I hereby certify that a copy of the foregoing was served via first class mail to: Arthur Ginsberg and co-defendant John Griffith, Esq.

                      /s/ Mary E. Maloney

                      _____

                      Mary Maloney, Bar No. 1603