UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| ARTHUR GINSBERG, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:10-cv-00452-JAW |
| | ) | |
| JAMES L. DeHART, *et als.*, | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANTS' MOTIONS TO DISMISS
AND ON PLAINTIFF'S MOTION TO AMEND COMPLAINT**

On October 5, 2010, *pro se* Plaintiff Arthur Ginsberg commenced this action with a complaint against James L. DeHart, general counsel for the New Hampshire Attorney Discipline Office of the New Hampshire Supreme Court Attorney Discipline System;  Landya B. McCafferty, former disciplinary counsel for the Office;  Margaret H. Nelson, chair of the Office's Professional Conduct Committee;  John P. Griffith, an attorney who represented Plaintiff's ex-wife in divorce proceedings and respondent to a professional misconduct grievance filed by Plaintiff in 2002;  Diane M. Nicolosi, currently a New Hampshire jurist and formerly an attorney assigned to "reinvestigate" the Griffith misconduct proceedings;  and a few dozen "Doe" and "Zoe" defendants who are described as members, officers, or lawyers associated with the New Hampshire Professional Conduct Committee who participated in the evaluation or reevaluation of Plaintiff's misconduct grievance against Griffith.  According to Plaintiff, he filed this action to vindicate his rights under the First Amendment of the United States Constitution, particularly the right to petition the courts for redress of grievances, rights allegedly deprived by operation of New Hampshire Supreme Court rules withholding public access to investigative

reports developed in attorney discipline proceedings and limiting the amount of time that grievances, complaints, and decisions are preserved for public review. Plaintiff contends that this controversy also implicates the Due Process Clause and the Privileges and Immunities Clause of the United States Constitution. Plaintiff cautions that his action "confronts questionable and possibly corrupt practices" of the New Hampshire attorney discipline system. (Compl. ¶ 6, Doc. No. 1.)

The case has been referred to the District of Maine, sitting by designation, and assigned to Chief Judge John A. Woodcock, Jr., due to the recusal of the district court judges presiding within the District of New Hampshire. (Oct. 18, 2010, Order, Doc. No. 8.) Now pending before the Court are two motions to dismiss and a motion to amend the complaint. The first motion to dismiss is advanced by Defendants DeHart, McCafferty, Nelson, and Nicolosi, who refer to themselves collectively as the "NHADO Defendants" in reference to their association with the New Hampshire Attorney Discipline Office. (NHADO Mot. to Dismiss, Doc. No. 14.) The second motion to dismiss is pressed by Defendant Griffith. (Griffith Mot. to Dismiss, Doc. No. 15.) In partial response to the motions to dismiss, Plaintiff has filed a motion seeking leave to amend his complaint to supplement his allegations. (Pl.'s Mot. to Am., Doc. No. 29.) Pursuant to 28 U.S.C. § 636, the Court has requested a report and recommendation from the undersigned. For reasons that follow, I recommend that the Court grant the defendants/movants' motions to dismiss, dismiss the federal claims with prejudice and the state law claim without prejudice, and deny as futile Plaintiff's motion to amend.

## DISMISSAL STANDARDS

The NHADO Defendants press various jurisdictional challenges in their motion to dismiss, including lack of subject matter jurisdiction and sovereign immunity under the Eleventh

Amendment.  The standards applicable to these doctrines are provided in the body of the

discussion.  The NHADO Defendants also assert that Plaintiff's claims against them should be

dismissed pursuant to Rule 12(b)(6), for failing to state a claim for which relief can be granted.

Defendant Griffith presses his motion to dismiss entirely on the basis of Rule 12(b)(6),

challenging the merits of the allegations and also raising a statute of limitation defense.

Rule 12(b)(6) provides that a complaint can be dismissed on a motion for "failure to state

a claim upon which relief can be granted."  To decide such a motion, the Court accepts as true

the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff

that are supported by the factual allegations, and determines whether the complaint, so read, sets

forth a plausible basis for recovery.  Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009).

A claim for recovery is plausible "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  To raise such an inference, it is not enough

merely to allege that a defendant acted unlawfully.  A plaintiff must affirmatively allege facts

that identify the manner by which the defendant subjected the plaintiffs to a harm for which the

law affords a remedy.  Id.

Beyond requiring that a complaint present sufficient factual allegations to raise a

plausible entitlement to relief, Rule 12(b)(6) also permits a defendant to obtain dismissal when it

is clear from the plaintiff's pleadings that a dispositive affirmative defense applies, such as a

statute of limitation.  Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009).

Finally, federal courts are courts of limited jurisdiction.  Hall v. Curran, 599 F.3d 70, 71

(1st Cir. 2010).  When the parties to a federal lawsuit have citizens of the same state on both

sides, and the court has dismissed all of the federal claims, the court generally should dismiss,

without prejudice, pendent state law claims for lack of subject matter jurisdiction.  Lares Group,
II v. Tobin, 221 F.3d 41, 45 (1st Cir. 2000);  Flynn v. City of Boston, 130 F.3d 42, 48 (1st Cir.
1998);  Miranda v. Ponce Fed. Bank, 948 F.2d 41, 49 (1st Cir. 1991).

### PLAINTIFF'S ALLEGATIONS

Defendants dispute many of the following allegations.  However, the Court takes
Plaintiff's allegations as true for purposes of the pending motions.

In 2002, Plaintiff Arthur Ginsberg filed an attorney misconduct grievance with the New
Hampshire Supreme Court's Professional Conduct Committee, alleging misconduct on the part
of Defendant John P. Griffith, an attorney who represented Plaintiff's ex-wife in divorce
proceedings.  The Committee eventually dismissed the matter in 2006.  (Compl. ¶¶ 1, 19.)

The New Hampshire attorney discipline system is overseen by the New Hampshire
Supreme Court.  The system is titled the New Hampshire Supreme Court Attorney Discipline
System and its administrative office and committees are known as the Attorney Discipline
Office, the Complaint Screening Committee, the Hearings Committee, and the Professional
Conduct Committee.  (Id. ¶ 6.)  The Office and the Committees are creatures of New Hampshire
Supreme Court rules related to attorney discipline.  The relevant rules, Rule 37 and Rule 37A,
are set forth in an appendix to this Recommended Decision.[1]  The Screening Committee has
authority to, among other things, override decisions made by general counsel for the Office
related to summary discontinuance of proceedings.  It has authority to divert or dismiss
proceedings in its own name and it has authority to refer complaints to disciplinary counsel for

---

[1]       The current version of the rules in question became effective January 1, 2004, while Plaintiff's grievance
was pending.  N.H. Supreme Ct. Admin. R. 37(23).  Plaintiff's action is directed specifically at the provisions of
Rule 37(5)(c) (concerning the Complaint Screening Committee), Rule 37A(II)(a)(6) (concerning investigations and
deliberations), and Rule 37A(IV)(a)(2) (concerning public access to files).  In a proposed amended complaint,
Plaintiff also references the clear and convincing standard of proof set out in Rule 37(5)(b)(5) and elsewhere.  An
appendix to this Recommended Decision reproduces the entirety of Rule 37 and Rule 37A, with the challenged
portions underlined.

hearing.  Its meetings are considered "deliberations" and are closed to the public, including to the complainant and the respondent.  (Id. Part IV.)  Prior to evaluation by the Screening Committee, general counsel investigates complaints with the aid of deputies and assistants and presents a recommendation to the Committee concerning how to proceed with a disciplinary matter. Records and reports of recommendations made to the Committee by general counsel are work product and are not available for public inspection, though the Committee's decisions are made public.

The Rules set forth specific parameters for the indexing and preservation of grievances against attorneys.  Grievances that are never docketed have a two-year shelf life;  those that are docketed abide for three years beyond the date of dismissal or annulment;  and docketed grievances that result in sanction abide for five years beyond the death of  the attorney.  The Committee may issue protective orders to protect sensitive information.  (Id.)

When Plaintiff filed his grievance against Defendant Griffith, Defendant Griffith was at that time representing the Committee as disciplinary counsel in a hearing against another attorney.  (Id. ¶ 20.)  The Committee assigned Attorney Robert Dewhirst to serve as counsel for Plaintiff's grievance and, following his investigation, Attorney Dewhirst reported to the Committee that he found a chargeable violation.  Dewhirst filed a report with the Committee to that effect.  Thereafter, on December 19, 2003, the Committee notified Plaintiff that the matter would proceed to a hearing.  Defendant Nelson was chair of the Committee at that time.  She notified Plaintiff and Defendant Griffith that "newly appointed disciplinary counsel" would pursue the matter.  (Id. ¶¶ 22-24.)  Defendant McCafferty got the job.  According to the complaint, in March of 2004 Defendant McCafferty "decided to discard the investigation and

report" made by Attorney Dewhirst and requested a new investigation by Defendant Nicolosi. (Id. ¶¶ 25-26.)

Defendant Nicolosi conducted an investigation and submitted a report to Defendant McCafferty in April of 2006.  (Id. ¶ 28.)  On June 9, 2006, Defendant McCafferty presented the Committee with a "request for dismissal with a warning."  (Id. ¶ 29.)  Plaintiff assumes that Defendant McCafferty's proposal reflected the recommendation of Defendant Nicolosi.  (Id.) Both Plaintiff and Defendant Griffith raised objections to the proposed disposition.  On July 18, 2006, the Committee voted to dismiss the grievance, finding no professional misconduct, but issued a warning.  (Id. ¶¶ 30-32.)  Plaintiff requested review by the New Hampshire Supreme Court in a "Rule 11 petition."  (Id. ¶¶ 33-35.)  On October 18, 2006, the Supreme Court issued an order accepting Plaintiff's petition, but on December 7, 2006, it reversed its acceptance and dismissed the petition.   (Id. ¶¶ 34, 38.)  Plaintiff requested *en banc* reconsideration, but his request was denied on January 4, 2007.  (Id. ¶¶ 39-40.)

Between 2005 and 2010, Plaintiff has repeatedly attempted to obtain a copy of the Dewhirst "investigation and report . . . which had been discarded without any apparent rational basis by Defendant . . . McCafferty."  (Id. ¶¶ 41, 42.)  Defendant DeHart has responded to Plaintiff's requests to obtain the document(s) with an assertion that the document(s) are not available.  (Id. ¶ 42.)  Plaintiff also has repeatedly attempted to obtain an index to all docketed and not docketed professional misconduct grievances and complaints, without success, even as to grievances and complaints that are open to the public.  (Id. ¶ 43.)  He alleges that other New Hampshire citizens have also been frustrated in their attempts to obtain an index to review because there is no index.  (Id. ¶¶ 45, 46.)

Plaintiff complains that the NHADO Defendants "have violated [his] protected First Amendment rights by failing to establish a functioning, bona fide and meaningful system for dealing with requests and complaints regarding the public's right of access to attorney misconduct complaints," and by attempting to "mislead the Plaintiff and the public into forming an opinion that the practice of ineffective access to attorney misconduct records was legally permitted by the laws of the State of New Hampshire."  (<u>Id.</u> ¶ 47.)  According to Plaintiff, the First Amendment supplies a lever to force open access to information suppressed by statutory regulation and/or rules of court.  (<u>Id.</u> ¶¶ 50-55.)  He complains that bar and judiciary oversight of attorney discipline has resulted in a scandalous suppression of information.  (<u>Id.</u> ¶ 57.)  He alleges that the First Amendment demands openness in disciplinary proceedings against attorneys unless fact specific findings are made on the record of a special need for closure.  (<u>Id.</u> ¶ 60.)  Plaintiff seeks to bolster his case for access by invoking New Hampshire's right to know law.  (<u>Id.</u> ¶¶ 66-68.)  He alleges irreparable injury and demands trial by jury.  (<u>Id.</u> ¶¶ 69-70.)  Based on these allegations, Plaintiff asserts five causes of action.

*Causes of Action*

Plaintiff's first cause of action focuses on the work product protection provided by New Hampshire Supreme Court rules and seeks invalidation of such protection pursuant to the Petition Clause of the First Amendment, the Due Process Clause of the Fifth Amendment and Fourteenth Amendment, and the Privileges and Immunities Clause.  In addition to declaratory relief, Plaintiff requests injunctive relief requiring Defendants to disclose the documents associated with the Dewhirst investigation and report of his grievance against Attorney Griffith. He pursues this relief through the vehicle of the Civil Rights Act, citing 42 U.S.C. §§ 1983, 1985, 1988.  (<u>Id.</u> ¶¶ 72-78.)

7

Plaintiff's second cause of action mirrors his first cause. However, it targets the rule calling for destruction of public records of non-docketed professional misconduct grievances two years from the date of original filing. (Id. ¶ 81.)

The third cause of action is a repeat of the prior two, except that it challenges the rule calling for destruction of "docketed professional misconduct complaints three years after notice of a dismissal . . . or three years after the date of annulment, or three years after the death of the attorney respondent." (Id. ¶ 87.)

The fourth cause of action presents the same challenge to what the rule has to say about indexing undocketed grievances. (Id. ¶¶ 91-96.)

Finally, in his fifth cause of action, Plaintiff asserts a state law claim under "part I, article 8 of the New Hampshire Constitution" and Chapter 91-A of New Hampshire Statutes, also known as New Hampshire's Right-to-Know Law. (Id. ¶¶ 98-99.)

### THE MOTIONS AND RELATED PROCEDURAL HISTORY

The NHADO Defendants raise a bevy of stumbling blocks in relation to all of Plaintiff's claims. They assert, in varying contexts, lack of subject matter jurisdiction, Eleventh Amendment immunity, judicial or quasi-judicial immunity, qualified immunity, failure to state a claim, failure to join an indispensable party, and objections as to the scope of Plaintiff's claims in relation to the facts of his particular experience with his disciplinary grievance against Defendant Griffith. (NHADO Def.'s Mot. to Dismiss, Doc. No. 14.)

For his part, Defendant Griffith simply does not understand why Plaintiff has named him in this action. Defendant Griffith explains that he is not a state actor subject to a claim under section 1983 of the Civil Rights Act and that, even if he were, more than three years passed by

after the end of the disciplinary process and before the commencement of this litigation,

effectively time-barring the claim(s) against him.[2]   (Griffith Mot. to Dismiss, Doc. No. 15.)

These motions spurred Plaintiff to do two things.  First, he sought leave to amend his

complaint to introduce a new defendant (Chief Justice John Broderick of the New Hampshire

Supreme Court), pursuant to Rule 21, and requested a stay of proceedings pending a ruling on his

Rule 21 request.  (See Doc. Nos. 16 (terminated), 19 (terminated), 20.)  Defendants objected to

this approach.  (Doc. Nos. 22, 23.)  The motion to stay was denied in light of the many

dispositive legal arguments raised in the motions to dismiss and Plaintiff's failure to properly

introduce his motion for joinder.  (See Order re. Nonconforming Document, Doc. No. 25;  Order

on Mot. to Stay, Doc. No. 26.)  However, Plaintiff's time for responding to Defendants'

dispositive motions was extended, despite Plaintiff's failure to file a timely opposition

memorandum.  Moreover, Plaintiff was informed that his action would not be dismissed on the

ground of failure to join an indispensable party.  That is, he was advised that if the "failure to

join" argument were the sole reason for dismissal against the named defendants, a later

opportunity would be provided for him to name the appropriate defendant.  (Order on Mot. to

Stay at 2-3.)  An objection to that ruling is currently before the Court.  (Doc. No. 27.)

After this procedural imbroglio, Plaintiff filed his opposition memoranda.  (Doc. Nos. 28,

32.)  In addition, Plaintiff filed a motion for leave to amend his complaint, attaching a proposed

amended complaint that attempts to sketch out a conspiratorial relationship among the

defendants and alleges corrupt preferential treatment in favor of Defendant Griffith in relation to

Plaintiff's grievance.  (Doc. No. 29.)  The proposed amendments do not include any new cause of

---

[2]        The NHADO Defendants presumably do not raise a statute of limitation defense because the allegations
against them describe, at least in part, a violation related to public access to presently existing records or
information.

action, but do offer some additional factual background.  In particular, Plaintiff asserts that the Committee (Defendant Nelson) issued a warning to Defendant Griffith because he made statements "harmful to the children" and "lacking basic decency," including statements lacking a strong factual basis concerning Plaintiff's mental health, past treatment of his ex-wife, and finances.  Plaintiff complains that these findings cannot be reconciled with the decision to dismiss his grievance without a hearing.  (Proposed Am. Compl. ¶¶ 42, 47, Doc. No. 29-1.)

In his proposed amended complaint, Plaintiff also attempts to strengthen his factual basis for a conspiracy between Griffith and the state actors for purposes of 42 U.S.C. § 1983.  Only two of the newly proposed allegations would make any difference in terms of Defendant Griffith.  First, according to Plaintiff, retired New Hampshire Supreme Court Justice David Brock was instrumental in the dismissal of his Rule 11 petition, and Plaintiff alleges that Justice Brock is a personal friend of Defendant Griffith.  (Id. ¶¶ 6, 17.)  Second, Plaintiff alleges that the Committee instituted an elevated, clear and convincing evidence standard for disciplinary matters in his case, in June of 2006, whereas the New Hampshire Supreme Court did not "ratify" such a change until March 2007.  (Id. ¶ 44.)  In the interim, says Plaintiff, New Hampshire Supreme Court Justice Linda Dalianis upheld application of the heightened standard.  Plaintiff alleges that Justice Dalianis is a former business partner of Defendant Griffith.  (Id.)  Note that the Rules challenged in this action had an effective date of January 1, 2004.  N.H. Supreme Court Admin. R. 37(5)(b)(5), (23).

In addition to these changes, the proposed amended complaint would also introduce seven new party defendants to the cast:  David Brock, a retired justice of the New Hampshire Supreme Court;  Carol Ann Conboy, Linda S. Dalianis, James E. Duggan, Gary E. Hicks, and Robert J. Lynn, current justices of the New Hampshire Supreme Court;  and Michael A.

10

Delaney, the New Hampshire Attorney General.  (Proposed Am. Compl. ¶¶ 17-20, 22, 24-25.)

Plaintiff explains that these defendants are "competent to answer Plaintiff's allegations

challenging the constitutionality of New Hampshire Supreme Court Rules[.]"  (<u>Id.</u>)  These are

official capacity claims only, except for the claim against Brock.  (<u>Id.</u>)

DISCUSSION

The following discussion proceeds in three parts.  Part A addresses Defendant Griffith's

motion to dismiss, relates the allegations found in the proposed amended complaint, and

recommends that the Court grant Defendant Griffith's motion.  Part B addresses the NHADO

Defendants' motion to dismiss and recommends that the Court grant the motion.  Part C

addresses Plaintiff's motion to amend, recommends that it be denied as futile, and recommends

that the Court extend its dismissal order to the claims asserted against the Doe and Zoe

defendants.

**A.     Defendant Griffith's Motion to Dismiss**

Plaintiff's federal constitutional claims fall under sections 1983 and 1985 of the Civil

Rights Act.  Section 1983 of the Civil Rights Act confers upon every United States citizen a right

to redress against any person who, acting under color of state law, causes a deprivation of

"rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42

U.S.C. § 1983.  Section 1985 prohibits conspiracies to deprive others of equal protection or equal

privileges and immunities under the law, whether the defendant is a private person or a state

actor.  42 U.S.C. § 1985(3).  However, a civil rights claimant needs to pursue his or her claims in

a timely fashion.  Federal civil rights claims do not remain viable indefinitely.   If the claimant

does not timely pursue his or her cause, the defendant obtains an affirmative defense that will

prevent the court from granting the requested relief.  <u>Cao v. Puerto Rico</u>, 525 F.3d 112, 115 (1st

11

Cir. 2008).  Claims under sections 1983 and 1985 are subject to the statute of limitation that

applies in the forum state to personal injury claims.  Id.; Rodriguez-Garcia v. Mun. of Caguas,

354 F.3d 91, 96 (1st Cir. 2004).  In New Hampshire, the forum of this dispute, the limitation

period is three years.  McNamara v. City of Nashua, 629 F.3d 92, 95 (1st Cir. 2011).  When it

comes to the limitation of actions, the clock runs from the accrual date for the cause of action in

question.  The accrual date is "the date when the potential plaintiff knew or should have known

that she was harmed."  Cao, 525 F.3d at 115.

Defendant Griffith argues that the action against him is barred by application of the

statute of limitation.  (Griffith Mot. to Dismiss at 4.)  In his objection and in his proposed

amended complaint, Plaintiff attempts to lay the groundwork for an inferential finding that a

conspiracy existed between Defendant Griffith, the NHADO Defendants, and the New

Hampshire jurists named in the proposed amended complaint.  (Pl.'s Obj. to Griffith Mot. at 1-2,

Doc. No. 28.)  He also raises the continuing violations doctrine in an effort to resist the statute of

limitation defense.  (Id. at 2, ¶ 6.)

Given the pleadings before the Court, the statute of limitation defense is dispositive of

Plaintiff's claims against Defendant Griffith as a matter of law.  Plaintiff's allegations indicate

that his grievance effort against Defendant Griffith was effectively ended by the New Hampshire

Supreme Court on January 4, 2007.  Any harm that he alleges in regard to that disposition

certainly was well known to him as of that date.  Yet Plaintiff filed the present complaint on

October 5, 2010, more than three years later.  Assuming, exclusively for the sake of argument,

that Defendant Griffith had any authority or influence over how any of the state actors advanced

or disposed of the grievance against him, such that he can fairly be regarded as a state actor;  and

also assuming that the issuance of a publicly available warning against Griffith, rather than a

full-blown hearing followed by a formal sanction, somehow subjects Plaintiff to a constitutional deprivation or gives rise to an equal protection violation;  nevertheless, Plaintiff sat on his claim for too long before filing suit and, by his own pleading, has demonstrated that the claim is time-barred as a matter of law.[3]

Plaintiff's invocation of the continuing violations doctrine does not aid him.  "The 'continuing violation' doctrine is misnamed. . . . The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought."  Morales-Tanon, 524 F.3d 15, 18-19 (1st Cir. 2008) (quoting Limestone Dev. Corp. v. Village of Lemont, 520 F.3d 797, 801 (7th Cir. 2008)).  Assuming that the allegedly unacceptable disposition of the disciplinary grievance deprived Plaintiff of a constitutional right that can be vindicated in a collateral civil rights action, the defendants fully effectuated all of the alleged harm as of January 2007.  More than three years passed before Plaintiff pursued this litigation.  Consequently, Defendant Griffith is entitled to judgment dismissing the federal claims against him whether or not Plaintiff's state-actor[4] or substantive conspiracy allegations can somehow be squared with the Rule 12(b)(6) plausibility pleading standard set out in Ashcroft v.

---

[3]    Note that, to the extent Plaintiff presents a facial challenge to the constitutionality of the New Hampshire Supreme Court rules on attorney discipline, there is no reasonable inference available that Defendant Griffith conspired with anyone or played a material role in regard to the wording or implementation of the rules.

[4]    Defendant Griffith, as opposing counsel in Plaintiff's divorce proceeding or as respondent in a disciplinary proceeding, is not even in the league of a public defender when it comes to assessing state actor liability, and "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  Polk County v. Dodson, 454 U.S. 312, 325 (1981).  See also Mayercheck v. Judges of Pa. Supreme Court, No. 09-3575, 395 Fed. Appx. 839, 2010 WL 3258257, 2010 U.S. App. Lexis 17790 (3d Cir. Aug. 18, 2010) (per curiam) (unpublished) (affirming dismissal of conspiracy claim that ex-wife, her counsel, and the state court and various judges and court officers conspired to deprive the plaintiff of his constitutional rights).
      Because Plaintiff's action focuses on a disciplinary process and public access restrictions placed on the record of that process, it does not simply present a collateral challenge to a divorce proceeding, per se.  If this were purely a case about a divorce proceeding, the Court would lack jurisdiction under the domestic relations exception/abstention doctrine.  See Norton v. McOsker, 407 F.3d 501, 505 (1st Cir. 2005) (describing the exception and its limited scope).

Iqbal, 556 U.S. __, 129 S.Ct. 1937 (2009), which abjures conclusory allegations of behind-the-curtain machinations.[5]

In theory, Defendant Griffith could be a pendent party defendant on the state claim, if a federal claim against the NHADO Defendants remained.  However, for reasons that follow, I recommend that the federal claims be dismissed as to those defendants as well.  If the Court adopts this recommended disposition, then the Court should decline to exercise supplemental jurisdiction over the state law claim and dismiss it without prejudice.  See 28 U.S.C. 1367(c); Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.").  Because that course seems likely, I have not offered a recommendation on the merits of the state law claim.

**B.       The NHADO Defendants' Motion to Dismiss**

Plaintiff seeks declaratory relief regarding the constitutionality of certain provisions of the New Hampshire Supreme Court Rules restricting public disclosure of investigation reports submitted to the Committee and prepared by disciplinary counsel and staff, primarily but not exclusively in the particularized context of the professional misconduct grievance Plaintiff brought against Defendant Griffith.  Plaintiff further requests injunctive relief related to how the NHADO Defendants will maintain records going forward.  Plaintiff also requests that this Court issue an injunction against Defendant James DeHart, Esq., requiring him to release the Dewhirst investigation report to Plaintiff.  As to all causes of action, Plaintiff asserts a prayer for compensatory and punitive damages.  (Compl. Part XI at pp. 30-33;  Proposed Am. Compl. Part

---

[5]       If allegations of an amicable personal relationship were sufficient at the pleading stage to demonstrate a civil rights conspiracy, an inordinate number of unsuccessful litigants in state court would run to the federal courthouse to pursue collateral litigation, assuming they would not be limited to a direct appeal.  The mere existence of a friendship does not warrant an inference of a conspiracy to violate another's constitutional rights.

XI at pp. 36-39.)

Defendants James L. DeHart, Margaret Nelson, the Honorable Diane Nicolosi, and the

Honorable Landya B. McCafferty (the NHADO Defendants), have moved to dismiss all or part

of the action for ten reasons:

(1)     that he cannot complain about rules related to the handling of un-docketed
        grievances because he is seeking disclosure of Attorney Dewhirst's report, which
        was docketed (NHADO Mot. at 10-11);

(2)     that the Eleventh Amendment bars this action in federal court to the extent it
        seeks money damages (id. at 11-12);

(3)     that they are each entitled to absolute judicial, or quasi-judicial, immunity as
        members of an attorney disciplinary office overseen by the New Hampshire
        Supreme Court (id. at 12-14);

(4)     that they are each entitled to qualified immunity because Plaintiff's constitutional
        theories are not clearly established law (id. at 14-15);

(5)     that Plaintiff fails to state a claim in counts II and III because he acknowledges
        that such documents are open and available to the public (id. at 15-16);

(6)     that Plaintiff fails to state a claim in counts I through IV because there is no First
        Amendment right of access to undocketed judicial or attorney grievances or to
        work product (id. at 16-20);

(7)     that Plaintiff fails to state a claim in counts I through IV because there is no First
        Amendment right to petition related to undocketed judicial or attorney grievances
        (id. at 20-21);

(8)     that Plaintiff fails to state a claim in counts I through IV because there is no Due
        Process right at stake, either (id. at 21);

(9)     that the Court lacks jurisdiction over the state law claim asserted in count V (id. at
        21-22);  and

(10)    that the action is flawed for failure to name a necessary party:  The New
        Hampshire Supreme Court (id. at 22-23).

It is not necessary for the Court to reach every one of these arguments.  For reasons that follow,

Plaintiff's federal claims against the NHADO Defendants succumb to the sovereign immunity,

15

judicial immunity, qualified immunity, and failure to state a claim defenses.

### 1. *Eleventh Amendment Sovereign Immunity*

The NHADO Defendants assert that the only sequence of complaint allegations that pertain to their conduct towards Plaintiff are paragraphs 41 through 44 of his original complaint. These paragraphs read:

> 41.     On numerous days since January 5, 2005, Plaintiff unsuccessfully attempted to obtain a copy of the investigation and report previously submitted to the NHPCC by Attorney Robert C. Dewhirst, which had been discarded without any apparent rational basis by Defendant Landya B. McCafferty.

> 42.     On June 16, 2010, Plaintiff again attempted to obtain access to the investigation and report authored by Attorney Robert C. Dewhirst.  Defendant Attorney James L. DeHart informed the Plaintiff that the status had not changed and Attorney Dewhirst's report was not available.

> 43.     Plaintiff has repeatedly attempted to obtain an index to all docketed and not docketed professional misconduct grievances and complaints, which are open to the public.  Plaintiff's efforts were unsuccessful.

> 44.     Plaintiff has repeatedly attempted to obtain an index to all non-public docketed and not docketed professional misconduct grievances and complaints. Plaintiff's efforts were unsuccessful.

In his proposed amended complaint, Plaintiff adds allegations against several new defendants and shifts his emphasis to a theory of conspiracy.  He clarifies that he is only bringing official capacity claims against Defendant DeHart and Defendant Nelson.  (Proposed Am. Compl. ¶¶ 21, 27.)  He does not specifically indicate that this is his theory of liability against Defendants McCafferty and Nicolosi (id. ¶¶ 26, 28), but there is no measurable distinction between the allegations against McCafferty and Nicolosi as compared to the allegations against DeHart and Nelson, in terms of parsing official-capacity liability.

Plaintiff does not attempt to counter the argument that the NHADO Defendants are entitled to sovereign immunity to the extent the federal claims are premised on official-capacity

conduct and seek a remedy in damages.  In their official capacities, the NHADO Defendants are not "persons" under section 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Moreover, New Hampshire has not waived its sovereign immunity and the law is clear that these claims are barred by the Eleventh Amendment, absent circumstances not present here.  Id. at 66 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity[.]") (citing Welch v. Texas Dep't of Highways & Public Transp., 483 U.S. 468, 472 (1987)).  The NHADO Defendants are entitled to dismissal of all claims, other than for prospective injunctive relief, based on New Hampshire's sovereign immunity under the Eleventh Amendment.

However, to the extent the claims against Defendant DeHart and/or Defendant Nelson request or can be construed as seeking prospective injunctive relief, the Eleventh Amendment does not present a bar.  See Negron-Almeda v. Santiago, 579 F.3d 45, 52 (1st Cir. 2009) ("In contrast to damages, the Eleventh Amendment does not bar claims for prospective injunctive relief against state officials in their official capacity.");  see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) ("[I]mplementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.").

### 2.  *Quasi-Judicial Immunity*

As for the viability of any damages claim against the NHADO Defendants that is tethered to the disciplinary proceeding against Defendant Griffith—assuming that personal-capacity claims can be deduced from the pleadings with regard to some or all of the NHADO

17

Defendants—the NHADO Defendants correctly assert that they are all entitled to judicial or quasi-judicial immunity.[6]  See Coggeshall v. Mass. Bd. of Regist. of Psychologists, 604 F.3d 658, 663 (1st Cir. 2010) (holding that the members of a professional regulatory board are "functionally comparable" to judges and have quasi-judicial immunity because they weigh evidence, make factual findings, reach legal determinations, choose sanctions, expound reasons for their decisions, and are likely to provoke litigious responses from affected persons) (quoting Battencourt v. Bd. of Regist. in Med., 904 F.2d 772, 783 (1st Cir. 1990));  Wang v. N.H. Bd. of Regist. in Med., 5 F.3d 698, 701 (1st Cir. 1995) ("State officials performing prosecutorial functions—including their decisions to initiate administrative proceedings aimed at legal sanctions—are entitled to absolute immunity[.]").

### 3.  Qualified Immunity

As for the viability of any damages claim against the NHADO Defendants for the destruction of the Dewhirst report, for the failure to produce the Dewhirst report, or for the failure to develop an index of grievances and complaints, the NHADO Defendants are entitled to qualified immunity because Plaintiff fails to demonstrate (1) that the right of access he asserts in support of his cause was clearly established with regard to investigative files and reports created in attorney or judicial disciplinary matters or (2) that the right he asserts imposes indexing duties on state governments.

The Supreme Court's opinions "consistently have held that government officials are entitled to some form of immunity from suits for damages.  As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability."  Harlow v. Fitzgerald, 457 U.S. 800, 807

---

[6]        The NHADO Defendants do not raise a statute of limitations defense.

(1982) .  "In the last analysis, . . . qualified immunity purposes to protect government functionaries who could not reasonably have predicted that their actions would abridge the rights of others, even though, at the end of the day, those officials may have engaged in rights-violating conduct."  Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999).  In this way, the doctrine of qualified immunity protects a state actor from litigation in circumstances where the proper application of the underlying constitutional standard is unclear and, therefore, not otherwise suited for dismissal or summary disposition.

The qualified immunity test has two elements:  "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation."  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (citing, inter alia, Pearson v. Callahan, 555 U.S. 223 (2009)).  The second element can be broken down into two tests:  (1) whether the contours of the right are sufficiently clear that a reasonable state actor would appreciate that his conduct was placing a constitutional right in jeopardy;  and (2) whether the officer would have understood that the right in question would actually be violated in light of the specific or concrete facts of the case.  Together, the tests address "whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional."  Id.;  Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.").

For reasons outlined in the following section, the right Plaintiff asserts is not clearly established.  Consequently, the NHADO Defendants cannot have any personal liability under the

Civil Rights Act for non-judicial functions they performed in relation to the destruction, retention, indexing, or production of investigatory documents.

### 4.   *Failure to State a Claim*

The remainder of Plaintiff's action consists of a series of claims for declaratory and injunctive relief that would, in effect, "constitutionalize" record retention and dissemination practices of state investigative agencies.  In effect, Plaintiff is asking the Court to declare unconstitutional the New Hampshire Supreme Court Rules restricting the publication of attorney disciplinary materials.  He requests a declaration that the United States Constitution, particularly the First Amendment, requires that attorney disciplinary matters and records be open for public inspection, indefinitely, without any qualifications or restrictions, and subject to mandatory indexing duties.

Plaintiff's pleadings set forth numerous "allegations" related to Supreme Court precedent concerning public access to court proceedings and dockets.  However, he fails to cite any precedent reaching so far as to require, on constitutional grounds, that official investigations into allegations of professional misconduct cannot be shielded from public inspection by rules governing the investigative body's conduct, or that a public record, once made available for public inspection, must be indexed and maintained indefinitely for public inspection.  To my knowledge, there is no legal authority for the proposition that the First Amendment is a federal constitutional "right to know" law that preempts the disclosure practices of state investigative tribunals or professional disciplinary boards.  There is law, however, to the contrary.

In First Amendment Coalition v. Judicial Inquiry & Review Board, the Third Circuit Court of Appeals held that a Pennsylvania constitutional provision restricting public access to records of a judicial review board did not run afoul of the federal constitution where public

20

disclosure was limited to those cases in which the board recommended that discipline be

imposed.  *784 F.2d 467 (3rd Cir. 1986) (en banc).*  As observed by the Court:  "In addressing a

claim of access, the Chief Justice admonished the courts not to 'confuse what is good, desirable,

or expedient with what is constitutionally commanded by the First Amendment.  To do so is to

trivialize constitutional adjudication.'"  Id. at 475 (quoting Houchins v. KQED, Inc., 438 U.S. 1,

13 (1978) (Opinion of Burger, C.J.)).  Quoting an article by Justice Stewart, the Court described

this kind of dispute as a political contest that must be fought in the political realm—the court of

public opinion—rather than in federal court:

> There is no constitutional right to have access to particular government
> information, or to require openness from the bureaucracy.  The public's interest in
> knowing about its government is protected by the guarantee of a Free Press, but
> the protection is indirect.  The Constitution itself is neither a Freedom of
> Information Act nor an Official Secrets Act.
>
> The Constitution, in other words, establishes the contest, not its resolution.
> Congress may provide a resolution, at least in some instances, through carefully
> drawn legislation.  For the rest, we must rely, as so often in our system we must,
> on the tug and pull of the political forces in American Society.

Id. (quoting Potter Stewart, *Or of the Press*, 26 Hast. L.J. 631, 636 (1975), reprinted in 50 Hast.

L.J. 705, 710 (1999)).  Plaintiff is waging his battle in the wrong forum.

Additional persuasive precedent exists in cases addressed to press or public efforts to

obtain criminal presentence reports, withdrawn plea agreements, search warrant affidavits, or

financial information submitted to the court in support of a criminal defendant's application for

court-appointed counsel, which information is appropriately withheld from public inspection

over constitutional challenge.  United States v. Connolly (In re Boston Herald, Inc.), 321 F.3d

174, 175, 183 (1st Cir. 2003).[7]  "As these cases demonstrate, the First Amendment does not grant the press or the public an automatic constitutional right of access to every document connected to judicial activity.  Rather, courts must apply the Press-Enterprise II standards to a particular class of documents or proceedings and determine whether the right attaches to that class."  Id. at 184.

The Press-Enterprise II standards are two in number.  The first consideration is whether the materials in question have been open to the public in the past, "because a tradition of accessibility implies the favorable judgment of experience";  the second consideration is "whether public access plays a significant positive role in the functioning of the particular process in question."  Id. at 182 (quoting Press-Enterprise Co. v. Superior Court (Press-Enterprise II), 478 U.S. 1, 8 (1986) (internal quotation marks omitted)).  Affirmative answers require public access unless there exists an "overriding interest" against disclosure.  Id.

Plaintiff fails to disclose a tradition of public access to investigative materials and internal reports associated with bar or judicial disciplinary matters.  This is not surprising, as similar investigative practices are not uncommon with respect to professional competency and disciplinary boards.  The fact that this is so hints strongly at the answer to the second inquiry.  Legislatures, agencies, and administrators concerned with professional conduct and competency have found that the public's interest generally is not advanced by public access to investigation records compiled in a prehearing context and have restricted disclosure to pleadings and decisions.  There does not appear to be any precedential basis for Plaintiff's proposed requirement of indefinite retention and indexing, either.

There remains for consideration the common law presumption of public access to

---

[7]     Search warrant affidavits have received varying treatment based on the specific facts and circumstances of the case and subject to partial redaction, in the trial court's discretion.  See, e.g., In re Application & Aff. for a Search Warrant, 923 F.2d 324, 330-31 (4th Cir. 1991), cert. denied, Hughes v. Wash. Post Co., 500 U.S. 944 (1991).

"judicial records."  See Connolly, 321 F.3d at 189.  The investigatory reports likely are not

judicial records because they are in the nature of discovery materials compiled by an

investigative authority.  Id. (citing Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir. 1986)

("Discovery is fundamentally different from those proceedings for which a [common law] public

right of access has been recognized.")).  Although the records in question are considered in order

to make substantive determinations about whether and how to proceed with disciplinary

allegations or charges, such determinations are made by an administrative body, not by a court.

The mere fact that this investigatory and prosecutorial function is transpiring pursuant to rules

promulgated by the New Hampshire Supreme Court does not mean that there is any greater

presumption of public access than would exist for the investigatory reports used in a deliberative

process by other professional boards.  Plaintiff has failed to demonstrate a common law

presumption of access to such materials.  My own research has failed to reveal such a

presumption, though it is abundantly clear that the work product doctrine and deliberative

process exception to public access are well established in relation to both adversarial and

administrative proceedings.  Though federal case law squarely on point is difficult to unearth,[8]

there does not appear to be a federal constitutional or common law[9] basis that would afford

public access to investigative files and reports used by disciplinary bodies as part of their

deliberative process, let alone dictate file retention and indexing obligations.  The persuasive

precedent that is available demonstrates, to the contrary, that there is no general right of access

under the United States Constitution or federal common law to government processes generally

---

[8]     Paff v. Director, Office of Attorney Ethics, 945 A.2d 149 (N.J. Sup. Ct. Law Div. 2007) joins the Third
Circuit's Judicial Inquiry & Review Board opinion and offers an equally persuasive assessment, concluding that
investigatory papers are not judicial records within the common law presumption of access and are in any event
"shielded from public access by the work product doctrine and the deliberative process privilege."  945 A.2d at 157.

[9]     There is another assumption at work here;  that federal common law can override state law.

or to executive agency documents and records specifically.  El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 494-95 (1st Cir. 1992) (considering a public access claim associated with a fractious political issue and recommending that trial courts be chary of declaratory claims with "fuliginous" constitutional issues, particularly in the context of claims for declaratory relief); United States v. Gonzalez, 150 F.3d 1246, 1260-61 (10th Cir. 1998) (collecting cases).

Plaintiff has not demonstrated that the public has a right to access guaranteed by federal constitutional or common law precepts that is violated by the New Hampshire Supreme Court rules that he challenges in this litigation.  For this reason, dismissal for failure to state a claim is appropriate.[10]

To the extent that Plaintiff still intends to pursue claims against the NHADO Defendants under state law, it is my recommendation that the Court decline to exercise supplemental jurisdiction over any state law claims.  See 28 U.S.C. 1367(c);  Rodriguez, 57 F.3d at 1177.

**C.    Plaintiff's Motion to Amend;  the Proposed New Defendants;  and the Doe and Zoe Defendants**

With his proposed amended complaint, Plaintiff would extend his claims to David Brock, Carol Ann Conboy, Linda Dalianis, James Dugan, Gary Hicks, and Robert Lynn. Plaintiff makes clear as to all but Brock that, if the motion to amend were granted, these defendants would be sued in their official capacity only.  (Proposed Am. Compl. ¶¶ 18, 19, 20, 22, 24, 25.)  To the extent that the addition of these defendants could be view as the vehicle by

---

[10]    This discussion assumes that the NHADO Defendants (specifically Defendant DeHart and Defendant Nelson) are proper defendants in relation to facial challenges to the constitutionality of New Hampshire Supreme Court Rules, at least as far as those rules guide their exercise of official functions on behalf of the State of New Hampshire, which functions allow for an exercise of discretionary authority).  Ex Parte Young, 209 U.S. 123, 157 (1908) ("In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act . . .");  see, e.g., Peterson v. LaCabe, No. 10-cv-00059-WDM-MEH, 2010 U.S. Dist. Lexis 111665, *9-10, 2010 WL 4220024, *3-4 (D. Colo. Oct. 20, 2010) (expressing doubt that City and County of Denver safety manager would not be a proper defendant in claim challenging his enforcement of a state concealed handgun permit law).

which Plaintiff seeks to challenge the constitutionality of various provisions of the New

Hampshire attorney discipline system, he simply has not articulated a viable claim for reasons

already set forth above.  Allowing the amendment would therefore be futile.

With regard to the proposed claim against Defendant Brock, a retired Chief Justice of the

New Hampshire Supreme Court, Plaintiff is apparently suing him in part for his participation in

Plaintiff's Rule 11 petition.  (Id. ¶ 17.)  Brock's involvement in that proceeding is subject to

judicial immunity, making such a claim futile.

Although leave to amend a complaint should be freely given,[11] an exception applies if the

proposed amendment would be futile.  "'Futility' means that the complaint, as amended, would

fail to state a claim upon which relief could be granted."  Glassman v. Computervision Corp., 90

F.3d 617, 623 (1st Cir. 1996).  Because the proposed amendments are futile, the Court should

deny the motion to amend.

Finally, the Court should dismiss the original complaint as against the unnamed Doe and

Zoe defendants.  Plaintiff has already presented a motion to amend and there is no indication that

he has a tenable basis to expand his litigation beyond either the deprivations he has alleged to

date or the defendants he has named to date.  This case is unlike Penalbert-Rosa v. Fortuno-

Burset, 631 F.3d 592, 596 (1st Cir. 2011), where there was an arguable basis for finding that the

plaintiff was wronged by some as yet to be identified person.  The faint suggestion that discovery

might prove others complicit with the deprivation alleged in this case is insufficient to warrant

keeping this matter pending in the federal court, particularly in light of the fact that all of the

previously named defendants are entitled to dismissal of the federal claims.

---

[11]     If promptly presented, an amended complaint can be filed as a matter of course.  Fed. R. Civ. P. 15(a)(1)
(providing 21 days from the date a responsive pleading is served).  In this case, Defendants filed their motions to
dismiss in early November 2010, but Plaintiff did not seek to file his proposed amended complaint until January 11,
2011.  Consequently, leave to amend is required in this case.  Fed. R. Civ. P. 15(a)(2).

**CONCLUSION**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court enter the following dispositions on the pending motions:

GRANT the NHADO Defendants' Motion to Dismiss (Doc. No. 14);

GRANT Defendant Griffith's Motion to Dismiss (Doc. No. 15);

DENY Plaintiff's Motion to Amend (Doc. No. 29);

DISMISS all federal causes of action WITH PREJUDICE;  and

DISMISS the state law cause of action WITHOUT PREJUDICE.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 22, 2011

## Appendix

RULES OF SUPREME COURT OF NEW HAMPSHIRE
ADMINISTRATIVE RULES  35 TO 50A

## RULE 37. Attorney Discipline System

**(1)** *Attorney Discipline in General:*

 **(a)** *Components:* The attorney discipline system consists of the following component parts:

   **(1)** professional conduct committee;

   **(2)** hearings committee;

   **(3)** complaint screening committee;

   **(4)** attorney discipline office.

 **(b)** *Jurisdiction:* Any attorney admitted to practice law in this State, and any attorney specially admitted by a court of this State for a particular proceeding, and any attorney not admitted in this State who practices law or renders or offers to render any legal services in this State, and any non-lawyer representative permitted to represent other persons before the courts of this State pursuant to RSA 311:1, is subject to the disciplinary jurisdiction of this court and the attorney discipline system.

 Nothing herein contained shall be construed to deny to any other court such powers as are necessary for that court to maintain control over proceedings conducted before it, such as the power of contempt. Suspension or disbarment of an individual subject to the attorney discipline system shall not terminate jurisdiction of this court.

 **(c)** *Grounds for Discipline:* The right to practice law in this State is predicated upon the assumption that the holder is fit to be entrusted with professional matters and to aid in the administration of justice as an attorney and as an officer of the court. The conduct of every recipient of that right shall be at all times in conformity with the standards imposed upon members of the bar as conditions for the right to practice law.

 Acts or omissions by an attorney individually or in concert with any other person or persons which violate the standards of professional responsibility that have been and any that may be from time to time hereafter approved or adopted by this court, shall constitute misconduct and shall be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship.

 **(d)** *Priority of Discipline Matters:* Matters relating to discipline of an attorney shall take precedence over all other civil cases in this court.

 **(e)** *Professional Continuity Committee and New Hampshire Lawyers Assistance Program Exemption*: For the purposes of Rule 8.3 of the rules of professional conduct, information received by members of the New Hampshire Bar Association during the course of their work on behalf of the professional continuity committee or the New Hampshire Lawyers Assistance Program which is indicative of a violation of the rules of professional conduct shall be deemed privileged to the same extent allowed by the attorney-client privilege.

**(2)** *Definitions:*

 **(a)** *Appeal:* "Appeal" means an appeal to this court by a respondent or disciplinary counsel of a decision of the professional conduct committee. An appeal shall not be a mandatory appeal. *See* Rule 3. An appeal shall be based on the record before the professional conduct committee and shall be limited to issues of errors of law and

27

unsustainable exercises of discretion.

 **(b)** *Attorney:* Unless otherwise indicated, "Attorney," for purposes of this rule, means any attorney admitted to practice in this State, any attorney specially admitted to practice by a court of this State, any attorney not admitted or specially admitted in this State who provides or offers to provide legal services in this State or any non-lawyer representative permitted to represent other persons before the courts of this State pursuant to RSA 311:1.

 **(c)** *Complaint:* "Complaint" means a grievance that, after initial review, has been determined by the attorney discipline office to be within the jurisdiction of the attorney discipline system and to meet the requirements for docketing as a complaint as set forth in Supreme Court Rule 37A, and that is docketed by the attorney discipline office, or a complaint that is drafted and docketed by the attorney discipline office after an inquiry by that office. If after docketing, the attorney discipline office or the complaint screening committee determines that a complaint is not within the jurisdiction of the attorney discipline system and/or does not meet the requirements for docketing, it shall be removed from the docket and it shall thereafter be treated for all purposes as a grievance that has not been docketed as a complaint.

 **(d)** *Disbarment:* "Disbarment" means the termination of a New Hampshire licensed attorney's right to practice law in this State and automatic expulsion from membership in the bar of this State. A disbarred attorney may only apply for readmission to the bar of this State upon petition to this court, after having complied with the terms and conditions set forth in the disbarment order promulgated by the court which shall include all requirements applicable to applications for admission to the bar, including passing the bar examination and a favorable report by the professional conduct committee and the character and fitness committee.

 **(e)** *Disciplinary Counsel:* "Disciplinary Counsel" means the attorney or attorneys responsible for the prosecution of disciplinary proceedings before the court, the professional conduct committee and any hearings committee panel. Disciplinary counsel shall include a full-time attorney so designated, such deputy and assistants as may from time to time be deemed necessary, such part-time attorney or attorneys as may from time to time be deemed necessary, and such other attorneys of the attorney discipline office as may from time to time be designated to assist disciplinary counsel.

 **(f)** *Grievance:* "Grievance" means a written submission filed with the attorney discipline office to call to its attention conduct that the grievant believes may constitute misconduct by an attorney. A grievance that is determined, after initial screening, not to be within the jurisdiction of the attorney discipline system and/or not to meet the requirements for docketing as a complaint shall not be docketed and shall continue to be referred to as a grievance. A grievance that is determined, after initial screening, to be within the jurisdiction of the attorney discipline system and to meet the requirements for docketing as a complaint shall be docketed as a complaint and shall be referred to thereafter as a complaint; provided, however, that if the attorney discipline office or the complaint screening committee later determines that the docketed complaint is not within the jurisdiction of the attorney discipline system and/or does not meet the requirements for docketing, it shall be removed from the docket and it shall thereafter be treated for all purposes as a grievance that has not been docketed as a complaint.

 **(g)** *Public Censure:* "Public Censure" means the publication by the court or the professional conduct committee, in appropriate New Hampshire publications including a newspaper of general statewide circulation, and one with general circulation in the area of respondent's primary office, as well as the *New Hampshire Bar News,* of a summary of its findings and conclusions relating to the discipline of an attorney, as defined in section (2)(b) of this rule.

 **(h)** *Referral:* "Referral" means a grievance received by the attorney discipline office from any judge or from any member of the bar of New Hampshire, in which the judge or attorney indicates that he or she does not wish to be treated as a grievant.

 **(i)** *Reprimand:* "Reprimand" means discipline administered by the professional conduct committee after notice of charges and after a hearing before a hearings committee panel and the right to request oral argument to the professional conduct committee, in those cases in which misconduct in violation of the rules of professional conduct is found. A reprimand is administered by letter issued by the chair of the professional conduct committee, subject to

28

an attorney's right to appeal such discipline to the court.

 (j) *Suspension:* "Suspension" means the suspension of an attorney's right to practice law in this State, for a period of time specified by the court or by the professional conduct committee. Suspension by the professional conduct committee may not exceed six (6) months. The suspended attorney shall have the right to resume the practice of law, after the expiration of the suspension period, upon compliance with the terms and conditions set forth in the suspension order promulgated by the court or the professional conduct committee and pursuant to the procedure set forth in section 14 regarding reinstatement.

 (k) *Warning:* "Warning" means non-disciplinary action taken by the general counsel, the complaint screening committee or the professional conduct committee when it is determined that an attorney acted in a manner which involved behavior requiring attention although not constituting clear violations of the rules of professional conduct warranting disciplinary action.

### (3) *Professional Conduct Committee:*

 (a) The court shall appoint a committee to be known as the professional conduct committee which shall consist of twelve members, one of whom shall be designated by the court as the chair. Two members of the professional conduct committee shall be designated by the court as vice chairs, to act in the absence or disability of the chair. One of the vice chairs must be an attorney, and the other must be a non-attorney. At least four of the members of the professional conduct committee shall be non-attorneys. The court shall attempt to appoint members of the professional conduct committee from as many counties in the State as is practicable; and one of the members shall be designated pursuant to section (3)(d), and shall have both the special term of office and the additional special responsibilities set forth therein.

 In the event that any member of the professional conduct committee has a conflict of interest or is otherwise disqualified from acting with respect to any proceeding before the professional conduct committee, the court may, upon request or upon its own motion, appoint another person to sit on such proceeding and such temporary replacement, rather than the disqualified member, shall be considered a professional conduct committee member for quorum and voting purposes in connection with such investigation or proceeding.

 (b) Initial appointments shall be for staggered terms: four members for three years; four members for two years; and four members, including the member designated pursuant to section (3)(d), for one year. Thereafter the regular term of each member, except the member designated pursuant to section (3)(d), shall be three years. A member selected to fill a vacancy shall hold office for the unexpired term of his or her predecessor. A member shall not serve for more than three consecutive full terms but may be reappointed after a lapse of one year. The committee shall act only with the concurrence of a majority of its members present and voting, provided however, that six members shall constitute a quorum. The chair of the committee, or any member performing the duties of the chair, shall only vote on matters relating to specific complaints in the event of a tie among the members present and voting. No professional conduct committee member shall serve concurrently as a member of the hearings committee or the complaint screening committee.

 (c) The professional conduct committee shall have the power and duty:

  (1) To appoint a disciplinary counsel and a general counsel and such deputy and assistant disciplinary counsel and general counsel as may from time to time be required to properly perform the functions hereinafter prescribed. To appoint other professional staff, including auditors, and clerical staff whether full-time or part-time. To appoint independent bar counsel if needed.

  (2) To consider hearing panel reports and written memoranda of disciplinary counsel and respondents. To conduct oral arguments in which disciplinary counsel and each respondent are given ten (10) minutes to address the findings and rulings contained in the hearing panel reports. After consideration of oral arguments, hearing panel reports, transcripts of hearings before hearing panels and memoranda, to determine whether there is clear and convincing evidence of violations of the rules of professional conduct. To remand complaints to hearing panels for further evidentiary proceedings. To dismiss grievances or complaints, with or without a warning, administer a reprimand,

29

public censure or a suspension not to exceed six (6) months.

(3) To attach such conditions as may be appropriate to any discipline it imposes.

(4) To divert attorneys out of the attorney discipline system as appropriate and on such terms and conditions as is warranted.

(5) To institute proceedings in this court in all matters which the professional conduct committee has determined warrant the imposition of disbarment or of suspension for a period in excess of six (6) months.

(6) To consider and act upon requests by disciplinary counsel or respondents to review a decision by the complaint screening committee to refer a complaint to disciplinary counsel for the scheduling of a hearing.

(7) To consider and act upon requests from disciplinary counsel to dismiss a matter prior to a hearing if disciplinary counsel concludes that the development of evidence establishes that there is no valid basis for proceeding to a hearing.

(8) To consider and act upon requests for reconsideration of its own decisions.

(9) To consider and act upon requests for protective orders.

(10) To propose rules of procedure not inconsistent with the rules promulgated by this court.

(11) To be responsible for overseeing all administrative matters of the attorney discipline system.

(12) To require a person who has been subject to discipline imposed by the professional conduct committee to produce evidence of satisfactory completion of the multistate professional responsibility examination, in appropriate cases.

(13) To educate the public on the general functions and procedures of the attorney discipline system.

(14) Upon its approval of the annual report prepared by the attorney discipline office, to file a copy of the report with the chief justice of the supreme court and to make copies of the report available to the public.

(15) To issue discretionary monetary sanctions against a disciplined attorney in the form of the assessment of costs and expenses pursuant to Rule 37(19).

 Any attorney aggrieved by a finding of professional misconduct or by a sanction imposed by the professional conduct committee shall have the right to appeal such finding and sanction to this court; disciplinary counsel shall have the right to appeal a sanction. Such appeals shall not be mandatory appeals. Such rights must be exercised within thirty (30) days from the date on the notice of the finding and sanction. In the event that a timely request for reconsideration pursuant to Supreme Court Rule 37A(VI) is filed, the right to appeal the finding of professional misconduct and/or the sanction shall be exercised within thirty (30) days from the date of the letter notifying the attorney of the professional conduct committee's decision on the request for reconsideration. Successive requests for reconsideration shall not stay the running of the appeal period. The manner of the appeal shall be based on the record before the professional conduct committee. The findings of the professional conduct committee may be affirmed, modified or reversed.

 (d) *Board of Governor's Representative:* The vice president of the New Hampshire Bar Association, upon appointment by the court, shall represent the board of governors of the association as a member of the professional conduct committee for a one-year term commencing on August 1st following the election as such vice president and he or she shall have the following additional responsibilities:

(1) To render such assistance as the professional conduct committee directs in the preparation and review of the attorney discipline system budget.

**(2)** To assist in monitoring the financial affairs and budgetary process of the attorney discipline system during the fiscal year.

**(3)** To coordinate the assessment and collection of expenses to be reimbursed by disciplined attorneys.

**(4)** Consistent with the rule of confidentiality applicable to the work of the attorney discipline system, to serve as liaison between the professional conduct committee and the board of governors of the New Hampshire Bar Association.

**(5)** To assist in the communication to members of the New Hampshire Bar Association of a general understanding of the work of the professional conduct committee, consistent with the rule of confidentiality applicable to attorney discipline system proceedings.

If the vice president of the New Hampshire Bar Association has a conflict preventing his or her appointment to the professional conduct committee, the court shall appoint another member of the board of governors in his or her stead.

**(4) *Hearings Committee:***

**(a)** The court shall appoint an appropriate number of attorneys and non-attorneys to a committee known as the hearings committee of the attorney discipline system. One member of the committee shall be designated by the court as the chair and one member shall be designated as vice chair to act in the absence or disability of the chair.

**(b)** Initial appointments shall be for staggered terms: one third of the members for three years; one third of the members for two years and one third of the members for one year. Thereafter, the regular term of each member shall be three years. A member selected to fill a vacancy shall hold office for the unexpired term of his or her predecessor. A member shall not serve more than three consecutive full terms but may be reappointed after a lapse of one year. No hearings committee member shall serve concurrently as a member of the professional conduct committee or the complaint screening committee.

**(c)** The hearings committee shall have the power and duty:

**(1)** To be appointed as necessary by the hearings committee chair to individual hearing panels to rule on pre-hearing motions, conduct hearings on formal charges and make findings of fact, conclusions and recommendations in written reports to the professional conduct committee for findings of misconduct and sanctions or for dismissal of the complaint with findings of no misconduct with or without a warning. The individual hearing panels shall consist of a maximum of five (5) persons and a minimum of three (3) persons. There shall be no less than one public non-attorney member on each hearing panel.

**(2)** To conduct hearings in conformance with standards set forth in Rule 37A.

**(3)** To make all findings by clear and convincing evidence.

**(4)** To submit all written reports to the professional conduct committee no more than sixty (60) days after the close of each hearing.

**(d)** Appointment to each individual hearing panel shall be made by the chair of the hearings committee. Each panel shall consist of a maximum of five (5) hearings committee members and a minimum of three (3) members. Each hearing panel shall have at least one (1) non-attorney member. The chair of the hearings committee shall designate one member of each panel as the chair and a separate member of the panel as the reporter responsible for preparation of the report to the professional conduct committee.

**(5) *Complaint Screening Committee:***

**(a)** The court shall appoint a committee to be known as the complaint screening committee which shall consist of nine members, one of whom shall be designated by the court as chair and one of whom shall be designated by the court as vice chair to act in the absence or disability of the chair.  Five of the members shall be attorneys and four of them shall be non-attorneys.  The complaint screening committee shall act only with the consensus of a majority of its members present and voting provided, however, that three attorney members and two non-attorney members shall constitute a quorum.  The chair of the committee, or any member performing the duties of the chair, shall only vote on matters relating to specific complaints in the event of a tie among the members present and voting.   Initial appointments shall be for staggered terms:  three members for three years; three members for two years; and three members for one year.  Thereafter, the regular term of each member shall be three years.  A member selected to fill a vacancy shall hold office for the unexpired term of his or her predecessor.  A member shall not serve more than three consecutive full terms but may be reappointed after a lapse of one year.  No member of the complaint screening committee shall serve concurrently as a member of the professional conduct committee or the hearings committee.

**(b)** The complaint screening committee shall have the power and duty:

  **(1)** To consider and act on requests for reconsideration filed by grievants following a decision by general counsel not to docket a matter, to divert attorneys out of the system, or to dismiss a complaint after investigation.

  **(2)** To consider and act on reports by staff members of the attorney discipline office with respect to docketed complaints.

  **(3)** To remove complaints from the docket if it determines that a complaint is not within the jurisdiction of the attorney discipline system and or does not meet the requirements for docketing.

  **(4)** To dismiss complaints with a finding of no professional misconduct, with or without a warning.

  **(5)** To dismiss complaints for any other reason, with or without a warning.  If the committee determines that there is no reasonable likelihood that a complaint can be proven by clear and convincing evidence, the complaint should be dismissed.

  **(6)** To divert attorneys out of the attorney discipline system when appropriate and subject to the attorney complying with the terms of diversion.  All diversion would be public unless the complaint screening committee determined that a given matter should remain non-public based on one or more of the following issues:  health, finances, family considerations or highly personal matters.  If a respondent declines to accept diversion or violates the terms of a written diversion agreement, the complaint in such cases shall be acted upon as if diversion did not exist.

  **(7)** <u>To refer complaints to disciplinary counsel for the scheduling of a hearing only where there is a reasonable likelihood that professional misconduct could be proven by clear and convincing evidence</u>.

  **(8)** To consider and act upon requests for reconsideration of its own decisions, subject to the further right of disciplinary counsel or respondents to request that the professional conduct committee review a decision to refer a complaint to disciplinary counsel for the scheduling of a hearing.

  **(c)** <u>Meetings of the complaint screening committee shall be in the nature of deliberations and shall not be open to the public, respondents, respondents' counsel, disciplinary counsel or the complainant.  Records and reports of recommendations made shall in all respects be treated as work product and shall not be made public or be discoverable.  However, the decision of the committee shall be public.</u>

**(6)** *Attorney Discipline Office:*

**(a)** The professional conduct committee shall appoint:

**(1)** a disciplinary counsel and such deputy and assistants as may be deemed necessary whether full-time or part-time;

**(2)** a general counsel and such deputy and assistants as may be deemed necessary whether full-time or part-time; and

**(3)** other professional staff, including auditors, and clerical staff as may be necessary whether full-time or part-time.

**(b)** Disciplinary counsel shall perform prosecutorial functions and shall have the power and duty:

**(1)** To review complaints referred by the complaint screening committee for hearings.

**(2)** To contact witnesses, conduct discovery and prepare the complaints for hearings before a panel of the hearings committee.

**(3)** To try cases before panels of the hearings committee.

**(4)** To present memoranda to and appear before the professional conduct committee for oral argument.

**(5)** To represent the attorney discipline office and, in appropriate cases, the professional conduct committee in matters filed with the supreme court.

**(c)** General counsel shall perform a variety of legal services and functions and shall have the power and duty:

**(1)** To receive, evaluate, docket and investigate professional conduct complaints.

**(2)** To remove complaints from the docket if it determines that a complaint is not within the jurisdiction of the attorney discipline system and/or does not meet the requirements for docketing.

**(3)** To dismiss complaints with a finding of no professional misconduct, with or without a warning.

**(4)** To dismiss complaints for other good cause, with or without a warning. If the general counsel determines that there is no reasonable likelihood that a complaint can be proven by clear and convincing evidence, the complaint should be dismissed.

**(5)** To divert attorneys out of the attorney discipline system when appropriate and subject to the attorney complying with the terms of diversion. All diversion would be public unless the general counsel determined that a given matter should remain non-public based on one or more of the following issues: health, finances, family considerations or highly personal matters. If a respondent declines to accept diversion or violates the terms of a written diversion agreement, the complaint in such cases shall be acted upon as if diversion did not exist.

**(6)** To present complaints to the complaint screening committee with recommendations for diversion, dismissal for any reason (with or without a warning) or referral to disciplinary counsel for a hearing.

**(7)** To assist disciplinary counsel in performing the duties of disciplinary counsel as needed.

**(8)** To perform legal services as required for the committees of the attorney discipline system.

**(9)** To oversee and/or perform administrative functions for the attorney discipline system including but not limited to maintaining permanent records of the operation of the system, preparation of the annual budget, and preparation of an annual report summarizing the activities of the attorney discipline system during the preceding year.

**(7)** *Immunity:*

Each person shall be immune from civil liability for all statements made in good faith to any committee of the attorney discipline system, the attorney discipline office, the attorney general's office, or to this court given in connection with any investigation or proceedings under this rule pertaining to alleged misconduct of an attorney. The protection of this immunity does not exist as to: (a) any statements not made in good faith; or (b) any statements made to others. See sections (20)(j) and (21)(g). The committees' members, staff, counsel and all others carrying out the tasks and duties of the attorney discipline system shall be immune from civil liability for any conduct arising out of the performance of their duties.

**(8)** *Discovery and Subpoena Power:*

At any stage of proceedings before a panel of the hearings committee or in preparation for a hearing before a panel of the hearings committee, attorneys from the attorney discipline office, counsel for respondent attorneys and respondent attorneys representing themselves may conduct discovery, including interrogatories and depositions, and may issue subpoenas and subpoenas *duces tecum* to summon witnesses with or without documents.

**(9)** *Attorneys Convicted of Serious Crime:*

**(a)** Upon the filing with the court of a certified copy of any court record establishing that an attorney has been convicted of a serious crime as hereinafter defined, the court may enter an order suspending the attorney, whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial or otherwise, and regardless of the pendency of an appeal, pending final disposition of a disciplinary proceeding to be commenced upon such conviction.

**(b)** The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime."

**(c)** A certified copy of any court record establishing the conviction of an attorney for any "serious crime" shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against the attorney based upon the conviction.

**(d)** Upon the receipt of a certificate of conviction of an attorney for a "serious crime," the court may, and shall if suspension has been ordered pursuant to subsection (a) above, institute a formal disciplinary proceeding by issuing an order to the attorney to show cause why the attorney should not be disbarred as a result of the conviction. If the court determines that no such good cause has been shown, the court shall issue an order of disbarment, or such other discipline as the court shall deem appropriate. If the court determines that the attorney has shown cause why disbarment may not be appropriate, the court shall refer the matter to the professional conduct committee, in which the sole issue to be determined shall be the extent of the final discipline to be imposed. Provided, however, that final discipline will not be imposed until all appeals from the conviction are concluded.

**(e)** Upon receipt of a certificate of conviction of an attorney for a crime not constituting a "serious crime," the court shall refer the matter to the attorney discipline office for such action as it deems appropriate. Referral to the attorney discipline office hereunder does not preclude the court from taking whatever further action it deems appropriate.

**(f)** An attorney suspended under the provisions of subsection (a) above may be reinstated upon the filing of a certificate demonstrating that the underlying conviction for a serious crime has been reversed but the reinstatement will not terminate any proceeding then pending against the attorney.

**(g)** The clerk of any court within the State in which an attorney is convicted of any crime shall, within ten (10) days of said conviction, transmit a certificate thereof to this court.

34

**(h)** Upon being advised that an attorney has been convicted of a crime within this State, the attorney discipline office shall determine whether the clerk of the court where the conviction occurred has forwarded a certificate to this court in accordance with the provisions of subsection (g) above. If the certificate has not been forwarded by the clerk or if the conviction occurred in another jurisdiction, it shall be the responsibility of the attorney discipline office to obtain a certificate of conviction and to transmit it to this court.

**(i)** Whenever an attorney is indicted or bound over for any felony, the court shall take such actions as it deems necessary, including but not limited to the suspension of the attorney.

**(10)** *Proceedings Where An Attorney Is Declared To Be Incompetent Or Is Alleged To Be Incapacitated:*

**(a)** Whenever an attorney has been judicially declared incompetent or voluntarily or involuntarily committed to a mental health facility, the court, upon proper proof of the fact, may enter an order suspending such attorney from the practice of law until the further order of the court. A copy of such order shall be served upon such attorney, the attorney's guardian and such other persons and in such manner as the court may direct.

**(b)** Whenever any committee of the attorney discipline system or the attorney discipline office shall petition the court to determine whether an attorney is incapacitated from continuing the practice of law by reason of mental or physical infirmity or illness or because of addiction to drugs or intoxicants, the court may take or direct such action as it deems necessary or proper to determine whether the attorney is so incapacitated, including the examination of the attorney by such qualified medical experts as the court shall designate. If, upon due consideration of the matter, the court concludes that the attorney is incapacitated from continuing to practice law, it shall enter an order suspending the attorney on the ground of such disability for an indefinite period and until the further order of the court, and any pending disciplinary proceeding against the attorney may be held in abeyance.

The court shall provide for such notice to the respondent attorney of proceedings in the matter as it deems proper and advisable and shall appoint an attorney to represent the respondent if he or she is without adequate representation.

**(c)** If, during the course of a disciplinary proceeding, the respondent attorney contends that he or she is suffering from a disability by reason of mental or physical infirmity or illness, or because of addiction to drugs or intoxicants, which makes it impossible for the respondent attorney to adequately defend himself or herself, the court thereupon shall enter an order immediately suspending the respondent attorney from continuing to practice law until a determination is made of the respondent attorney's capacity to continue to practice law in a proceeding instituted in accordance with the provisions of subsection (b) of this section.

If, in the course of a proceeding under this section or in a disciplinary proceeding, the court shall determine that the respondent attorney is not so incapacitated, it shall take such action as it deems proper and advisable including a direction for the resumption of the disciplinary proceeding against the respondent attorney.

**(d)** Any attorney suspended under the provisions of this section may apply for reinstatement following the expiration of one year from the date of suspension or at such other time as the court may direct in the order of suspension or any modification thereof. Such application shall be granted by the court upon a showing by clear and convincing evidence that the attorney's disability has been removed and the attorney is fit to resume the practice of law. Upon such application, the court may take or direct such action as it deems necessary or proper to a determination of whether the attorney's disability has been removed including a direction for an examination of the attorney by such qualified medical experts as the court shall designate. At its discretion, the court may direct that the expense of such an examination shall be paid by the attorney.

Whenever an attorney has been suspended by an order in accordance with the provisions of subsection (a) of this section and, thereafter, in proceedings duly taken, the attorney has been judicially declared to be competent, the court may dispense with further evidence that the disability has been removed and may direct reinstatement upon such terms as it deems proper and advisable.

**(e)** In a proceeding seeking an order of suspension under this section, the burden of proof shall rest with the moving

35

party. In a proceeding seeking an order terminating a suspension under this section, the burden of proof shall rest with the suspended attorney.

 **(f)** The filing of an application for reinstatement by an attorney suspended for disability shall be deemed to constitute a waiver of any doctor-patient privilege with respect to any treatment of the attorney during the period of disability. The attorney shall be required to disclose the name of every psychiatrist, psychologist, physician and hospital by whom or in which the attorney has been examined or treated since the suspension and shall furnish to the court written consent to each to divulge such information and records as requested by the attorney discipline system or the court appointed medical experts.

**(11)** *Resignation By Attorney Under Disciplinary Investigation:*

 **(a)** An attorney who is the subject of an investigation into allegations of misconduct may file a request to resign by delivering to the professional conduct committee an affidavit stating that he or she desires to resign and that:

  **(1)** the resignation is freely and voluntarily rendered; he or she is not being subjected to coercion or duress; he or she is fully aware of the implications of submitting the resignation;

  **(2)** he or she is aware that there is presently pending an investigation into allegations that he or she has been guilty of misconduct the nature of which shall be specifically set forth;

  **(3)** he or she acknowledges that the material facts upon which the complaint is predicated are true; and

  **(4)** he or she submits the resignation because he or she knows that if charges were predicated upon the misconduct under investigation they could not be successfully defended.

 **(b)** Upon receipt of the required affidavit, the professional conduct committee shall file it with the court, along with its recommendation, and the court may take such action as it deems necessary.

 **(c)** The contents of affidavit of an attorney filed in support of his or her resignation from the bar shall not be disclosed publicly or made available for use in any other proceeding except on order of the court.

**(12)** *Reciprocal Discipline:*

 **(a)** Upon being disciplined in another jurisdiction, an attorney admitted to practice in this State shall immediately notify the attorney discipline office of the discipline. Upon notification from any source that an attorney admitted to practice in this State has been disciplined in another jurisdiction, the attorney discipline office shall obtain a certified copy of the disciplinary order and shall file it with the court.

 **(b)** Upon receipt of a certified copy of an order demonstrating that an attorney admitted to practice in this State has been disciplined in another jurisdiction, the court may enter a temporary order imposing the identical or substantially similar discipline or, in its discretion, suspending the attorney pending the imposition of final discipline. The court shall forthwith issue a notice directed to the attorney and to the professional conduct committee containing:

  **(1)** A copy of the order from the other jurisdiction; and

  **(2)** An order directing that the attorney or professional conduct committee inform the court within thirty (30) days from service of the notice, of any claim by the lawyer or professional conduct committee predicated upon the grounds set forth in subparagraph (d), that the imposition of the identical or substantially similar discipline in this State would be unwarranted and the reasons for that claim.

 **(c)** In the event the discipline imposed in the other jurisdiction has been stayed there, any reciprocal discipline imposed in this State shall be deferred until the stay expires.

 **(d)** Upon the expiration of thirty (30) days from service of the notice pursuant to subparagraph (b), the court shall

issue an order of final discipline imposing the identical or substantially similar discipline unless the attorney or professional conduct committee demonstrates, or the court finds that it clearly appears upon the face of the record from which the discipline is predicated, that:

  **(1)** The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

  **(2)** The imposition of the same or substantially similar discipline by the court would result in grave injustice; or

  **(3)** The misconduct established warrants substantially different discipline in this State.

**(13)** *Disbarred or Suspended Attorney:*

 **(a)** A disbarred or suspended attorney may be ordered by the court, or by the professional conduct committee when an attorney is suspended by it for a period not to exceed six (6) months, to notify by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigated or administrative matters or proceedings pending in any court or agency, of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension and shall advise said clients to seek other legal counsel.

 **(b)** A disbarred or suspended attorney may be ordered by the court, or by the professional conduct committee when an attorney is suspended by it for a period not to exceed six (6) months, to notify, by registered or certified mail, return receipt requested, each client who is involved in litigated matters or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceeding, of the disbarment or suspension and consequent inability to act as an attorney after the effective date of the disbarment or suspension. The notice to be given to the client shall advise the prompt substitution of another attorney or attorneys.

 In the event the client does not obtain substitute counsel before the effective date of the disbarment or suspension, it shall be the responsibility of the disbarred or suspended attorney to move pro se in the court or agency in which the proceeding is pending, for leave to withdraw.

 The notice to be given to the attorney or attorneys for an adverse party shall state the place of residence of the client of the disbarred or suspended attorney.

 **(c)** The disbarred or suspended attorney, after entry of the disbarment or suspension order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature. However, during the period between the entry date of the order and its effective date, the disbarred or suspended attorney may wind up and complete, on behalf of any client, all matters which were pending on the entry date.

 **(d)** In addition, the court, or the professional conduct committee in cases where it issued a suspension order, may order that within thirty (30) days after the effective date of the disbarment or suspension order, the disbarred or suspended attorney shall file with the court an affidavit showing: (1) that he or she has fully complied with the provision of the order and with this section; and (2) that he or she has served a copy of such affidavit upon the professional conduct committee. Such affidavit shall also set forth the residence or other address of the disbarred or suspended attorney where communications may thereafter be directed, as well as a list of all other jurisdictions in which the disbarred or suspended attorney is a member of the bar.

 **(e)** A disbarred or suspended attorney shall keep and maintain records of the various steps taken under this section so that, upon any subsequent proceeding instituted by or against him or her, proof of compliance with this rule and with the disbarment or suspension order will be available.

**(14)** *Reinstatement and Readmission:*

 **(a)** An attorney who has been suspended for a specific period may not move for reinstatement until the expiration of the period of suspension, and upon the completion of all terms and conditions set forth in the order of suspension.

**(b)** *General Rule:* A motion for reinstatement by an attorney suspended for misconduct by the court, rather than for disability, or an application for readmission by a New Hampshire licensed attorney who has been disbarred by the court or has resigned while under disciplinary investigation shall be referred to the professional conduct committee by the supreme court. An application for readmission shall also be referred to the character and fitness committee pursuant to Supreme Court Rule 42. A motion for reinstatement by an attorney suspended by the professional conduct committee shall be filed directly with that committee. Upon receipt of a motion for reinstatement or an application for readmission, the professional conduct committee shall refer the motion or application to a panel of the hearings committee. The attorney discipline office shall then cause a notice to be published in a newspaper with statewide circulation, and one with circulation in the area of the respondent's former primary office, as well as the *New Hampshire Bar News* that the respondent attorney has moved for reinstatement or applied for readmission. The notice shall invite anyone to comment on the motion or application by submitting said comments in writing to the attorney discipline office within twenty (20) days. All comments shall be made available to the respondent attorney. Where feasible, the attorney discipline office shall give notice to the original complainant. The hearing panel shall promptly schedule a hearing at which the respondent shall have the burden of demonstrating by clear and convincing evidence that he or she has the moral qualifications, competency and learning in law required for admission to practice law in this State and that the resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive to the public interest. At the conclusion of the hearing, the hearing panel shall promptly file a report containing its findings and recommendations and transmit same, together with the record, to the professional conduct committee. The professional conduct committee shall review the report of the hearing panel and the record, allow the filing of written memoranda by disciplinary counsel and the respondent, review the hearing transcript and hold oral argument. Thereafter, the professional conduct committee shall file its own recommendations and findings with the court, together with the record. Following the submission of briefs and oral argument to the court, if any, the court shall enter a final order.

**(c)** In all proceedings upon a motion for reinstatement or application for readmission, cross-examination of the respondent attorney's witnesses and the submission of evidence, if any, in opposition to the motion for reinstatement or application for readmission shall be conducted by disciplinary counsel.

**(d)** The court in its discretion may direct that expenses incurred by the attorney discipline system in the investigation and processing of a motion for reinstatement or application for readmission be paid by the respondent attorney.

**(e)** Motions for reinstatement by New Hampshire licensed attorneys suspended for misconduct shall be accompanied by evidence of the movant's satisfactory completion of the multistate professional responsibility examination. Applicants for readmission shall produce evidence of satisfactory completion of the multistate professional responsibility examination pursuant to the provisions of Supreme Court Rule 42.

**(f)** *Special Rule for Suspensions of Six Months or Less:* Notwithstanding the provisions of Rule 37(14)(b), a lawyer who has been suspended for six months or less pursuant to disciplinary proceedings shall be reinstated by the court following the end of the period of suspension by filing with the court and serving upon disciplinary counsel a motion for reinstatement accompanied by: (1) an affidavit stating that he or she has fully complied with the requirements of the suspension order and has paid any required fees and costs; and (2) evidence that he or she has satisfactorily completed the Multistate Professional Responsibility Examination since his or her suspension.

**(15)** *Readmission after Resignation:*

**(a)** A New Hampshire licensed attorney who has resigned, and who was not the subject of an investigation into allegations of misconduct at or subsequent to the time of resignation, may file a motion for readmission with the supreme court accompanied by evidence of continuing competence and learning in the law, and evidence of continuing moral character and fitness. If the evidence of continuing competence and learning in the law, and evidence of continuing moral character and fitness, are satisfactory to the court, the court may order readmission effective upon payment by the applicant of all bar dues and other fees, including public protection fund fees, that the applicant would have been responsible for paying had the applicant remained an active member of the bar from the date of resignation until the date of readmission. In addition, the court may condition readmission upon completion

38

of such continuing legal education as the court may order.

 **(b)** If the evidence of continuing competence and learning in the law is not satisfactory to the court, the court shall refer the motion for readmission to the professional conduct committee for referral to a panel of the hearings committee. The hearing panel shall promptly schedule a hearing at which the attorney shall have the burden of demonstrating by a preponderance of the evidence that he or she has the competency and learning in law required for readmission. At the conclusion of the hearing, the hearing panel shall promptly file a report containing its findings and recommendations and transmit same, together with the record, to the professional conduct committee. The professional conduct committee shall review the report of the hearings committee panel, the record and the hearing transcript and shall file its own recommendations and findings, together with the record, with the court. Following the submission of briefs, if necessary, and oral argument, if any, the court shall enter a final order. No order of the court granting readmission shall be effective prior to payment by the applicant of all bar dues and other fees, including public protection fund fees, that the applicant would have been responsible for paying had the applicant remained an active member of the bar from the date of resignation until the date of readmission. In addition, the court may condition readmission upon completion of such continuing legal education as the court may order.

 **(c)** If the evidence of continuing moral character and fitness is not satisfactory to the court, the court shall order the applicant to file with the committee on character and fitness and with the clerk of the supreme court the petition and questionnaire referred to in Supreme Court Rule 42(5)(e). Further proceedings shall be governed by Rule 42. No order of the court granting readmission shall be effective prior to payment by the applicant of all bar dues and other fees, including public protection fund fees, that the applicant would have been responsible for paying had the applicant remained an active member of the bar from the date of resignation until the date of readmission. In addition, the court may condition readmission upon completion of such continuing legal education as the court may order.

**(16)** *Procedure:*

 **(a)** Disciplinary proceedings requesting a discipline of greater than six (6) months shall be initiated in this court by the professional conduct committee by petition setting forth allegations of facts giving rise to the complaint and alleging the specific provisions of the rules of professional conduct which have been violated. The record of proceedings before the professional conduct committee shall be filed with the petition. There shall not be a *de novo* evidentiary hearing.

 **(b)** Service shall be made to the respondent attorney in such manner as the court may direct. In all cases, however, service upon the respondent attorney at the latest address provided to the New Hampshire Bar Association shall be deemed to be sufficient.

 **(c)** Respondent attorney shall answer each allegation specifically and shall file an answer within thirty (30) days after service of the petition. Should the respondent attorney fail to answer the petition, the allegations set forth therein shall be deemed to be admitted and no further hearing shall be required.

 **(d)** The court may make such temporary orders as justice may require either with or without a hearing. Respondent attorney shall be entitled to be heard after any ex parte order.

 **(e)** The court shall, after filing of briefs and oral arguments, make such order as justice may require.

 **(f)** The court may suspend attorneys or disbar New Hampshire licensed attorneys or publicly censure attorneys upon such terms and conditions as the court deems necessary for the protection of the public and the preservation of the integrity of the legal profession. The court may remand the matter to the professional conduct committee for such other discipline as the court may deem appropriate.

 **(g)** Either a respondent attorney or disciplinary counsel may appeal findings of the professional conduct committee and the imposition of a reprimand, public censure or a suspension of six (6) months or less by filing a notice of appeal with the supreme court. The appeal shall not be a mandatory appeal. If the appeal is accepted by the court,

the court may affirm, reverse or modify the findings of the professional conduct committee.

 The filing of an appeal by the respondent shall stay the disciplinary order being appealed unless the professional conduct committee orders otherwise. If the professional conduct committee orders otherwise, it shall set forth in its order its reasons for doing so. In all cases, however, the supreme court may on motion for good cause shown stay the disciplinary order.

 **(h)** In the event of suspension or disbarment, a copy of the court's order or the professional conduct committee's order, shall be sent to the clerk of every court in the State and to each State in which the respondent attorney is admitted to practice. The professional conduct committee shall continue to be responsible to insure respondent attorney's compliance with the order of suspension or disbarment, in the case of a New Hampshire licensed attorney, and to notify the court as to any violations for such action as the court deems necessary.

 **(i)** In addition to the procedure described herein, the court may take such action on its own motion as it deems necessary.

 **(j)** Appeals to the court shall be in the form prescribed by Rule 10, unless otherwise ordered by the court. Such appeals shall be based on the record and there shall not be a *de novo* evidentiary hearing.

**(17)** *Appointment of Counsel to Protect Clients' Interests:*

 **(a)** Whenever an attorney is suspended, disbarred, dies or whose whereabouts are unknown, and no partner, executor or other responsible party capable of conducting the attorney's affairs is known to exist, the court, upon proper proof of the fact, may appoint an attorney or attorneys to make an inventory of the files of said attorney and to take such action as seems indicated to protect the interests of clients of said attorney as well as the interest of said attorney.

 **(b)** Any attorney so appointed shall not be permitted to disclose any information contained in any files so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order appointing the attorney to make such inventory.

 **(c)** Any attorney so appointed shall be entitled to reasonable compensation and reimbursement for expenses incurred.

**(18)** *Refusal of Grievant or Complainant to Proceed, Compromise, Etc.:*

Neither unwillingness nor neglect of the grievant or complainant to sign a grievance or complaint or to prosecute a charge, nor settlement, compromise or restitution shall by itself justify abatement of an investigation into the conduct of an attorney.

**(19)** *Monetary Sanctions: Expenses Relating to Discipline Enforcement:*

 **(a)** All expenses incurred by the attorney discipline system in the investigation and enforcement of discipline may, in whole or in part, be assessed to a disciplined attorney to the extent appropriate.

 **(b)** Following any assessment, the professional conduct committee shall send a written statement of the nature and amount of each such expense to the disciplined attorney, together with a formal demand for payment. The assessment shall become final after 30 days unless the disciplined attorney responds in writing, listing each disputed expense and explaining the reasons for disagreement. If the parties are unable to agree on an amount, the professional conduct committee may resolve and enforce the assessment by petition to the superior court in any county in the state.

 **(c)** A final assessment shall have the force and effect of a civil judgment against the disciplined attorney. The professional conduct committee may file a copy of the final assessment with the superior court in any county in the state, where it shall be docketed as a final judgment and shall be subject to all legally-available post-judgment

enforcement remedies and procedures.

 (d) The superior court may increase the assessment to include any taxable costs or other expenses incurred in the resolution or enforcement of any assessment. Such expenses may include reasonable attorney's fees payable to counsel retained by the committee to resolve or recover the assessment.

 (e) Any monetary assessment made against a disciplined attorney shall be deemed to be monetary sanctions asserted by the professional conduct committee or the applicable court against such attorney.

**(20)** *Confidentiality:*

*Applicability Note:* Section 20 shall apply to records and proceedings in all matters initiated on or after April 1, 2000.

 **(a)** *Grievance outside the Jurisdiction of the Attorney Discipline System or Not Meeting the Requirements for Docketing as a Complaint:*

  **(1)** A grievance against a person who is not subject to the rules of professional conduct shall be returned to the grievant. No file on the grievance will be maintained; however, the attorney discipline office shall retain a copy of the letter to the grievant returning the grievance, which shall be available for public inspection in accordance with Supreme Court Rule 37A.

  **(2)** All records and materials relating to a grievance determined by the attorney discipline office or the complaint screening committee not to meet the requirements for docketing as a complaint shall be available for public inspection (other than work product, internal memoranda, and deliberations) in accordance with Supreme Court Rule 37A after correspondence is sent to the respondent attorney who is the subject of the grievance and the respondent attorney has the opportunity to provide a reply to be filed in the public record.

 **(b)** *Grievance Docketed as Complaint:* All records and proceedings relating to a complaint docketed by the attorney discipline system shall be available for public inspection (other than work product, internal memoranda, and deliberations) in accordance with Supreme Court Rule 37A upon the earliest of the following:

  **(1)** When the Attorney Discipline Office general counsel, the complaint screening committee or the professional conduct committee finally disposes of a complaint;

  **(2)** When disciplinary counsel issues a notice of charges;

  **(3)** When the professional conduct committee files a petition with the supreme court, except as provided by section (11) regarding resignations; or

  **(4)** When the respondent attorney, prior to dismissal of a complaint or the issuance of a notice of charges, requests that the matter be public.

 **(c)** *Proceedings for Reinstatement or Readmission:* When an attorney seeks reinstatement or readmission pursuant to section (14), the records, with the exception of the bar application, and the proceedings before the hearing panel and the professional conduct committee shall be public (other than work product, internal memoranda, and deliberations).

 **(d)** *Proceedings Based upon Conviction or Public Discipline:* If the investigation is predicated upon a conviction of the respondent for a crime or upon public discipline imposed upon the respondent in another jurisdiction, the entire file pertaining to the crime or the public discipline, other than the work product, internal memoranda, and deliberations of the attorney discipline system, shall be available for public inspection.

 **(e)** *Proceedings Alleging Disability:* All proceedings involving allegations of disability on the part of a New Hampshire licensed attorney shall be kept confidential until and unless the supreme court enters an order suspending

41

said attorney from the practice of law pursuant to section (10), in which case said order shall be public.

(f) *Protective Orders:* Proceedings involving allegations of misconduct by or the disability of an attorney frequently require the disclosure of otherwise confidential or privileged information concerning the complainant, a witness, or the attorney. In order to protect the interests of the complainant, witness, or attorney, the professional conduct committee, may, upon request, or on its own initiative, issue a protective order prohibiting the disclosure of confidential, malicious, personal, privileged information or material submitted in bad faith. Any person aggrieved by a decision on a protective order may, within thirty (30) days of the decision, request that the supreme court review the matter. The material in question shall remain confidential after the committee has acted upon the request for protective order until such time as the court has acted or the period for requesting court review has expired.

(g) *Disclosure to Authorized Agency:* The attorney discipline office may disclose relevant information that is otherwise confidential to agencies authorized to investigate the qualifications of judicial candidates, to authorized agencies investigating qualifications for admission to practice or fitness to continue practice, to law enforcement agencies investigating qualifications for government employment, and to law enforcement agencies authorized to investigate and prosecute violations of the criminal law. If the attorney discipline office decides to answer a request for relevant information, and if the attorney who is the subject of the request has not signed a waiver permitting the requesting agency to obtain confidential information, the attorney discipline office shall send to the attorney at his or her last known address, by certified mail, a notice that information had been requested and by whom, together with a copy of the information that the attorney discipline office proposes to release to the requesting agency. The attorney discipline office shall inform the subject attorney that the information shall be released at the end of ten (10) days from the date of mailing the notice unless the attorney obtains a supreme court order restraining such disclosure. Notice to the attorney, as provided in this section, shall not be required prior to disclosure of relevant information that is otherwise confidential to law enforcement agencies authorized to investigate and prosecute violations of the criminal law.

(h) *Disclosure to Supreme Court for Rule 36 Review:* The attorney discipline office shall disclose relevant information that is otherwise confidential to the supreme court, upon its request, in connection with the court's review of applications under Supreme Court Rule 36.

(i) *Disclosure to National Discipline Data Bank:* The clerk of the supreme court shall transmit notice of all public discipline imposed on an attorney by the supreme court or the professional conduct committee (upon notice from said committee), or the suspension from law practice due to disability of an attorney, to the National Discipline Data Bank maintained by the American Bar Association.

(j) *Disclosure to Lawyers Assistance Program:* The Attorney Discipline Office shall have the power to disclose otherwise confidential information to the New Hampshire Lawyers Assistance Program whenever the Attorney Discipline Office determines that such disclosure would be in the public interest.

(k) *Duty of Participants:* All participants in the proceedings shall conduct themselves so as to maintain the confidentiality mandated by this rule.

Nothing in this section prevents a grievant from disclosing publicly the conduct of an attorney which he or she believes violates the rules of professional conduct or is otherwise inappropriate. The immunity from civil liability provided by section (7) does not apply to such disclosures. This section does prohibit a grievant, however, from disclosing publicly the fact that a grievance or complaint against the attorney about the conduct had been filed with the attorney discipline system pending the grievance or complaint becoming public in accordance with the provisions of this section.

(l) *Violation of Duty of Confidentiality:* Any violation of the duty of confidentiality imposed by section (20) may result in action of the professional conduct committee at the request of the non-violating party or on its own motion. That action may consist of opening the file and the proceedings earlier than would have been the case under section (20), terminating the proceedings with or without public comment, or such other action as the professional conduct committee deems appropriate in the circumstances.

**(21)** *Confidentiality:*

*Applicability Note:* Section 21 shall not apply to records and proceedings in matter initiated on or after April 1, 2000.

 **(a)** *Proceedings Alleging Misconduct:* All records and proceedings involving allegations of misconduct by an attorney shall be confidential and shall not be disclosed except:

  **(1)** When disciplinary counsel issues a notice of charges, in which case the notice, the file (other than work product and internal memoranda), the proceedings before the committees (other than deliberations), and the decision shall be public; or

  **(2)** When the professional conduct committee files a petition with the supreme court in which case, except as provided in section (11) regarding resignations, the pleadings, all information admitted at the proceedings, the proceedings themselves (other than deliberations of the supreme court), and the decision, shall be public; or

  **(3)** When an attorney seeks reinstatement or readmission pursuant to section (14), in which case the proceedings before the hearings committee panel and the professional conduct committee and the court shall be conducted the same as prescribed in subsections (1) and (2); or

  **(4)** When the respondent attorney, prior to the issuance of a notice of charges as prescribed in subsection (1), requests that the matter be public, in which case the entire file, other than the work product and internal memoranda, of the attorney discipline system, shall be public; or

  **(5)** If the investigation is predicated upon a conviction of the respondent for a crime or upon public discipline imposed upon the respondent in another jurisdiction, in which case the entire file pertaining to the crime or the public discipline, other than the work product and internal memoranda, of the attorney discipline system shall be public.

 **(b)** *Proceedings Alleging Disability:* All proceedings involving allegations of disability on the part of an attorney shall be kept confidential until and unless the supreme court enters an order suspending said attorney from the practice of law pursuant to section (10), in which case said order shall be public.

 **(c)** *Protective Orders:* Proceedings involving allegations of misconduct by or the disability of an attorney frequently require the disclosure of otherwise confidential or privileged information concerning the complainant, a witness, or the attorney. In order to protect the interests of the complainant, witness, or attorney, the professional conduct committee, may, upon request, or on its own initiative, issue a protective order prohibiting the disclosure of confidential, malicious, personal, privileged information or material submitted in bad faith. Any person aggrieved by a decision on a protective order may, within thirty (30) days of the decision, request that the supreme court review the matter. The material in question shall remain confidential after the committee has acted upon the request for protective order until such time as the court has acted or the period for requesting court review has expired.

 **(d)** *Disclosure to Authorized Agency:* The attorney discipline office may disclose relevant information that is otherwise confidential to agencies authorized to investigate the qualifications of judicial candidates, to authorized agencies investigating qualifications for admission to practice or fitness to continue practice, to law enforcement agencies investigating qualifications of government employment, and to law enforcement agencies authorized to investigate and prosecute violations of the criminal law. If the attorney discipline office decides to answer a request for relevant information, and if the attorney who is the subject of the request has not signed a waiver permitting the requesting agency to obtain confidential information, the attorney discipline office shall send to the attorney at his or her last known address, by certified mail, a notice that information has been requested and by whom, together with a copy of the information that the attorney discipline office proposes to release to the requesting agency. The attorney discipline office shall inform the subject attorney that the information shall be released at the end of ten (10) days from the date of mailing the notice unless the attorney obtains a supreme court order restraining such disclosure. Notice to the attorney, as provided in this section, shall not be required prior to disclosure of relevant information that is otherwise confidential to law enforcement agencies authorized to investigate and prosecute violations of the

criminal law.

 (e) *Disclosure to Supreme Court for Rule 36 Review:* The attorney discipline office shall disclose relevant information that is otherwise confidential to the supreme court, upon its request, in connection with the court's review of applications under Supreme Court Rule 36.

 (f) *Disclosure to National Discipline Data Bank:* The clerk of the supreme court shall transmit notice of all public discipline imposed on an attorney by the supreme court or the professional conduct committee (upon notice from said committee), or the suspension from law practice due to disability of an attorney, to the National Discipline Data Bank maintained by the American Bar Association.

 (g) *Duty of Participants:* All participants in the proceedings shall conduct themselves so as to maintain the confidentiality mandated by this rule.

 Nothing in the rule of confidentiality prevents a complainant from disclosing publicly the conduct of an attorney which he or she believes violates the rules of professional conduct or is otherwise inappropriate. The immunity from civil liability provided by section (7) does not apply to such disclosures. This rule does prohibit a complainant, however, from disclosing publicly the fact that a complaint against the attorney about the conduct has been filed with the attorney discipline system pending action on the complaint or pending the complaint becoming public in accordance with the provisions of this section.

 If a complaint has been dismissed or otherwise disposed of by the attorney discipline system without discipline having been imposed, a complainant may make a public disclosure concerning the filing of the complaint, including the conduct complained of and the action of the attorney discipline system. The immunity from civil liability provided in section (7) does not apply to such disclosures.

 (h) *Violation of Duty of Confidentiality:* Any violation of the duty of confidentiality imposed by section (21) may result in action of the professional conduct committee at the request of the non-violating party or on its own motion. That action may consist of opening the file and the proceedings earlier than would have been the case under section (21)(a), terminating the proceedings with or without public comment, or such other action as the professional conduct committee deems appropriate in the circumstances.

**(22)** *Copy of Rule:*

 A copy of Supreme Court Rules 37 and 37A shall be provided to all grievants, complainants, and respondent attorneys.

## **(23)** *Applicability to Pending Disciplinary Matters:*

 The provisions of this rule, as amended effective January 1, 2004, shall not apply to any disciplinary matter pending before the supreme court on January 1, 2004. The provisions of this rule, as amended effective January 1, 2004, shall not apply to any disciplinary matter pending before the committee on January 1, 2004, in which prior to that date the committee has determined that formal proceedings shall be held and the hearing panel has concluded its evidentiary hearing. All such proceedings shall be governed by the provisions of Supreme Court Rule 37 that were in effect prior to January 1, 2004.

# RULE 37A. Rules and Procedures of Attorney Discipline System

**(I)** *General Provisions*

**(a)** *Jurisdiction:* The jurisdiction of the attorney discipline system shall be as set forth in Supreme Court Rule 37(1)(b).

**(b)** *Construction:* This rule is promulgated for the purpose of assisting the grievant, complainant, respondent, counsel and the committees of the attorney discipline system to develop the facts relating to, and to reach a just and proper determination of matters brought to the attention of the attorney discipline system.

**(c)** *Definitions:* Subject to additional definitions contained in subsequent provisions of this rule which are applicable to specific questions, or other provisions of this rule, the following words and phrases, when used in this rule, shall have, unless the context clearly indicates otherwise, the meaning given to them in this section:

*Answer:* The response filed by, or on behalf of, the respondent to a complaint or a notice of charges.

*Attorney:* Unless otherwise indicated, "Attorney," for purposes of this rule, means any attorney admitted to practice in this State, any attorney specially admitted to practice by a court of this State, any attorney not admitted or specially admitted in this State who provides or offers to provide legal services in this State or any non-lawyer representative permitted to represent other persons before the courts of this State pursuant to RSA 311:1.

*Complaint:* A grievance that, after initial review, has been determined by the attorney discipline office to be within the jurisdiction of the attorney discipline system and to meet the requirements for docketing as a complaint as set forth in section (II)(a)(3)(B) of this rule, and that is docketed by the attorney discipline office, or a complaint that is drafted and docketed by the attorney discipline office after an inquiry by that office. If after docketing, the attorney discipline office general counsel or the complaint screening committee determines that a complaint is not within the jurisdiction of the attorney discipline system and/or does not meet the requirements for docketing, it shall be removed from the docket and it shall thereafter be treated for all purposes as a grievance that has not been docketed as a complaint.

*Court:* The New Hampshire Supreme Court.

*Disbarment:* The termination of a New Hampshire licensed attorney's right to practice law in this State and automatic expulsion from membership in the bar of this State. A disbarred attorney may only apply for readmission to the bar of this State upon petition to the court, after having complied with the terms and conditions set forth in the disbarment order promulgated by the court which shall include all requirements applicable to applications for admission to the bar, including passing the bar examination and a favorable report by the professional conduct committee and the character and fitness committee.

*Disciplinary Counsel:* The attorney responsible for the prosecution of disciplinary proceedings before any hearings committee panel, the professional conduct committee and the supreme court. Disciplinary counsel shall include a full-time attorney so designated, such deputy and assistants as may from time to time be deemed necessary, such part-time attorney or attorneys as may from time to time be deemed necessary, and such other attorneys of the attorney discipline office as may from time to time be designated to assist disciplinary counsel.

*Disciplinary Rule:* Any provision of the rules of the court governing the conduct of attorneys or any rule of professional conduct.

*Discipline:* Any disciplinary action authorized by Rule 37(3)(c), in those cases in which misconduct in violation of a disciplinary rule is found warranting disciplinary action.

*Diversion:* Either a condition attached to discipline imposed by the professional conduct committee; or a referral, voluntary in nature, when conduct does not violate the rules of professional conduct; or non-disciplinary treatment

by the attorney discipline office general counsel, the complaint screening committee or the professional conduct committee as an alternative to discipline for minor misconduct.

*Formal Proceedings:* Proceedings subject to section (III) of this rule.

*General Counsel:* The attorney responsible for (a) receiving, evaluating, docketing and investigating grievances filed with the attorney discipline office; (b) dismissing or diverting complaints on the grounds set forth in Rule 37(6)(c) or presenting complaints to the complaint screening committee with recommendations for diversion, dismissal for any reason with or without a warning or referral to disciplinary counsel for a hearing; (c) assisting disciplinary counsel in the performance of the duties of disciplinary counsel as needed; (d) performing general legal services as required for the committees of the attorney discipline system; and (e) overseeing and performing administrative functions for the attorney discipline system. General counsel shall include a full-time attorney so designated, such deputy and assistants as may from time to time be deemed necessary, and such part-time attorney or attorneys as may from time to time be deemed necessary.

*Grievance:* "Grievance" means a written submission filed with the attorney discipline office to call to its attention conduct that the grievant believes may constitute misconduct by an attorney. A grievance that is determined, after initial screening, not to be within the jurisdiction of the attorney discipline system and/or not to meet the requirements for docketing as a complaint shall not be docketed and shall continue to be referred to as a grievance. A grievance that is determined, after initial screening, to be within the jurisdiction of the attorney discipline system and to meet the requirements for docketing as a complaint shall be docketed as a complaint and shall be referred to thereafter as a complaint; provided, however, that if the attorney discipline office general counsel or complaint screening committee later determines that the docketed complaint is not within the jurisdiction of the attorney discipline system and/or does not meet the requirements for docketing, it shall be removed from the docket and it shall thereafter be treated for all purposes as a grievance that has not been docketed as a complaint.

*Hearing Panel:* A hearing panel comprised of members of the hearings committee.

*Inquiry:* A preliminary investigation of a matter begun by the attorney discipline office on its own initiative to determine whether a complaint should be docketed.

*Investigation:* Fact gathering by the attorney discipline office with respect to alleged misconduct.

*Minor Misconduct:* Conduct, which if proved, violates the rules of professional conduct but would not warrant discipline greater than a reprimand. Minor misconduct (1) does not involve the misappropriation of client funds or property; (2) does not, nor is likely to, result in actual loss to a client or other person of money, legal rights or valuable property rights; (3) is not committed within five (5) years of a diversion, reprimand, censure, suspension or disbarment of the attorney for prior misconduct of the same nature; (4) does not involve fraud, dishonesty, deceit or misrepresentation; (5) does not constitute the commission of a serious crime as defined in Rule 37(9)(b); and (6) is not part of a pattern of similar misconduct.

*Notice of Charges:* A formal pleading served under section (III)(b)(2) of this rule by disciplinary counsel.

*Public Censure:* The publication by the court or the professional conduct committee, in appropriate New Hampshire publications, including a newspaper of general statewide circulation, and one with general circulation in the area of respondent's primary office, as well as the *New Hampshire Bar News*, of a summary of its findings and conclusions relating to the discipline of an attorney, as defined in this section.

*Referral:* A grievance received by the attorney discipline office from any New Hampshire state court judge or from any member of the bar of New Hampshire, in which the judge or attorney indicates that he or she does not wish to be treated as a grievant.

*Reprimand:* Discipline administered by the professional conduct committee after notice of charges and after a hearing before a hearings committee panel and the right to request oral argument to the professional conduct committee in those cases in which misconduct in violation of the rules of professional conduct is found. A

reprimand is administered by letter issued by the chair of the professional conduct committee, subject to an attorney's right to appeal such discipline to the court.

*Suspension:* The suspension of an attorney's right to practice law in this State, for a period of time specified by the court or by the professional conduct committee. Suspension by the professional conduct committee may not exceed six (6) months. The suspended attorney shall have the right to resume the practice of law, after the expiration of the suspension period, upon compliance with the terms and conditions set forth in the suspension order promulgated by the court or the professional conduct committee and pursuant to the procedure set forth in section (II)(d)(2) regarding reinstatement.

*Warning:* Non-disciplinary action taken by the attorney discipline office general counsel, the complaint screening committee or the professional conduct committee when it is believed that an attorney acted in a manner which involved behavior requiring attention although not constituting clear violations of the rules of professional conduct warranting disciplinary action.

**(d)** *Grounds for Discipline:* The various matters specified in Supreme Court Rule 37(1)(c), the disciplinary rules or decisional law shall be grounds for discipline.

**(e)** *Types of Discipline and Other Possible Action.*

**(1)** Misconduct under Supreme Court Rule 37(1)(c), the disciplinary rules or decisional law shall be grounds for any of the following:

**(A)** Disbarment -- by the court.

**(B)** Suspension for more than six months -- by the court.

**(C)** Suspension for six months or less -- by the professional conduct committee or the court.

**(D)** Public Censure -- by the professional conduct committee or the court.

**(E)** Reprimand -- by the professional conduct committee.

**(F)** Monetary Sanctions Pursuant to Rule 37(19) -- by the professional conduct committee or the court.

**(2)** The attorney discipline office general counsel, the complaint screening committee or the professional conduct committee may issue a warning to an attorney when it is deemed to be appropriate. The issuance of a warning does not constitute discipline.

**(3)** The attorney discipline office general counsel, the complaint screening committee or the professional conduct committee may divert a matter involving minor discipline, in lieu of discipline, subject to compliance with the terms of a written agreement. The professional conduct committee may require an attorney to participate in a diversion program as a condition of discipline. Any component of the attorney discipline system may refer to a diversion program, on a voluntary basis, an attorney who engages in conduct that does not violate the rules of professional conduct but which should be addressed as a corrective matter.

**(f)** *Subsequent Consideration of Disciplinary Action or of a Warning.*

The fact that an attorney has been issued a warning or has been the subject of disciplinary action by the professional conduct committee, may (together with the basis thereof) be considered in determining the extent of discipline to be imposed, in the event additional charges of misconduct are subsequently brought and proven by clear and convincing evidence against the attorney.

**(g)** *Diversion*

47

Diversion may be either mandatory, a voluntary referral or a discretionary referral for minor misconduct.

(1) Mandatory diversion involving required participation in a diversion program may occur in some cases as part of discipline imposed by the professional conduct committee.

(2) Voluntary referral to a diversion program may occur when the conduct of an attorney may come to the attention of any of the committees or personnel involved in the attorney discipline system but the conduct does not violate the rules of professional conduct. The referral would be voluntary and may occur in situations where there is reason to believe that the attorney's conduct may lead to violations of the rules of professional conduct if corrective action is not taken by the attorney.

(3) Discretionary diversion as an alternative to a formal sanction for minor misconduct may occur if:

(A) The misconduct appears to the attorney discipline office general counsel, the complaint screening committee or the professional conduct committee to be the result of poor office management, chemical dependency, behavioral or health-related conditions, negligence or lack of training or education; and

(B) There appears to the attorney discipline office general counsel, the complaint screening committee or the professional conduct committee to be a reasonable likelihood that the successful completion of a remedial program will prevent the recurrence of conduct by the attorney similar to that which gave rise to the diversion.

(C) If the attorney discipline office general counsel, the complaint screening committee or the professional conduct committee offers a written diversion agreement to an attorney, the attorney shall have thirty (30) days to accept and execute the diversion agreement.

(D) An attorney may decline to accept and execute a diversion agreement in which case the pending complaint shall be processed by the attorney discipline system in the same manner as any other matter.

(4) Diversion agreements shall be in writing and shall require the attorney to participate, at his or her own expense, in a remedial program acceptable to the attorney discipline office general counsel, the complaint screening committee or the professional conduct committee which will address the apparent cause of the misconduct. Remedial programs may include but are not limited to: law office assistance; chemical dependency treatment; counseling; voluntary limitation of areas of practice for the period of the diversion agreement; or a prescribed course of legal education including attendance at legal education seminars. A diversion agreement shall require the attorney to admit the facts of the complaint being diverted and to agree that, in the event the attorney fails to comply with the terms of the diversion agreement, the facts shall be deemed true in any subsequent disciplinary proceedings.

(5) The fact that a diversion has occurred shall be public in all matters. Written diversion agreements shall also be public unless the attorney discipline office general counsel, the complaint screening committee or the professional conduct committee votes to make it non-public based on one or more of the following: health, personal finances, family considerations or other highly personal matters.

(6) If an attorney fails to comply with the terms of a written diversion agreement, the agreement shall be terminated and the complaint shall be processed by the attorney discipline system in the same manner as any other matter.

(7) If an attorney fulfills the terms of a written diversion agreement, the complaint shall be dismissed and written notice shall be sent to both the attorney and the complainant.

(8) The attorney discipline office shall a) prepare diversion agreements setting forth the terms determined by the attorney discipline office general counsel, the complaint screening committee or the professional conduct committee; b) monitor the progress of the attorney participating in the diversion program to insure compliance; and c) notify the complaint screening committee or the professional conduct committee whenever there is a voluntary or involuntary termination of the written diversion agreement or upon successful completion of the diversion program.

**(h)** *Public Announcements*

 The attorney discipline office may, from time to time, publicly announce the nature, frequency and substance of diversion (unless made non-public), warnings and sanctions imposed by the attorney discipline system. Unless a grievance or complaint has already been made available for public inspection in accordance with Supreme Court Rule 37, such announcements shall not disclose or indicate the identity of any respondent attorney without the prior approval of the supreme court and prior notice to the respondent (giving said attorney an opportunity to be heard thereon) or without a written waiver from the attorney.

 **(i)** *Period of Limitation*

  **(1)** Except as provided in subsection (3), no formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office in accordance with section (II)(a) or a complaint is generated and docketed by the attorney discipline office under section (II)(a)(5)(B) of this rule:

  **(A)** within six (6) years after the commission of the alleged misconduct when the alleged misconduct was committed before April 1, 2000;

  **(B)** within two (2) years after the commission of the alleged misconduct when the alleged misconduct was committed on or after April 1, 2000; except when the acts or omissions that are the basis of the grievance were not discovered and could not reasonably have been discovered at the time of the acts or omissions, in which case, the grievance must be filed within two (2) years of the time the grievant discovers, or in the exercise of reasonable diligence should have discovered, the acts and omissions complained of.

  **(2)** Misconduct will be deemed to have been committed when every element of the alleged misconduct has occurred, except, however, that where there is a continuing course of conduct, misconduct will be deemed to have been committed beginning at the termination of that course of conduct.

 If the continuing course of conduct began before but terminated after April 1, 2000, continuing misconduct through March 31, 2000, will be subject to the six (6) year period of limitation while continuing misconduct for the period beginning April 1, 2000, will be subject to the two (2) year period of limitation.

  **(3)** If a grievance is filed after the period prescribed in subsection (1) has expired, the attorney discipline office may elect to commence formal proceedings in the following cases:

  **(A)** if based on charges which include commission of a "serious crime," as defined in Supreme Court Rule 37(9)(b), or conduct which would be a material element of a "serious crime," or

  **(B)** if based on charges which do not include conduct described in (A) but which include as a material element fraud or fraudulent misrepresentation, dishonesty, deceit, or breach of a fiduciary duty, but only if commenced within one (1) year after actual discovery of the misconduct by the aggrieved party.

  **(4)** The period of limitation does not run:

  **(A)** during any time the attorney is outside this jurisdiction with a purpose to avoid commencement of proceedings, or wherein the attorney refuses to cooperate with an investigation into alleged misconduct, or

  **(B)** during any period in which the attorney has engaged in active concealment of the alleged misconduct, provided that the period begins to run when the concealment is discovered by the aggrieved party or the attorney discipline office.

  **(5)** If, while proceedings of any kind are pending against the attorney in any court or tribunal and arising out of the same acts or transactions that provide the basis for the allegations of misconduct, the limitations period prescribed in subsection (1) expires, formal disciplinary proceedings may be commenced within one year after final conclusion of those proceedings notwithstanding the expiration of the period of limitation.

**(II)** *Investigations and Informal Proceedings.*

 **(a)** *Preliminary Provisions.*

  **(1)** *Responsibility of Attorney Discipline Office.*

   The attorney discipline office, through general counsel, shall investigate all matters involving alleged misconduct of attorneys which fall within the jurisdiction of the attorney discipline system and which satisfy the requirements of this rule.

  **(2)** *Initiation of Investigation Process.*

   **(A)** *Grievance.* Any person may file a grievance with the attorney discipline office to call to its attention the conduct of an attorney that he or she believes constitutes misconduct which should be investigated by the attorney discipline office. If necessary, the general counsel or his or her deputy or assistant will assist the grievant in reducing the grievance to writing.

   In accordance with a judge's obligation under canon 3 of the code of judicial conduct to report unprofessional conduct of any attorney of which the judge is aware, a judge of the supreme, superior, district or probate courts of New Hampshire, may refer any matter to the attorney discipline office which he or she believes may constitute misconduct by an attorney that should be investigated by the attorney discipline office. In accordance with an attorney's obligation under Rule 8.3 of the rules of professional conduct to report unprofessional conduct of an attorney of which he or she has knowledge, a member of the bar of New Hampshire, may refer any matter to the attorney discipline office which he or she believes may constitute misconduct by an attorney that should be investigated by the attorney discipline office. Except as otherwise provided, a referral from a court or attorney shall be treated as a grievance. Upon receipt of a referral, if the attorney discipline office shall determine that the referring judge or attorney does not wish to be treated as a grievant, and, if it is determined after initial screening that the grievance is within the jurisdiction of the attorney discipline office and meets the requirements for docketing as a complaint as set forth in section (II)(a)(3)(B), the attorney discipline office shall process the grievance as an attorney discipline office generated complaint.

   **(B)** *Attorney Discipline Office-Initiated Inquiry.* The attorney discipline office may, upon any reasonable factual basis, undertake and complete an inquiry, on its own initiative, of any other matter within its jurisdiction coming to its attention by any lawful means. Unless the attorney discipline office later dockets a complaint against an attorney in accordance with section (II)(a)(5)(B), all records of such an inquiry shall be confidential.

   **(C)** *Filing.* A grievance shall be deemed filed when received by the attorney discipline office.

  **(3)** *Procedure after Receipt of Grievance.*

   **(A)** *Initial Screening of Grievance.* General counsel shall review each grievance upon receipt to determine whether the grievance is within the jurisdiction of the attorney discipline system and whether the grievance meets the requirements for docketing as a complaint.

   When necessary, general counsel may request additional information or documents from the grievant. Except for good cause shown, failure of a grievant to provide such additional information and/or documents within twenty (20) days may result in general counsel processing the grievance based on the then existing file, or dismissing the complaint without prejudice.

   Upon receipt of the above information, general counsel may allow a respondent thirty (30) days to file a voluntary response if it is deemed necessary to assist in the evaluation process.

   Extensions of time are not favored.

50

**(B)** *Requirements for Docketing Grievance as a Complaint.* A grievance shall be docketed as a complaint if it is within the jurisdiction of the attorney discipline system and it meets the following requirements:

**(i) Violation Alleged.**

It contains: (a) a brief description of the legal matter that gave rise to the grievance; (b) a detailed factual description of the respondent's conduct; (c) the relevant documents that illustrate the conduct of the respondent, or, if the grievant is unable to provide such documents, an explanation as to why the grievant is unable to do so; and (d) whatever proof is to be provided, including the name and addresses of witnesses to establish a violation of a disciplinary rule.

**(ii) Standing.**

With the exception of an attorney discipline office-initiated inquiry or a referral by a judge or attorney, it must be filed by a person who is directly affected by the conduct complained of or who was present when the conduct complained of occurred, and contain a statement establishing these facts.

**(iii) Oath or Affirmation.**

It is typed or in legible handwriting and, with the exception of an attorney discipline office-initiated inquiry or a referral by a judge or attorney, signed by the grievant under oath or affirmation, administered by a notary public or a justice of the peace. The following language, or language that is substantially equivalent, must appear above the grievant's signature: "I hereby swear or affirm under the pains and penalties of perjury that the information contained in this grievance is true to the best of my knowledge."

**(iv) Limitation Period.**

It was filed with the attorney discipline office within the period of limitation set forth in section (I)(i).

**(C)** *Treatment of Grievance Not Within Jurisdiction of Attorney Discipline System or Failing to Meet Complaint Requirements.* A grievance that is not within the jurisdiction of the attorney discipline system or that does not meet the requirements for docketing as a complaint as set forth in section (II)(a)(3)(B) shall not be docketed and shall be dismissed in accordance with section (II)(a)(4).

**(4)** *Disposition of Grievance after Initial Screening.*

**(A)** *Lack of Jurisdiction.* If the attorney discipline office determines that the person who is the subject of the grievance is not a person subject to the rules of professional conduct, general counsel shall return the grievance to the grievant with a cover letter explaining the reason for the return and advising the grievant that the attorney discipline office will take no action on the grievance. The person who is the subject of the grievance shall not be notified of it. No file on the grievance will be maintained, however, the attorney discipline office shall retain a copy of the cover letter to the grievant, which shall be available for public inspection in accordance with section (IV)(a)(2)(A). The attorney discipline office may bring the matter to the attention of the authorities of the appropriate jurisdiction, or to any other duly constituted body which may provide a forum for the consideration of the grievance and shall advise the grievant of such referral.

**(B)** *Failure to Meet Complaint Requirements.* If the attorney discipline office determines that a grievance fails to meet the requirements for docketing as a complaint, it shall so advise the grievant in writing. The attorney who is the subject of the grievance shall be provided with a copy of the grievance and the response by general counsel, and shall be given an opportunity to submit a reply to the grievance within thirty (30) days from the date of the notification or such further time as may be permitted by general counsel. The attorney's reply shall be filed in the record, which shall be available for public inspection in accordance with section (IV)(a)(2)(B).

**(C)** *Reconsideration of Attorney Discipline Office's Decision.* A grievant may file a written request for reconsideration of the attorney discipline office's decision that the grievance is not within the jurisdiction of the

attorney discipline system or does not meet the requirements for docketing as a complaint, but said request must be filed within ten (10) days of the date of the written notification. A request for reconsideration of the attorney discipline office's decision shall automatically stay the period in which the attorney may file a reply as provided for by section (II)(a)(4)(B). Any such request for reconsideration that is timely filed shall be presented by general counsel to the complaint screening committee which shall affirm the decision of the attorney discipline office or direct that the grievance be docketed as a complaint and processed in accordance with the following paragraph. If the decision of the attorney discipline office is affirmed, the attorney who is the subject of the grievance shall be given the opportunity to submit a reply to the grievance within thirty (30) days from the date of the complaint screening committee's action on the request for reconsideration or such further time as may be ordered by that committee.

(**5**) *Docketing of Grievance as Complaint; Procedure Following Docketing of Complaint.*

   (**A**) *Docketing of Grievance as Complaint.* If general counsel determines that a grievance is within the jurisdiction of the attorney discipline office and meets the requirements for docketing as a complaint as set forth in section (II)(a)(3)(B), he or she shall docket it as a complaint.

   (**B**) *Drafting and Docketing of Attorney Discipline Office-generated Complaint.* If, after undertaking and completing an inquiry on its own initiative, the attorney discipline office determines that there is a reasonable basis to docket a complaint against a respondent, a written complaint shall promptly be drafted and docketed.

   (**C**) *Request for Answer to Complaint.* After a complaint is docketed, general counsel shall promptly forward to the respondent a copy of the complaint and a request for an answer thereto or to any portion thereof specified by the general counsel. Unless a shorter time is fixed by the general counsel and specified in such notice, the respondent shall have thirty (30) days from the date of such notice within which to file his or her answer with the attorney discipline office. The respondent shall serve a copy of his or her answer in accordance with section (VII) of this rule. If an answer is not received within the specified period, or any granted extension, absent good cause demonstrated by the respondent, general counsel may recommend to the complaint screening committee that the issue of failing to cooperate be referred to disciplinary counsel who shall prepare a notice of charges requiring the respondent to appear before a panel for the hearings committee and to show cause why he or she should not be determined to be in violation of Rules 8.1(b) and 8.4(a) of the rules of professional conduct for failing to respond to general counsel's request for an answer to the complaint.

(**6**) <u>*Investigation.*</u>

   <u>Either prior to or following receipt of the respondent's answer, general counsel and his or her deputies and assistants shall conduct such investigation as may be appropriate.</u>

   <u>Upon completion of the investigation, general counsel may (1) dismiss or divert a complaint on the grounds set forth in Rule 37(6)(c); or (2) present the complaint to the complaint screening committee with recommendations for diversion as provided in section (I)(g), dismissal for any reason (with or without a warning) or referral to disciplinary counsel for a hearing.</u>

   At any time while general counsel is investigating a docketed complaint, the respondent may notify general counsel that the respondent waives the right to have the matter considered by the complaint screening committee and consents to the matter being referred to disciplinary counsel for a hearing.  Agreement by the respondent to referral for a hearing shall not be considered an admission of misconduct or a waiver of any defenses to the complaint.

   <u>Meetings of the complaint screening committee shall be in the nature of deliberations and shall not be open to the public, respondents, respondents' counsel, disciplinary counsel or the complainant.  Records and reports of recommendations made shall in all respects be treated as work product and shall not be made public or be discoverable.  However, the decision of the complaint screening committee shall be public.</u>

(**7**) *Action By the Attorney Discipline Office General Counsel or the Complaint Screening Committee.*

**(A)** *Diversion.* In any matter in which the attorney discipline office general counsel or the complaint screening committee determines that diversion is appropriate, it shall be structured consistent with the provisions of section (I)(g).

**(B)** *Dismissal For Any Reason.* In any matter in which the Attorney Discipline Office General Counsel or the complaint screening committee determines that a complaint should be dismissed, either on grounds of no professional misconduct or any other reason, general counsel or the committee shall dismiss the complaint and it shall notify the complainant and the respondent in writing and the attorney discipline office shall close its file on the matter.

**(C)** *Dismissal With A Warning.* If the Attorney Discipline Office General Counsel or the complaint screening committee determines that the complaint should be dismissed and that a warning should issue, general counsel or the committee shall notify the complainant and the respondent of such disposition in writing and shall notify the respondent of his or her rights, if any, pursuant to section (II)(b)(1)(B) of this rule.

**(D)** *Formal Proceedings.* If the respondent agrees with the recommendation of the Attorney Discipline Office General Counsel to refer a complaint to disciplinary counsel, or the complaint screening committee determines that formal proceedings should be held, the complaint shall be referred to disciplinary counsel for the issuance of notice of charges and the scheduling of a hearing on the merits before a panel of the hearings committee.

**(b)** *Final Disposition With A Warning.*

**(1) Warning.**

**(A)** A written record shall be made of the fact of and basis for a dismissal with a warning.

**(B)** In the case of a warning, the respondent shall be advised of:

**(i)** the respondent's right to submit a written response, which shall be maintained with the file relating to the complaint.

**(ii)** the fact that the issuance of the warning does not constitute discipline; and

**(iii)** the fact that the record of such warning may be considered (a) by the Attorney Discipline Office General Counsel or the complaint screening committee to determine whether diversion may be appropriate in the event charges of minor misconduct are subsequently brought against the respondent; or (b) by the professional conduct committee in the event findings of misconduct are subsequently found against the respondent.

**(c)** *Abatement of Investigation.*

**(1)** *Refusal of Grievant/Complainant or Respondent to Proceed, Etc.*

Neither unwillingness nor neglect of the grievant or complainant to prosecute a charge, nor settlement, compromise, or restitution, nor failure of the respondent to cooperate, shall, by itself, justify abatement of an investigation into the conduct of an attorney or the deferral or termination of proceedings under this rule.

**(2)** *Complaint Related to Pending Civil Litigation or Criminal Matter.*

**(A)** *General Rule.* The processing of a complaint involving material allegations which are substantially similar to the material allegations of pending criminal or civil litigation need not but may be deferred at any stage pending determination of such litigation.

**(B)** *Effect of Determination.* The acquittal of a respondent on criminal charges or a verdict or judgment in the respondent's favor in civil litigation involving substantially similar material allegations shall not, by itself, justify termination of a disciplinary investigation predicated upon the same material allegations.

(d) *Resignation, Reinstatement, Conviction of Crime.*

(1) *Resignation by a New Hampshire Licensed Attorney under Disciplinary Investigation.*

(A) *Recommendation to the Court.* Upon receipt by any component part of the attorney discipline system of an affidavit from a New Hampshire licensed attorney who intends to resign pursuant to the rules of the court, it shall refer the matter to the professional conduct committee, to review the affidavit and such other matters as it deems appropriate to determine either (i) to recommend to the court that the resignation be accepted and to recommend any terms and conditions of acceptance it deems appropriate, or (ii) to recommend to the court that the resignation not be accepted with the reasons therefore. The professional conduct committee shall submit the affidavit and its recommendation to the court, and the proceedings, if any, before the court shall be conducted by disciplinary counsel.

(B) *Notification of Grievant.* In the event the court accepts the resignation of a respondent and removes the respondent on consent, the professional conduct committee by means of written notice shall notify the grievant of such action.

(2) *Application for Reinstatement or Readmission.*

(A) *Timeliness after Suspension.* An attorney who has been suspended for a specific period, whether by the court or the professional conduct committee, may not move for reinstatement until the expiration of the period of suspension, and upon the completion of all the terms and conditions set forth in the order of suspension.

(B) *Procedure.* A motion for reinstatement by an attorney suspended by the court for misconduct rather than disability or an application for readmission by a New Hampshire licensed attorney who has been disbarred or has resigned while under disciplinary investigation shall be referred to the professional conduct committee by the supreme court. A motion for reinstatement by an attorney suspended by the professional conduct committee shall be filed directly with the professional conduct committee.

Upon receipt of a motion for reinstatement or an application for readmission, the professional conduct committee shall refer the motion or application to the hearings committee for appointment of a hearing panel. The attorney discipline office shall then cause a notice to be published in a newspaper with statewide circulation, and one with circulation in the area of respondent's former primary office, as well as the New Hampshire Bar News that the respondent has moved for reinstatement or applied for readmission. The notice shall invite anyone to comment in writing to the attorney discipline office within twenty (20) days. All comments shall be made available to the respondent and shall be part of the public file. Where feasible, the attorney discipline office shall give notice to the original complainant. The hearing panel shall promptly schedule a hearing at which the respondent shall have the burden of demonstrating by clear and convincing evidence that he or she has the moral qualifications, competency and learning in law required for admission to practice law in this state and that the resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration for justice nor subversive to the public interest. The attorney discipline system shall be represented at the hearing by disciplinary counsel. At the conclusion of the hearing, the hearing panel shall promptly file a report containing its findings of fact, conclusions and recommendations in written reports, along with the record, to the professional conduct committee. Following receipt of written memoranda by disciplinary counsel and respondent, the hearing transcript and oral argument, the professional conduct committee shall review the record in its entirety and shall file its own recommendations and findings with the court, together with the record. After the submission of briefs and oral arguments to the court, if any, the court shall enter a formal order.

(C) *Readmission after Resignation.* Upon receipt of a referral from the supreme court, pursuant to Rule 37(15), of a motion for readmission after resignation, the professional conduct committee shall further refer the motion to the hearings committee for the appointment of a hearing panel. The hearing panel shall promptly schedule a hearing at which the attorney shall have the burden of demonstrating by a preponderance of the evidence that he or she has the competency and learning in law required for readmission. At the conclusion of the hearing, the hearing panel shall promptly file a report containing its findings and recommendations and transmit same, together with the record, to

the professional conduct committee. Following receipt of written memoranda of disciplinary counsel and the attorney, review of the hearing transcript, and oral argument, the professional conduct committee shall review the record in its entity, and shall file its own recommendations and findings, together with the record, with the court. Following the submission of briefs, if necessary, and oral argument to the supreme court, if any, the court shall enter a final order.

   **(D)** *Special Rule for Suspensions of Six Months or Less.* Notwithstanding the provisions of Rule 37A(II)(d)(2)(B), a lawyer who has been suspended for six months or less pursuant to disciplinary proceedings shall be reinstated by the court following the end of the period of suspension by filing with the court and serving upon disciplinary counsel a motion for reinstatement accompanied by: (1) an affidavit stating that he or she has fully complied with the requirements of the suspension order and has paid any required fees and costs; and (2) evidence that he or she has satisfactorily completed the Multistate Professional Responsibility Examination since his or her suspension.

   **(3)** *Conviction of Crime; Determination of Serious Crime.*

  Upon receipt by any component part of the attorney discipline system of a certificate by the clerk of any court demonstrating that an attorney has been convicted of a crime in the State of New Hampshire or in any other state, territory or district, it shall determine whether the crime is a "serious crime" as defined in Supreme Court Rule 37(7)(b). Upon a determination that the crime is a serious crime, it shall file the certificate of conviction with the Court.

**(III)** *Formal Proceedings.*

*Preface*

As good cause appears and as justice may require, the professional conduct committee may waive the application of any rule under this section.

 **(a)** *Preliminary Provisions.*

  **(1)** *Representation of Respondent.*

  When a respondent is represented by counsel in a formal proceeding, counsel shall file with the hearings committee and disciplinary counsel a written notice of such appearance, which shall state such counsel's name, address, and telephone number, the name and address of the respondent on whose behalf counsel appears, and the caption of the subject proceedings. If the appearance is filed after a hearing panel has submitted its reports and recommendations to the professional conduct committee, the notice of the appearance shall be filed with the professional conduct committee rather than the hearings committee. In any proceeding where counsel has filed a notice of appearance pursuant to this section, any notice or other written communication required to be served on or furnished to the respondent shall also be served on or furnished to the respondent's counsel (or one of such counsel if the respondent is represented by more than one counsel) in the same manner as prescribed for the respondent, notwithstanding the fact that such communication may be furnished directly to the respondent.

  **(2)** *Format of Pleadings and Documents.*

  Pleadings or other documents filed in formal proceedings shall comply with and conform to the rules from time to time in effect for comparable documents in the court.

  **(3)** *Avoidance of Delay.*

  All formal proceedings under this rule shall be as expeditious as possible. In any matter pending before the hearings committee, only the chair of the panel assigned to hear the matter may grant an extension of time, and only upon good cause shown. In any matter pending before the professional conduct committee, only the chair of the committee may grant an extension of time, and only upon good cause shown. Application for such an extension

shall be made, in advance, and in writing where practicable, to the appropriate chair.

**(4)** *Additional Evidence.*

Whenever, in the course of any hearing under this rule, evidence shall be presented upon which another charge or charges against the respondent might be made, it shall not be necessary to prepare or serve an additional notice of charges with respect thereto, but the hearing panel may, after reasonable notice to the respondent and disciplinary counsel and an opportunity to answer and be heard, proceed to the consideration of such additional charge or charges as if they had been made and served at the time for service of the notice of charges, and may render its decision upon all such charges as may be justified by the evidence in the case.

**(b)** *Institution of Proceedings.*

**(1)** *General.*

Upon receipt of a file referred by the attorney discipline office general counsel or the complaint screening committee, disciplinary counsel may engage in such additional preparation to allow counsel to formalize allegations into a notice of charges. The notice of charges shall be served on the respondent by certified mail, return receipt requested, unless some other type of service is authorized upon application to the chair of the professional conduct committee. Throughout the proceedings, disciplinary counsel shall exercise independent professional judgment. Nevertheless, disciplinary counsel shall keep the complainant apprised of developments in the matter and consider input from the complainant.

**(2)** *Notice of Charges.*

The notice of charges shall set forth the allegations of misconduct against the respondent and the disciplinary rules alleged to have been violated. The notice shall also advise the respondent that the respondent is entitled to be represented by counsel and to present evidence in respondent's own behalf.

**(3)** *Answer.*

**(A)** *General Rule.* The respondent shall answer the notice of charges by serving and filing an answer with disciplinary counsel within thirty (30) days after service of the notice of charges. Should the respondent fail to file an answer, the allegations set forth in the notice of charges shall be deemed to be admitted.

**(B)** *Contents of Answer.* The answer shall be in writing, and shall respond specifically to each allegation of the notice of charges and shall assert all affirmative defenses.

**(4)** *Assignment for Hearing.*

Upon receiving an answer from the respondent, or the expiration for the thirty (30) day period for a respondent to file an answer, it shall be the duty of disciplinary counsel to request that the chair of the hearings committee appoint a hearing panel.

Once a hearing panel has been appointed, disciplinary counsel shall forward the panel a copy of the file, other than work product, deliberations and internal correspondence and memoranda of the component parts of the attorney discipline system. To the extent not already provided, disciplinary counsel shall also provide the respondent with the same documents provided to the hearing panel.

**(5)** *Discovery.*

**(A)** Discovery shall be available to the disciplinary counsel. Discovery shall also be available to the respondent, provided that an answer has been filed. All such requests shall be in writing.

**(B)** On written request the following information, if relevant or reasonably calculated to lead to the discovery of

admissible evidence in the matter, and if within the possession, custody or control of the disciplinary counsel, the respondent or respondent's counsel, is subject to discovery and shall be made available for inspection and copying as set forth in this rule:

(i) A writing or any other tangible object, including those obtained from or belonging to the respondent;

(ii) Signed written statements, or taped statements, if any, by any witness, including the respondent;

(iii) Results or reports of mental or physical examinations and of scientific tests or experiments made in connection with the matter;

(iv) Names, addresses and telephone numbers of all persons known to have relevant information based on personal knowledge about the matter, including a designation by the disciplinary counsel and respondent as to which of those persons will be called as witnesses;

(v) Police reports and any investigation reports generated by any agency other than the attorney discipline office;

(vi) Names and address of each person expected to be called as an expert witness, the expert's qualifications, the subject matter on which the expert will testify, a copy of all written reports submitted by the expert or, if none, a statement of facts and opinions to which the expert will testify and a summary of the grounds for each opinion; and

(vii) If disciplinary counsel or the respondent are unable to agree on discovery issues, a request must be made for a pre-hearing conference.

(C) This rule does not require discovery of a party's work product consisting of internal reports, memoranda or documents made by that party or that party's attorney or agents in connection with a disciplinary proceeding. Nor does it require discovery of statements, signed or unsigned, made by respondent to respondent's attorney or that attorney's agents. This rule does not authorize discovery of any internal materials or documents prepared by the attorney discipline office.

(D) Depositions shall be permitted in any matter to preserve the testimony of a witness likely to be unavailable for hearing due to death, incapacity or if otherwise agreed to by the parties. If disciplinary counsel or the respondent deem it necessary to take any other depositions, a request must be made for a pre-hearing conference.

(E) Discovery shall be made available within thirty (30) days after receipt of a written request therefor. A party's obligation to provide discovery is a continuing one. If, subsequent to compliance with a request for discovery, a party discovers additional names or statements of witnesses or other information reasonably encompassed by the initial request for discovery, the original discovery response shall be promptly supplemented accordingly. In any case in which a pre-hearing conference has been held, the case management order shall set forth the time period within which all discovery shall be completed.

(F) Any discoverable information which is not timely furnished either by original or supplemental response to a discovery request may, on application of the aggrieved party, be excluded from evidence at hearing. The failure of the disciplinary counsel or respondent to disclose the name and provide the report or summary of any expert who will be called to testify in accordance with prior agreement of the parties or as provided in the case management order at least twenty (20) days prior to the hearing date shall result in the exclusion of the witness, except on good cause shown.

(6) *Pre-Hearing Conference.*

(A) A pre-hearing conference shall be held at the request of any party or the trier of fact. The pre-hearing conference shall be held by the hearing panel chair. Unless for good cause shown, the request for a pre-hearing conference must be made within thirty (30) days of the date of the hearing panel appointment. At least fourteen (14) days written notice of the date of the conference shall be given. Attendance is mandatory by all parties at the

conference. A pre-hearing conference may be held by telephone call where appropriate. No transcript shall be made of the pre-hearing conference.

(B) At the pre-hearing conference, the hearing panel chair shall address the following matters:

(i) The formulation and simplification of issues;

(ii) Admissions and stipulations of the parties with respect to allegations, defenses and any aggravation or mitigation;

(iii) The factual and legal contentions of the parties;

(iv) The identification and limitation of witnesses, including character and expert witnesses;

(v) Rulings on discovery disputes, deadlines for the completion of discovery, including the timely exchange of expert reports, and a ruling on any requests to take depositions;

(vi) The hearing date and its estimated length;

(vii) Deadline for the pre-marking of all exhibits to which the parties consent; and

(viii) Any other preliminary issues or matters which may aid in the disposition of the case.

(C) Within fourteen (14) days following the pre-hearing conference, the hearing panel chair shall issue a case management order, designated as such in the caption, memorializing any agreements by the parties and any determinations made respecting any matters considered at the conference. The case management order, which constitutes part of the record, shall be sent to the disciplinary counsel and the respondent.

(D) At the pre-hearing conference the hearing panel chair shall schedule a date for the hearing of the case within sixty (60) days after the date of the conference, except for good cause shown.

(7) *Matters in Which a Pre-hearing Conference Has Not Been Held.*

(A) In any matter in which a pre-hearing conference is not requested, both disciplinary counsel and respondent shall be responsible for compiling and pre-marking all documentary evidence, to which the parties consent, to be considered by the hearing panel;

(B) In such matters, both disciplinary counsel and respondent shall also be responsible for preparing lists of names, addresses and telephone numbers of persons who will be called as witnesses, and, in the case of expert witnesses, the experts' qualifications, the subject matter upon which each will testify, a copy of the written reports submitted by such experts, or if none, a statement of the facts and opinions to which each expert will testify and a summary of the grounds for each such opinion.

(C) Also, in such matters, both disciplinary counsel and respondent shall be responsible for preparing requests for findings of fact and rulings of law.

(D) Copies of pre-marked exhibits, witnesses lists and expert witness disclosures, shall be filed by disciplinary counsel and respondent with the attorney discipline office at least ten (10) days prior to the date of the hearing. Five (5) copies shall be provided. Copies shall be also provided to the opposing party concurrent with the submission to the attorney discipline office. Requests for findings of fact and rulings of law shall be filed at the beginning of the hearing.

(8) *Further Review.*

If at any point prior to the hearing on the merits, disciplinary counsel concludes that the development of evidence

58

establishes that there is no valid basis for proceeding to a hearing, he or she shall submit a written report to the professional conduct committee requesting that the matter be dismissed either with a finding of no professional misconduct or on some other basis.

 **(c)** *Conduct of Hearings.*

 **(1)** *General Rule.*

 The hearing panel chair shall conduct the hearing. A record shall be required and a transcript provided to the respondent, disciplinary counsel and the professional conduct committee. A transcript may be provided to the complainant if requested. A copy of the transcript may be obtained from the stenographer by anyone else at the expense of the person requesting it, and it shall thereafter be provided within a reasonable time. The respondent may have the right to be represented by counsel, and respondent and disciplinary counsel shall present their evidence. The hearing shall be public.

 **(2)** *Limiting Number of Witnesses.*

 The hearing panel may limit the number of witnesses who may be heard upon any issue before it to eliminate unduly repetitious or cumulative evidence.

 **(3)** *Additional Evidence.*

 At the hearing the hearing panel may, if it deems it advisable, authorize either the respondent or disciplinary counsel to file specific post-hearing documentary evidence as part of the record within such time as shall be fixed by the hearing panel chair.

 **(4)** *Oral Examination.*

 Witnesses shall be examined orally by disciplinary counsel or the respondent calling the witnesses as well as by the members of the hearing panel. Witnesses whose testimony is to be taken, including the complainant and the respondent, shall be sworn, or shall affirm, before their testimony shall be deemed evidence in any proceeding or any questions are put to them. Cross-examination of witnesses, including the complainant and respondent, shall be allowed but may be limited by the hearing panel chair if such cross-examination is not assisting the hearing panel in developing facts relating to, or reaching a just and proper determination of, the matters before the hearing panel.

 **(5)** *Presentation and Effect of Stipulations.*

 Disciplinary counsel and the respondent may stipulate as to any relevant matters of fact or the authenticity of any relevant documents. Such stipulations may be received in evidence at a hearing, and when so received shall be binding with respect to matters therein stipulated.

 **(6)** *Admissibility of Evidence.*

 **(A)** *General Rule.* All evidence which is deemed by the hearing panel chair to be relevant, competent and not privileged shall be admissible in accordance with the principles set out in section (I)(b) of this rule. Except as provided above, the formal rules of evidence shall not apply.

 **(B)** *Pleadings.* The notice of charges and answer thereto shall, without further action, be considered part of the record.

 **(7)** *Reception and Ruling on Evidence.*

 When objections to the admission or exclusion of evidence are made the grounds shall be stated concisely. Formal exceptions are unnecessary. The hearing panel chair shall rule on the admissibility of all evidence.

**(8)** *Copies of Exhibits.*

When exhibits of a documentary character are received in evidence, copies shall, unless impracticable, be furnished to each member of the hearing panel present at the hearing, as well as to opposing counsel or the other party. Legible copies shall be admissible, unless otherwise required by the hearing panel chair.

**(9)** *Photographing, Recording and Broadcasting.*

**(A)** The hearing panel should permit the media to photograph, record and broadcast all proceedings that are open to the public. The hearing panel may limit electronic media coverage if there is a substantial likelihood of harm to any person or other harmful consequence. Except as specifically provided in this rule, or by order of the hearing panel, no person shall within the hearing room take any photograph, make any recording, or make any broadcast by radio, television or other means in the course of any proceeding.

**(B)** Reporters hired by the hearings committee to record hearings pursuant to this rule and authorized recorders are not prohibited by this rule from making voice recordings for the sole purpose of discharging their official duties.

**(C)** *Proposed Limitations on Coverage by the Electronic Media.* Any party to a formal proceeding - or any other interested person - shall notify the hearings committee at the inception of a matter, or as soon as practicable, if that person intends to ask the hearing panel to limit electronic media coverage of any proceeding that is open to the public. Failure to notify the hearings committee in a timely fashion may be sufficient grounds for the denial of such a request. In the event of such a request, the hearings committee or hearing panel shall either deny the request or issue an order notifying the parties to the proceeding and all other interested persons that such a limitation has been requested, establish deadlines for the filing of written objections by parties and interested persons, and order an evidentiary hearing during which all interested persons will be heard. The same procedure for notice and hearing shall be utilized in the event that the hearing panel *sua sponte* proposes a limitation on coverage by the electronic media. A copy of the order shall, in addition to being incorporated in the case docket, be sent to the Associated Press, which will disseminate the order to its members and inform them of upcoming deadlines/hearing.

**(D)** *Advance Notice of Requests for Coverage.* Any requests to bring cameras, broadcasting equipment and recording devices into a hearing room for coverage of any proceedings shall be made as far in advance as practicable. If no objection to the requested electronic coverage is received by the hearings committee or hearing panel, coverage shall be permitted in compliance with this rule. If an objection is made, the media will be so advised and the panel will conduct an evidentiary hearing during which all interested parties will be heard to determine whether, and to what extent, coverage by the electronic media or still photography will be limited.

**(E)** *Pool Coverage.* The hearing panel retains discretion to limit the number of still cameras and the amount of video equipment in the hearing room at one time and may require the media to arrange for pool coverage. The panel will allow reasonable time prior to a proceeding for the media to set up pool coverage for television, radio and still photographers providing broadcast quality sound and video.

**(1)** It is the responsibility of the news media to contact the attorney discipline office in advance of a proceeding to determine if pool coverage will be required. If the hearing panel has determined that pool coverage will be required, it is the sole responsibility of the media, with assistance as needed from the attorney discipline office, to determine which news outlet will serve as the "pool." Disputes about pool coverage will not be resolved by the hearing panel. Access may be curtailed if pool agreements cannot be reached.

**(2)** In the event of multiple requests for media coverage, because scheduling renders a pool agreement impractical, the attorney discipline office retains the discretion to rotate media representatives into and out of the courtroom.

**(F)** *Live Feed.* Except for good cause shown, requests for live coverage should be made at least five (5) days in advance of a proceeding.

**(G)** *Exhibits.* For purposes of this rule, access to exhibits will be at the discretion of the hearing panel. The panel

retains the discretion to make one "media" copy of each exhibit available in the attorney discipline office.

**(H)** *Equipment.* Exact locations for all video and still cameras, and audio equipment within the hearing room will be determined by the hearing panel. Movement in the hearing room is prohibited, unless specifically approved by the panel.

**(1)** Placement of microphones in the hearing room will be determined by the hearing panel. An effort should be made to facilitate broadcast quality sound. All microphones placed in the hearing room will be wireless.

**(2)** Video and photographic equipment must be of professional quality with minimal noise so as not to disrupt the proceedings; flash equipment and other supplemental lighting or sound equipment is prohibited unless otherwise approved by the hearing panel.

**(I)** *Restrictions.* Unless otherwise ordered by the hearing panel, the following standing orders shall govern.

**(1)** No flash or other lighting devices will be used.

**(2)** Set up and dismantling of equipment is prohibited when the proceedings are in session.

**(3)** No camera movement during the proceedings.

**(4)** No cameras permitted behind the respondent's table.

**(5)** Broadcast equipment will be positioned so that there will be no audio recording of conferences between attorney and client or among counsel and the hearing panel at the bench. Any such recording is prohibited.

**(6)** Photographers and videographers must remain a reasonable distance from parties, counsel tables, alleged victims, witnesses and families unless the hearing participant voluntarily approaches the camera position.

**(7)** All reporters and photographers will abide by the directions of the hearing room officers at all times.

**(8)** Broadcast or print interviews will not be permitted inside the hearing room before or after a proceeding.

**(9)** Photographers, videographers and technical support staff covering a proceeding shall avoid activity that might distract participants or impair the dignity of the proceedings.

**(10)** Appropriate dress is required.

**(d)** *Concluding Procedures.*

**(1)** *Report of Hearing Panel.* After hearing the evidence, the hearing panel shall make a written report of its findings of fact which shall be signed by the hearing panel chair. The hearing panel shall include its recommendations whether its factual findings support a conclusion that the rules of professional conduct were violated by clear and convincing evidence and, if so, an appropriate sanction. The report shall be submitted to the professional conduct committee no more than sixty (60) days after the close of each hearing. If the hearing panel is not unanimous in any recommendations it may make, a minority report may also be submitted to the professional conduct committee. Copies of all hearing panel reports shall be sent to disciplinary counsel, the complainant and the respondent at the same time they are sent to the professional conduct committee.

**(2)** *Professional Conduct Committee.* Within fifteen (15) days of the date of the hearing panel report or reports, disciplinary counsel and respondent may file stipulations with proposed resolutions for the committee's review and approval and may submit memoranda addressing any issues in the hearing panel reports or raised during the hearings.

**(A)** Whether memoranda are filed or not, either disciplinary counsel or respondent may during the same fifteen

61

(15) day period request oral argument before the professional conduct committee.

(**B**) Unless waived, oral arguments will be conducted to allow disciplinary counsel and each respondent ten (10) minutes to address the findings and rulings contained in the hearing panel reports.

(**C**) After consideration of oral arguments, hearing panel reports and memoranda, if any, and transcripts of hearings before the hearing panel, the professional conduct committee shall determine whether there is clear and convincing evidence of violations of the rules of professional conduct. The professional conduct committee may:

(**i**) dismiss complaints, with or without a warning, administer a reprimand, public censure or a suspension not to exceed six (6) months;

(**ii**) attach such conditions as may be appropriate to any discipline it imposes;

(**iii**) divert attorneys out of the attorney discipline system as appropriate and on such terms and conditions as is warranted; and

(**iv**) initiate proceedings in the supreme court, through disciplinary counsel, on all matters in which the professional conduct committee has determined warrant the imposition of disbarment or of suspension for a period in excess for six (6) months;

(**v**) assess to a disciplined attorney to the extent appropriate, in whole or in part, expenses incurred by the attorney discipline system in the investigation and enforcement of discipline. An assessment made under this section shall have the same force, effect and characterization and shall be subject to the same procedures for finalization, resolution and enforcement as an assessment under Rule 37(19).

(**D**) If neither disciplinary counsel nor the respondent requests oral argument, the professional conduct committee shall make its decision based on the hearing panel report, the hearing transcript, and any memoranda that may be filed.

(**3**) *Form of Sanctions.*

In the event that the professional conduct committee determines that the proceeding should be concluded by reprimand, public censure or a suspension of six (6) months or less, it shall give written notice thereof to the respondent, disciplinary counsel and the complainant.

The reprimand, public censure or suspension shall state the charges that were sustained, any charges that were dismissed and the respondent's right to appeal to the supreme court.

Any public censure or suspension issued by the professional conduct committee that becomes final and not subject to further appeal shall be sent to newspapers of general circulation, one with statewide circulation, and one with circulation in the area of respondent's primary office, as well as to the *New Hampshire Bar News* for publication.

In the event the professional conduct committee finds a violation of the rules of professional conduct but determines that a petition should be filed with the supreme court for a sanction of greater than a six (6) month suspension, it shall give notice of its findings and its intent to file a petition to the respondent, disciplinary counsel and the complainant.

(**4**) *Appeal of Sanction.*

(**A**) A respondent shall be entitled to appeal a finding of professional misconduct or a sanction, and disciplinary counsel shall be entitled to appeal a sanction, issued by the professional conduct committee by filing a written appeal in accordance with Rule 10, unless otherwise ordered by the court. The appeal shall not be a mandatory appeal. The appeal shall be public.

**(B)** The filing of an appeal by the respondent shall stay the disciplinary order being appealed unless the professional conduct committee orders otherwise. If the professional conduct committee orders otherwise, it shall set forth in its order its reasons for doing so. In all cases, however, the supreme court may on motion for good cause shown stay the disciplinary order.

## (IV) *Confidentiality and Public Access*

### (a) *Confidentiality of and Public Access to Proceedings and Records.*

**(1)** *General Rule.* The confidentiality of and public access to records, files and proceedings shall be governed by Supreme Court Rule 37.

### (2) *Public Access to Files.*

**(A)** *Grievance against Person Not Subject to Rules of Professional Conduct.* Correspondence to the grievant relating to a grievance against a person who is not subject to the rules of professional conduct shall be available for public inspection for a period of two years. After this two-year period, the correspondence shall be destroyed.

**(B)** *Grievance Not Docketed as a Complaint.* All records (other than work product, internal memoranda and deliberations) relating to a grievance filed against a person who is subject to the rules of professional conduct but which is not docketed as a complaint, shall be maintained at the attorney discipline office for two (2) years from the date of original filing, and it shall be available for public inspection during this period. After this two-year period, the records shall be destroyed.

**(C)** *Complaints.* All records (other than work product, internal memoranda and deliberations) relating to a complaint that is docketed shall be maintained at the attorney discipline office and shall be available for public inspection in accordance with the provisions of Supreme Court Rule 37. Paper records may be destroyed after:

**(i)** three years of the date of notice of dismissal with or without a caution; or

**(ii)** three years of the date of an annulment in accordance with section (V) of this rule; or

**(iii)** five years after the death of the attorney-respondent.

**(D)** *Index of Complaints.* The attorney discipline office shall maintain an index of complaints docketed against each attorney, which shall contain pertinent information, including the outcome of the complaint. No index of grievances that are not docketed as complaints shall be maintained.

**(E)** *Protective Order.* Any person or entity, at any point in the processing of a complaint, may request a protective order from the professional conduct committee, or the committee may issue on its own initiative, a protective order prohibiting the disclosure of confidential, malicious, personal, or privileged information or material submitted in bad faith, and directing that the proceedings be so conducted as to implement the order. Upon the filing of a request for a

protective order, the information or material that is the subject of the request shall be sealed pending a decision by the professional conduct committee.  The professional conduct committee shall act upon the request within a reasonable time.  Within thirty (30) days of the committee's decision on a request for protective order, or of the committee's issuance of one on its own initiative, an aggrieved person or entity may request that the supreme court review the matter. The material in question shall remain confidential after the committee has acted upon the request for protective order until such time as the supreme court has acted, or the period for seeking supreme court review has expired.

**(V)** *Annulment.*

 **(a)** *When Annulment May Be Requested.*

 A person who has been issued an admonition (under prior rules), or reprimand may at any time after five (5) years from the date of the admonition or reprimand apply to the professional conduct committee for an order to annul the admonition or reprimand. A person against whom a complaint has been filed which has resulted in a finding of no misconduct, with or without a warning, may also apply to the professional conduct committee for an order to annul the record at any time after five (5) years from the date of the finding of no misconduct.

 **(b)** *Matters Which May Not Be Annulled.*

 Notwithstanding the foregoing, an order of annulment will not be granted except upon order of the supreme court if respondent's misconduct included conduct which constitutes an element of a felony or which included as a material element fraud, fraudulent misrepresentation, dishonesty, deceit, or breach of fiduciary duty.

 **(c)** *Consideration of Other Complaints.*

 When application has been made under subsection (a), the professional conduct committee may consider any other complaints filed against the respondent and any other relevant facts.

 **(d)** *Effect of Annulment.*

 Upon entry of the order, the respondent shall be treated in all respects as if any admonition, warning, or reprimand had not been rendered, except that, upon conviction of any other violation of the rules of professional conduct after the order of annulment has been entered, the previous admonition, warning, or reprimand may be considered by the professional conduct committee or the supreme court in determining the discipline to be imposed.

 **(e)** *Sealing of Records of Annulment.*

 Upon issuance of an order of annulment, all records or other evidence of the existence of the complaint shall be sealed, except that the attorney discipline office may keep the docket or card index showing the names of each respondent and complainant, the final disposition, and the date that the records relating to the matter were sealed.

 **(f)** *Disclosure of Annulled Matter.*

 Upon issuance of an order of annulment, the component parts of the attorney discipline systems shall not thereafter disclose the record of the complaint which resulted in a finding of no misconduct, admonition, warning, or reprimand, except as permitted by section (V)(d) of this rule, and the respondent shall be under no obligation thereafter to disclose the admonition, warning, or reprimand.

 **(g)** *Denial of Request for Annulment.*

 Upon denial of an order of annulment, the respondent may appeal to the supreme court within thirty (30) days of the

date of receipt of the denial. The appeal shall not be a mandatory appeal. Upon such appeal, the burden shall be upon the respondent to show that the professional conduct committee's exercise of its discretion in denying the order of annulment is unsustainable.

**(VI)** *Request for Reconsideration.*

 **(a)** *Request.* A request for reconsideration shall be filed with the committee that issued the decision within ten (10) days of the date on that committee chair's written confirmation of any decision of the committee; provided, however, that a request for reconsideration of a decision of the attorney discipline office general counsel shall be filed with the complaint screening committee within ten (10) days of the date on the decision. The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request as the party making such request desires to present.

 **(b)** *Answer.* No answer to a request for reconsideration shall be required unless specifically ordered by the committee considering the matter, but any answer or response must be filed within ten (10) days of the date on the notification of the request.

 **(c)** *Committee Action.* If a request for reconsideration is granted, the committee considering the request, may reverse the decision or take other appropriate action, with or without a hearing.

 **(d)** *Effect of Request.* The filing of an initial request for reconsideration of a sanction issued by the professional conduct committee shall stay the thirty (30) day period for filing an appeal pursuant to Supreme Court Rule 37(3)(c).

**(VII)** *Service of Copies.*

 **(a)** Copies of all pleadings filed and communications addressed to the attorney discipline office or any committee of the attorney discipline system by the grievant or complainant shall be furnished forthwith to each respondent who is the subject of the grievance or complaint. All such pleadings and communications shall contain a statement of compliance herewith.

 **(b)** Copies of all pleadings filed and communications addressed to the attorney discipline office or any committee of the attorney discipline system by the respondent who is the subject of the grievance or complaint shall be furnished forthwith to the grievant or complainant and to any other attorney who is the subject of the grievance or complaint. All such pleadings and communications shall contain a statement of compliance herewith.

 **(c)** Copies of all pleadings filed and communications addressed to the hearings committee or any panel thereof or to the professional conduct committee by disciplinary counsel shall be furnished forthwith to the grievant or complainant and to the respondent who is the subject of the grievance or complaint. All such pleadings and communications shall contain a statement of compliance herewith. The requirements of this section shall not apply in any matter in which the disciplinary counsel is representing the professional conduct in the supreme court or elsewhere.

 **(d)** Service on a person who is personally represented by counsel shall be made on counsel. This section does not prohibit that service also be made on the person represented by counsel. Service may be personal or by first class mail.

## **(VIII)** *Applicability to Pending Disciplinary Matters*

The provisions of this rule, as amended effective January 1, 2004, shall not apply to any disciplinary matter pending before the supreme court on January 1, 2004. The provisions of this rule, as amended effective January 1, 2004, shall not apply to any disciplinary matter pending before the committee on January 1, 2004, in which prior to that date the committee has determined that formal proceedings shall be held and the hearing panel has concluded its

evidentiary hearing. All such proceedings shall be governed by the provisions of Supreme Court Rule 37A that were in effect prior to January 1, 2004.