# IN THE U.S. DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ARTHUR GINSBERG )<br>)<br>v. )<br>)<br>JAMES L. DeHART, )<br>JOHN P. GRIFFITH, )<br>LANDYA B. McCAFFERTY, )<br>MARGARET H. NELSON, )<br>DIANE M. NICOLOSI, )<br>MAX DOES 1 through 12, )<br>MAXINE DOES 1 through 12, )<br>NED ZOES 1 through 12, )<br>NADINE ZOES 1 through 12, ) | Case No. **1:10-cv-00452** |

## PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION (DOC. 35) FILED ON MARCH 22, 2011 BY THE MAGISTRATE-JUDGE

NOW COMES Plaintiff, appearing in his pro-se capacity, and hereby objects to the Report and Recommendation (Doc. 25) filed on March 22, 2011 by Magistrate-Judge Margaret J. Kravchuk.  In support thereof, the Plaintiff states:

THE CREATION OR MODIFICATION OF COURT RULES ARE ADMINISTRATIVE ACTS AND NOT JUDICIAL ACTS

Using a functional approach, the United States Supreme Court held in Forrester v. White, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), that absolute immunity did *not* protect the defendant state judge accused of firing a probation officer because of her sex in violation of equal protection.  The challenged conduct was administrative in nature, and not judicial.  Id. 484 U.S. at 227, 108 S.Ct. at 544 (1988).

Absolute immunity or qualified immunity cannot be extended to judges who perform administrative acts.

In deciding Forrester, the U.S. Supreme Court emphasized that its immunity decisions made use of a functional approach which, when applied to the case before it, meant that absolute immunity was not appropriate because the challenged conduct was administrative in nature, and not judicial. It conceded that such administrative "acts - like many others involved in supervising court employees and overseeing the efficient operation of a court - may have been quite important in providing the necessary conditions of a sound adjudicative system." (484 U.S. at 229) It also acknowledged that the threat of suits by disgruntled former employees could interfere with a judge's decision making. However, this threat was equally applicable to other public officials who were protected only by qualified immunity. Consequently, because the challenged acts of the defendant were not themselves adjudicative, they were not protected by absolute immunity.

By way of example, when ruling in Morrison v. Lipscomb, 877 F.2d 463 (6th Cir. 1989), the Sixth Circuit Court of Appeals found absolute judicial immunity where the plaintiff landlord, who was seeking to recover rental property from delinquent tenants, sued the chief judge of a state district court for declaring a moratorium on the issuance of writs of restitution. The Sixth Circuit Court of Appeals subsequently ruled that the chief judge was not protected by absolute judicial immunity because his conduct was administrative and rulemaking in nature. His order was general, did not relate to any particular litigation, and only instructed court personnel on how to process petitions presented to the court. Further, unlike ordinary litigation, no appeal was available.

### DEFENDANT JOHN P. GRIFFITH MAY BE INCLUDED AS A PENDENT PARTY DEFENDANT

It has been asserted that "the doctrine of pendent jurisdiction is sufficiently broad to support a claim . . . against a person not a party to the primary, jurisdiction granting claim" so long as both claims arise out of a

common nucleus of operative fact and the plaintiff would ordinarily be expected to try both in one proceeding.  <u>Almenares v. Wyman</u>, 453 F.2d 1075, at 1083 (2d Cir. 1971), cert. denied, 405 U.S. 944 (1972).  The Eighth Circuit reached the same conclusion in <u>Schulman v. Huck Finn, Inc.</u>, 472 F.2d 864 (8th Cir. 1973).

When ruling, the Magistrate-Judge noted that:  *"In theory, Defendant Griffith could be a pendent party defendant on the state claim, if a federal claim against the NHADO Defendants remained."*  (<u>Please see</u> Page 14 of Magistrate-Judge's ruling.)

Before the Judicial Improvements Act of 1990, Title 28 USC § 1367(e), which is applicable to claims arising after December 1, 1990, there was some uncertainty as to the scope of federal pendent party jurisdiction.  Now, it is clear that this Act creates a presumption in favor of such jurisdiction by reducing the discretion of federal district courts to refuse to exercise it. It should be further noted that the Judicial Improvements Act of 1990 has effectively overruled existing U.S. Supreme Court precedents limiting pendent party jurisdiction.  Please see the overruled cases of <u>Aldinger v. Howard</u>, 427 U.S. 1,96 S. Ct. 2413, 49 L. Ed. 2d 276 (1976) and <u>Finley v. U.S.</u>, 490 U.S. 545, 109 S. Ct. 2003, 104 L. Ed. 2d 593 (1989).

THE INCLUSION OF A RIGHT TO KNOW PROVISION<br>
WITHIN THE NEW HAMPSHIRE CONSTITUTION<br>
TENDS TO SATISFY THE TWO TIERED TEST<br>
OF PRESS ENTERPRISE II

To determine whether the right to public access applies to a particular proceeding, the New Hampshire Supreme Court has adopted the United States Supreme Court's "experience and logic test" developed in <u>Press-Enterprise Co. v. Superior Court of California of Riverside</u>, 478 U.S. 1 (1986) ("Press Enterprise II")  Tier one of the Press-Enterprise test asked "whether the place

and process have historically been open to the press and general public." Tier two of the test asked "whether public access plays a significant positive role in the functioning of the particular process in question." If the proceeding at issue meets both prongs of the test, then the right of public access attaches. See <u>Associated Press v. State of N.H.</u>, 153 N.H. 120, 125 (2005), 888 A.2d 1236.

The New Hampshire Constitution provides:

> All power residing originally in, and being derived from, the people, all the magistrates and officers of government are their substitutes and agents, and at all times accountable to them. Government, therefore, should be open, accessible, accountable and responsive. To that end, the public's right of access to governmental proceedings and records shall not be unreasonably restricted.

N.H. CONST. pt. I, art. 8.

The Right to Know statute reflects this constitutional requirement:

> Openness in the conduct of public business is essential to a democratic society. The purpose of this chapter is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people.

NH RSA § 91-A:1 Preamble

The New Hampshire Supreme Court has held that:

> These constitutional and statutory guidelines require that disclosure is expansive, and exemptions are narrow.

<u>Union Leader Corp. v. New Hampshire Housing Finance Authority</u>, 142 N.H. 540 at 546 (1997).

and

> We have repeatedly held that . . . there is a presumption that . . . records are public and the burden of proof rests with the party seeking closure or nondisclosure ... to demonstrate with specificity that there is some overriding consideration or special circumstance, that is, a sufficiently compelling interest, which outweighs the public's right of access....  Furthermore, even where a sufficiently compelling

4

> interest is demonstrated, a ... record may not be kept sealed unless no reasonable alternative to nondisclosure exists and the least restrictive means available is utilized to serve the interest that compels nondisclosure.

Associated Press v. State, 153 N.H. 120 (2005) (discussing court records) (citations and quotations omitted).

and

> The purpose of the Right-to-Know Law is to "ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1 (2001). The Right-to-Know Law "helps further our State Constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted." Goode v. N.H. Legislative Budget Assistant, 148 N.H. 551, 553, 813 A.2d 381 (2002); see N.H. CONST. pt. I, art. 8. "We resolve questions regarding the [Right-to-Know] law with a view to providing the utmost information in order to best effectuate the statutory and constitutional objective of facilitating access to all public documents. Thus, we construe provisions favoring disclosure broadly, while construing exemptions narrowly." Goode, 148 N.H. at 554 (quotation and citation omitted). The party seeking nondisclosure has the burden of proof. Union Leader Corp. v. N.H. Housing Fin. Auth., 142 N.H. 540, 549, 705 A.2d 725 (1997).

New Hampshire Civil Liberties Union V. City Of Manchester, 149 N.H. 437 at 439; 821 A.2d 1014 (2003)

The narrow construction of Right to Know exemptions is by now axiomatic. Lambert v. Belknap County Convention, 157 N.H. 375, at 378-379 (2008).

### THE NH RSA § 91-A:5, IX EXEMPTION HAS NO APPLICATION TO THE ISSUES IN THIS CASE

The RSA § 91-A:5, IX exemption refers to *"Preliminary drafts, notes, and memoranda and other documents not in their final form and not disclosed, circulated, or available to a quorum or a majority of the members of a public body."* This exemption was added in 2004 and has not yet been

construed by the New Hampshire Supreme Court.  *C.f.*  Goode v. New Hampshire Office of Legislative Budget Assistant, 145 N.H. 451 (2000); Goode v. New Hampshire Office of Legislative Budget Assistant, 148 N.H. 551 (2002).  To bear its burden of proving a document is a secret preliminary draft, the State must show both that it was not made available to the "quorum or a majority of the members of a public body," and that it was a "preliminary draft."

The language of the statute demands that it exempts only documents in the very early stages of an agency's deliberative process.  "Preliminary drafts" does not exempt merely "drafts," or merely "preliminary" documents.  Rather it exempts "preliminary drafts."  The two words together suggest a document only in its budding stage of development.  Once a document has moved beyond its "preliminary draft" stage, and has become either a "preliminary" document or a "draft," it is no longer exempt.  The exemption thus does not mean that only completed or finalized documents are disclosable.  If "preliminary drafts" were construed that way, the exemption would be an unconstitutionally unreasonable restriction of the public's right to open government.  N.H. CONST., pt. I, art. 8.

By way of comparison, it may be useful to note that the Connecticut Supreme Court has construed the phrase "preliminary notes" as exempted by Connecticut's Freedom of Information Act.

> [T]he term "preliminary drafts or notes" relates to advisory opinions, recommendations and deliberations comprising part of the process by which government decisions and policies are formulated. Such notes are predecisional.  They do not in and of themselves affect agency policy, structure or function.  They do not require particular conduct or forbearance on the part of the public.  Instead, preliminary drafts or notes reflect that aspect of the agency's function that precedes formal and informed decisionmaking.

Wilson v. Freedom of Info. Comm'n, 435 A.2d 353, at 359 (Conn. 1980)

To the extent the Connecticut construction may be useful, it should be recalled that Connecticut's Constitution does not contain a corollary to New Hampshire's open government mandate, and that the phrase in New Hampshire must be construed even more narrowly.

New Hampshire's Right-to-Know law gives citizens the ability to monitor their government in real time.  "The purpose of RSA chapter 91-A is to provide the utmost information to the public about what its government is up to," not what the government did sometime in the past.  Union Leader Corp. v. City of Nashua, 141 N.H. 473, at 476, 686 A.2d 310 at 313 (1996).  Disclosure of documents throughout their drafting stages provides the ability for real time monitoring.  Waiting until documents are completed closes the citizens' window into government policy-making until too late to affect it.  When a document contains facts, rather than contemporaneous opinions or suggestions not based on fact, it is public, regardless of its stage in policy development.  *See e.g.*, Citizens for A Better Env't v. Dep't of Food & Agric., 171 Cal. App. 3d 704, at 710, 217 Cal. Rptr. 504, at 507 (Cal. App. 1985); *Annotation*, What constitutes preliminary drafts or notes provided by or for state or local governmental agency, or intra-agency memorandums, exempt from disclosure or inspection under state freedom of information acts, 26 A.L.R.4th 639.  Whether a document remains alterable is not a relevant consideration.  *See,* Wilson v. Freedom of Info. Comm'n, 435 A.2d at 359.

It is undisputed that "free discussion of governmental affairs" lies at the heart of the first amendment.  First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, at 776-77, 98 S.Ct. 1407, at 1415-16, 55 L.Ed.2d 707 (citing Mills v. Alabama, 384 U.S. 214, 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966))

## THE RECORDS AND REPORTS OF RECOMMENDATIONS
## ARE NOT NECESSARILY WORK PRODUCT

In the New Hampshire Supreme Court case titled: <u>The State of New Hampshire v. Troy W. Zwicker</u>, 151 N.H. 179; 855 A.2d 415 (2004), the Court ruled that –

> "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." <u>United States v. Nobles</u>, 422 U.S. 225, 238, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975). We have defined work product as the "result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation. The lawyer's work must have formed an essential step in the procurement of the data which the opponent seeks, and he must have performed duties normally attended to by attorneys." <u>Riddle Spring Realty Co. v. State</u>, <u>107 N.H. 271</u>, 274, 220 A.2d 751 (1966). While the work product of an attorney consists generally of his mental impressions, conclusions, opinions, or legal theories, witness statements that contain purely factual information do not fall within the ambit of the doctrine. <u>State v. Chagnon</u>, 139 N.H. 671, 674, 676, 662 A.2d 944 (1995).

<u>Id.</u> 151 N.H. at 191; 855 A.2d at 426.

The statutory mandate that *"Records and reports of recommendations made shall in all respects be treated as work product and shall not be made public or be discoverable"* is clearly contrary to the New Hampshire Supreme Court's definitions regarding "work product." Certainly, the records and reports of recommendations were not created *"with a view to pending or anticipated litigation."* Moreover, the records and reports of recommendations were undoubtedly not connected to or the result of "duties normally attended to by attorneys."

THE MAGISTRATE-JUDGE'S CONCLUSION THAT THE FILING OF PLAINTIFF'S FIRST AMENDED COMPLAINT WOULD BE A FUTILE EXERCISE IS GROUNDED IN HER ERRONEOUS FINDINGS THAT THE NHADO DEFENDANTS ARE ENTITLED TO ABSOLUTE JUDICIAL IMMUNITY, QUAISI-JUDICIAL IMMUNITY OR QUALIFIED IMMUNITY

Because the NHADO Defendants have acted in an administrative capacity and not a judicial capacity with regard to the challenged court rules, there is no entitlement to absolute judicial immunity, quasi-judicial immunity, or qualified immunity. Absolute judicial immunity, quasi-judicial immunity, or qualified immunity cannot be extended to Defendants that perform administrative acts. Forrester v. White, 484 U.S. 219 at 227, 108 S.Ct. 538 at 544, 98 L.Ed.2d 555 (1988).

By way of example, in the case titled: Gutierrez v. Municipal Court of Southeast Judicial Dist., Los Angeles County, 838 F.2d 1031 (9th Cir. 1988), the Plaintiff, a Hispanic-American employee in the clerk's office of a judicial district of the Los Angeles Municipal Court, sued two municipal court judges and the district for damages under § 1983, challenging an action of the judicial district which enacted an English-only rule for its employees. Holding that the judges were not protected by absolute legislative or judicial immunity, the Ninth Circuit determined that the promulgation of a rule governing conduct of clerical employees was administrative, not legislative or judicial in nature. Personnel rules were internal matters dealing with the affairs of employers.

THE JUDICIAL AND PROFESSIONAL CONDUCT RULES EFFECTIVELY TIME LIMITING ACCESS TO PUBLIC DOCUMENTS ARE ANALOGOUS TO THE PRACTICE OF STUFFING THE CAT BACK IN THE BAG, IN CLEAR VIOLATION OF THE FIRST AMENDMENT

In 1971, there was a well publicized attempt to "stuff the cat back into the bag" after documents involving the defense and security of the United States were already in the public domain. Please see: New York Times Co. v. United

<u>States</u>, 403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971), usually referred to as the "Pentagon Papers Case."  It became crystal clear that a public access restriction, which is tantamount to a "prior restraint", cannot be issued when the documents in question are already effectively in the public domain.

When the U.S. Government attempted to restrain publication of the Pentagon Papers, the New York Times' lead attorney, Alexander Bickel, a Yale Law professor, informed the U.S. District Court that the Washington Post had published details from the secret report that very day and shared the story with the clients of the Post's syndicated news service.  The cat was out of the bag.  There was no reason to continue enjoining the Times.  Besides, Prof. Bickel continued, even after the disclosures by the two newspapers from the secret report, the sky had not fallen.  "The Republic still stands," he declared.

Thus, First Amendment scholars referred to that scenario as an attempt to "put the cat back in the bag" in violation of the First Amendment.  When the cat is already out of the bag, preventing further publication does not return the cat to the bag.

The New Hampshire Supreme Court has created procedural rules that are similarly defective.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:
A.  Enter an order denying the State Defendants' Motion to Dismiss, and
B.  Enter an order denying Defendant Griffith's Motion to Dismiss, and
C.  Allow the Plaintiff's First Amended Complaint, and
D.  Grant such other relief as is just and equitable.

                                      Respectfully submitted,

Dated: April 5, 2011               /s/ Arthur Ginsberg
                                      Arthur Ginsberg
                                      10 Glendale Dr.
                                      Nashua, NH 03064
                                      aginsberg@comcast.net

## **CERTIFICATE OF SERVICE**

I, Arthur Ginsberg hereby certify that on this 5th day of April 2011, I served copies of the foregoing Objection on all Counsel of Record via ECF.

/s/ Arthur Ginsberg
Arthur Ginsberg